**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-3,<br><br>      Plaintiff,<br><br>v.<br><br>KATHERINE L. CAITO,<br><br>      Defendant,<br><br>v.<br><br>INTERNAL REVENUE SERVICE,<br><br>      Interested Party. | C.A. No. 1:18-cv-00427-JJM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CITIBANK, N.A., AS TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF ITS FIRST AMENDED VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE**

### I.     INTRODUCTION

The record before this Court unequivocally demonstrates that Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 ("Plaintiff' or "Citibank, as Trustee"), is entitled to a judicial order to foreclose on Defendant's property located at 16 Yosemite Valley Road, Westerly, Rhode Island (the "Property"). There is no genuine dispute of material fact that Citibank, as Trustee is the owner of Defendant, Katherine L. Caito's ("Defendant"), mortgage loan and has otherwise complied with all legal prerequisites to foreclose under Rhode Island law. Accordingly, Citibank,

as Trustee is entitled to judgment as a matter of law on Count I of its First Amended Verified Complaint for Judicial Foreclosure.

## II. FACTS AND PROCEDURAL HISTORY

On June 6, 2006, Defendant obtained a $4,500,000 loan evidenced by a promissory note (the "Note") to American Brokers Conduit. (Pl.'s First Am. Verified Compl. ["Am. Compl."] ¶ 8; Pl.'s Statement of Undisputed Facts ["SOF"] ¶ 1.) Defendant's repayment of the Note was secured by a mortgage Defendant granted on the Property the same day to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for American Brokers Conduit and American Broker Conduit's successors and assigns (the "Mortgage"). (Am. Compl. ¶ 9; SOF ¶ 2.) The Mortgage granted the "Lender" the power to accelerate the mortgage loan upon the mortgagor's default and to "invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law." (Am. Compl., Ex. B at 14; SOF ¶ 3.) The Mortgage was recorded in the Town of Westerly Land Evidence Records on June 12, 2006 at Book 1541, Page 252. (Am. Compl. ¶ 9; SOF ¶ 2.)

On August 27, 2012, MERS, as nominee for American Brokers Conduit, assigned the Mortgage to Citibank, as Trustee by an Assignment of Mortgage or Deed of Trust (the "Assignment"), which was recorded in the Property's chain of title in the Land Evidence Records for the Town of Westerly on October 9, 2012 at Book 1932, Page 724. (Am. Compl. ¶ 10; SOF ¶ 4.) Ocwen Loan Servicing, LLC ("Ocwen") services the mortgage loan at issue on behalf of Citibank, as Trustee. (SOF ¶ 9.) The Defendant's last payment on the Mortgage was made in April of 2012, after which Defendant defaulted on the Note and breached the terms of

the Mortgage, and the mortgage loan remains due for a May 1, 2012 payment to this day.[1] (SOF ¶ 6; Aff. of Sony Prudent of Ocwen Loan Servicing LLC in Supp. of Pl.'s Mot. for Summ. J., May 15, 2019, ¶ 5 ["Ocwen Aff."]).

Ocwen issued Defendant a notice of default dated May 11, 2018. (Am. Compl. ¶ 13; SOF 9.) Ocwen mailed the notice of default to the Defendant at the Property's address. (Am. Compl., Ex. D at 1.) The notice of default was sent to Defendant at the Property address at the request of Defendant's counsel.[2] In strict compliance with Paragraph 22 of the Mortgage, the notice of default advised Defendant of the following information: (a) Defendant's default; (b) the action required to cure the default by making a payment for the entire total amount past due of $2,201,915.26; (c) that the default must be cured by June 17, 2018; and (d) that "[f]ailure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property." (*Id.*, Ex. D at 2.) The notice of default further advised Defendant that she had "the right to reinstate the account after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." (SOF ¶ 10.)

Defendant failed to cure her default by June 17, 2018. (SOF ¶ 11). Citibank, as Trustee commenced this judicial foreclosure action, accelerating the sums owed on the Note and Mortgage, and seeking a Court order authorizing the sale of the Property. (*See* Am. Compl. ¶¶ 14-17.) Defendant has failed to reinstate the Mortgage at any point following her default in May

---

[1] The Complaint inadvertently refers to the date of Defendant's default on the Mortgage as October 2012. The evidentiary record demonstrates Defendant's last payment occurred in April 2012 and that she defaulted on the May 1, 2012 payment. The date of default—whether in May or October of 2012—is not material to the Court's deciding of the instant motion, rather, this Court need only find that Defendant did, in fact, default on the Mortgage at some point prior to the commencement of this judicial foreclosure action.

[2] Defendant's counsel previously requested that all correspondences related to mortgage servicing be issued directly to the Property's address in lieu of correspondence sent to counsel's attention. Ocwen has complied with this request in sending the notice of default to the Property's address.

2012 up to the present date of this filing. (SOF ¶ 11.) Citibank, as Trustee has incurred fees and expenses following Defendant's default, which Citibank, as Trustee has applied to the unpaid debt in accordance with the terms of the Note and Mortgage. (SOF ¶ 12.)

### III.   STANDARD OF REVIEW

A movant is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party'" and "'[a] fact is material if it has the potential of determining the outcome of the litigation.'" *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (quoting *Rodríguez–Rivera v. Federico Trilla Reg'l Hosp.,* 532 F.3d 28, 30 (1st Cir. 2008)). In analyzing a motion for summary judgment, the Court "view[s] the facts in the light most favorable to the party opposing summary judgment." *Rivera-Colon v. Mills*, 635 F.3d 9, 10 (1st Cir. 2011). The party moving for summary judgment "bears the initial burden, which may be discharged by pointing to the absence of adequate evidence supporting the nonmoving party's case." *Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 720 (1st Cir. 1999). Once the moving party has met its burden, "the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Id.* Importantly, the Court "ignore[s] conclusory allegations, improbable inferences, and unsupported speculation" in assessing motions for summary judgment. *Sullivan v. City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009).

### IV.   ARGUMENT

**A.   Citibank, as Trustee is Entitled to Judgment on Count I for Judicial Foreclosure as it has Complied with All Legal Prerequisites to Foreclose**

The record in this action demonstrates no genuine dispute as to the following material facts: (i) that Citibank, as Trustee is the current holder of the Mortgage as mortgagee; (ii) that

4

Defendant's mortgage loan has been in default since May 1, 2012; (iii) that Defendant has failed to cure or reinstate the mortgage loan at any time thereafter in the seven years since default; and (iv) that Ocwen issued a notice of default to Defendant on behalf of Citibank, as Trustee on May 11, 2018 that strictly complied with Paragraph 22 of the Mortgage. Defendant may pursue frivolous challenges to the mortgage and to charges on the loan, but the simple fact remains that Defendant has no proper grounds to contest Citibank, as Trustee's authority to foreclose on the Property and no viable basis to challenge the notice of default. Citibank, as Trustee's current request is for judgment as a matter of law and an order from this Court to conduct a foreclosure auction of the Property through public sale. Upon completion of the sale, Citibank, as Trustee will return to the Court with a motion to approve the public sale pursuant to this Court's judgment.[3]

Section 34-27-1 of the Rhode Island General Laws permits judicial foreclosure actions: "[a]ny person entitled to foreclose the equity of redemption in any mortgaged estate, whether real or personal, may prefer a complaint to foreclose it, which complaint may be heard, tried, and determined according to the usages in chancery and the principles of equity." Defendant's Mortgage specifically permits the "Lender"—and its successors and assigns—to pursue foreclosure under applicable law. (Mortgage, Am. Compl., Ex. B, at 14.) There is no dispute here that Citibank, as Trustee is the holder of the Defendant's Note and Mortgage. (SOF ¶ 5.) Likewise, there is no dispute Defendant has defaulted on the Note and breached the terms of the mortgage by failing to make any payment since April of 2012. (SOF ¶¶ 6; Ocwen Aff. ¶ 5.) In

---

[3] On return to Court following the foreclosure auction, Citibank, as Trustee will present documentary evidence of the total debt owed, which will include all expenses incurred in pursuit of this judicial foreclosure including, but not limited to, reasonable attorneys' fees and costs of title evidence pursuant to the terms of the Mortgage.

5

fact, Defendants' mortgage loan has remained in default for more than seven years. (Am. Compl. ¶ 14.)

The undisputed facts of this case further demonstrate that Citibank, as Trustee, through its loan servicer, issued a notice of default to Defendant prior to initiating this judicial foreclosure action. The terms of Defendant's Mortgage required Citibank, as Trustee to give Defendant, as "Borrower," a notice specifying the following information before accelerating the loan balance:

> (a) the default; (b) the action required to the cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default or on before the date specified in the notice may result in acceleration of the sums secured by the this Security Instrument and the sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."

(Am. Compl., Ex. B at ¶ 22.) This Court, while reviewing whether the notice of default properly included the information from paragraph 22 prior to acceleration, determined that "Paragraph 22 of the Mortgage is a condition precedent, which requires strict compliance, when a mortgagee seeks acceleration and foreclosure." *Martins v. Fed. Hous. Fin. Agency*, 214 F. Supp. 3d 163, 169-70 (D.R.I. 2016). This conclusion was based, in part, on the Court's determination that the right to exercise power of sale in a mortgage arises from contract, and not by statute. *Id.* (citing *Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1084-85 (R.I. 2013)). Thus, this Court held if a mortgagee agrees to give the borrower notice thereunder, it must do so in accordance with the terms of the agreement. *Id.* The Court further noted this principle holds true for both judicial and non-judicial foreclosures. *Id.* The justification behind the Court's reasoning was derived from principles of Rhode Island contract law; a failure to specify the precise terms set forth in the

6

agreement was fatal to the required notice. *See id.* (citing *Hedco, Ltd. v. Blanchette*, 763 A.2d 639, 642, 643 (R.I. 2000)).

Here, Ocwen issued Defendant a notice of default on May 11, 2018 that strictly complied with the requirements of Paragraph 22 of the Mortgage. (*See* Am. Compl., Ex. D.) A review of the notice of default confirms that Ocwen informed Defendant of Paragraph 22's terms. The notice of default advised Defendant that her loan was in default, that she could cure the default by making a payment of the past due amount of $2,201,915.26 before June 17, 2018, and that "[f]ailure to cure the default on or before the dates specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property." (*Id.* at 2.) In addition, the notice of default informed Defendant that she had the "right to reinstate the account after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." (*Id.*) Comparing the notice of default to Paragraph 22 of the Mortgage demonstrates strict compliance.

The deadline for Defendant to cure the default—specifically, June 17, 2018—passed without reinstatement. The terms of the Mortgage authorize foreclosure of the Property as permitted by applicable law, and accordingly, Citibank, as Trustee elected to file this judicial foreclosure action. While Defendant continues to ignore her default and asserts challenges to foreclosure at every juncture, the plain fact remains that Defendant owed $5,998,086.95 on her mortgage loan (as of July 20, 2018), and this amount continues to grow on a daily basis. (Am. Compl., Ex. E.) As of May 14, 2019, Defendant owed approximately $4,622,474.40 in principal, $1,350,958.95 in interest, and $210,438.82 in escrow payments on the Note and Mortgage. (SOF

12.) Accordingly, all requirements to foreclose under Rhode Island law have been satisfied, and CitiBank, as Trustee is entitled to judgment Count I pursuant to § 34-27-1.[4]

### B. Defendant's Affirmative Defenses do not Raise any Questions of Fact to Deny Summary Judgment in Favor of Citibank, as Trustee

Prior to initiating this action, Defendant has filed and dismissed several proceedings against Citibank, as Trustee, and its agents and loan servicers, all aimed at challenging foreclosure. In 2013, Defendant sued Citibank, as Trustee to challenge their authority to foreclose in this Court in *Katherine L. Caito v. Mortgage Electronic Registration Systems, Inc.*, C.A. No. 13-cv-00034,[5] and in *Katherine L. Caito v. Mortgage Electronic Registration Systems, Inc.*, C.A. No. 13-cv-00429. On July 21, 2015, this Court dismissed the 13-cv-00429 civil action upon a finding that Defendant lacked standing to assert challenges to Citibank, as Trustee's authority to foreclose. Defendant appealed the case to the First Circuit under *Katherine L. Caito v. MERS*, C.A. No. 15-1947, but ultimately dismissed that appeal. In 2016, Defendant filed a petition to appoint a receiver over the Property in the Rhode Island Superior Court in *Katherine L. Caito v. One Lot of Real Estate Referenced as Plat:3 Lot 2419 of Westerly Tax Assessor Located at 16 Yosemite Valley Road, Westerly, Rhode Island*, C.A. No. WC 16-0061 (the "Receivership Action"). In October of 2017, Defendant voluntarily dismissed the Receivership Action after Citibank, as Trustee requested authority from the Rhode Island Superior Court to credit bid in response to the receiver's attempt to auction of the Property.

Defendant's answer to this action continues a pattern of asserting a host of conclusory allegations that have no support under Rhode Island law have no factual basis. While Citibank,

---

[4] Because this is a judicial foreclosure, Fannie Mae is not required to engage in a mediation conference pursuant to R.I. Gen. Laws 34-27-3.2 of the Rhode Island General Laws. *See* R.I. Gen. Laws § 34-27-3.2(d)(5) ("Notwithstanding any other provisions of this section, a mortgagee may initiate judicial foreclosure in accordance with § 34-27-1.")

[5] Dismissed on May 23, 2013 by Court order for failure to provide proof of service on the named defendants.

as Trustee does not bear the burden of disproving any affirmative defense Defendant asserts in response to this judicial foreclosure action, there are certain undisputed facts and threshold legal issues prohibit these defenses and warrant discussion.

1. *Citibank, as Trustee is the owner of the Note and the Mortgage*

Defendant argues that Citibank, as Trustee is not the real party in interest to commence this judicial foreclosure action, does not hold the Note, lacks standing to foreclose, and that there is no trust named "American Home Mortgage Trust 2006-3, Mortgage Backed Pass-through Certificates Series 2006-3." (Def.'s Ans. at 3-4.) These claims all fail as a matter of law for several reasons. First, the doctrine of *res judicata* bars re-litigation of any and all claims the Defendant raised, or could have raised, in the prior filed proceeding. Under the doctrine of *res judicata*, a party is prohibited from re-litigating claims that were—or could have been—raised in a prior adjudicated action. *Haag v. United States*, 589 F.3d 43, 45 (1st Cir. 2009). The First Circuit has adopted a transactional approach to *res judicata*, which establishes a bar to all claims arising from the same transaction or series of connected transactions, including those claims that a complainant could have raised.[6] *See Benbow v. Wall*, C.A. No. 13-cv-757-S, 2014 U.S. Dist. LEXIS 22364, at *11 (D.R.I. Jan. 13, 2014). To succeed on a defense of *res judicata*, a party must demonstrate three elements: (1) the parties to the second action are identical to, or in privity with, the parties to the first action; (2) the claims in the second action arise out of "the same transaction or series of connected transactions" that gave rise to the first action; and (3) final judgment enters on the merits in the earlier suit. *See id.* at *11-12. Here, a review of these three

---

[6] Due to the fact that a final judgment previously entered against Defendant in this Court, the preclusive effect of that judgment is governed by federal *res judicata* principles. *See Johnson v. SCA Disposal Servs. of New England, Inc.*, 931 F.2d 970, 974 (1st Cir. 1991) (noting federal law governs preclusive effect of prior federal judgments).

9

elements demonstrates that this Court's dismissal of the prior contested foreclosure action bars Defendant's present challenges.

First, determining whether there is identity of parties requires resolving whether the parties to the second action are the same or in privity with the parties involved in the earlier action. *See Haag*, 589 F.3d at 45-46; *N. Atl. Distrib. v. Teamsters Local Union No. 430*, 497 F. Supp. 2d 315, 321 (D.R.I. 2007) ("As a rule, privity exists (and, therefore, nonparty preclusion potentially obtains) if a nonparty either substantially controlled a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his de facto representative." (internal quotation marks omitted)). Here, the parties are identical to those named in the *Katherine L. Caito v. Mortgage Electronic Registration Systems, Inc.*, C.A. No. 13-cv-00429. The only differences are that Defendant is pursuing challenges to foreclosure as an affirmative defense to Citibank, as Trustee's judicial complaint to foreclose and Mortgage Electronic Registration Systems, Inc. is not named as a party.

Second, Defendant's prior filed contested foreclosure action involved the same transaction and operative set of facts. "The doctrine of res judicata or claim preclusion bars a party from litigating a claim that such party raised or could have raised 'in respect to the subject matter of . . . prior litigation.'" *Richards v. Public Serv. Co. (In re Public Serv. Co.)*, 848 F. Supp. 318, 325 (D.R.I. 1994) (quoting *In re Belmont Realty Corp.*, 11 F.3d 1092, 1097 (1st Cir. 1993)).

> On the second element, identicality of causes of action, this court employs a transactional analysis whereby identity exists if both sets of claims -- those asserted in the earlier action and those asserted in the subsequent action -- derive from a common nucleus of operative facts. Put another way, as long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint the causes of action are considered to be identical.

10

*Haag*, 589 F.3d at 46 (internal citations and quotation marks omitted). In *Koolen v. Mortg. Elec. Reg. Sys., Inc.*, 953 F. Supp. 2d 348, 352 (D.R.I. 2013), this Court applied Rhode Island's transactional rule to find that the claims asserted in the original and subsequent suits were sufficiently identical to establish *res judicata*. Even though the plaintiff's legal theories in the federal court action differed from the original suit commenced in the Rhode Island district court, this Court concluded that the transaction behind each of the federal court claims arose out of the same transaction in the prior state court action, namely the plaintiff's grant of a mortgage on his property. *Id.* at 350, 352-53. This action raises an identical issues under the transactional rule because Defendant could have litigated her subject claims in the prior filed contested foreclosure action. This action arises out of the very same Note, Mortgage and subsequent default, which Defendant continues to oppose now through affirmative defenses to this case. Defendant had the ability to present her defenses to foreclosure in the prior case, and Defendant's failure to pursue these defenses from final judgment and on appeal precludes her right to raise these claims as affirmative defenses to this action.

Third, the First Circuit has instructed that "[a] final judgment for res judicata purposes ends the litigation on the merits and [leaves] nothing for the court to do but execute the judgment. When deciding whether a ruling by a judge ended the litigation, we [are] bound to defer to a reasonable interpretation of the judgment's meaning and effect elucidated by the judicial officer who authored it." *Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 127 (1st Cir. 2005) (internal citations and quotation marks omitted). Here, this Court previously dismissed Defendant's foreclosure action following Citibank, as Trustee's motion. Defendant appealed the dismissal order to the First Circuit but subsequently vacated the appeal. As a result, a final

11

adjudication of the merits on the prior filed case prohibits Defendant from asserting affirmative defenses arising from the same transaction.

Even if the Court is unwilling to bar all claims that were raised or could have been raised under the principles of *res judicata*, the subject claims are barred by the doctrine of collateral estoppel. Under the federal court's doctrine of collateral estoppel, "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Chayoon v. Foxwoods Resorts Casino*, C.A. No. 03-cv-366, 2005 U.S. Dist. LEXIS 8212, at *12 (D.R.I. Mar. 22, 2005) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). To invoke the doctrine of collateral estoppel, a party must demonstrate the following: "(1) the instant matter and the prior proceedings involve the same issue of law or fact; (2) the parties actually litigated the issue in the prior proceeding(s); (3) the previous court(s) actually resolved the issue in a final and binding judgment; and (4) the prior court's resolution of that issue was essential to its holding. *Id.* at *15 (citing *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978 (1st Cir. 1995)); *see also Wiggins v. Rhode Island*, 326 F. Supp. 2d 297, 303 (D.R.I. 2004) ("In order to use the doctrine of collateral estoppel defensively . . . it must be clear that the party opposing its usage had a full and fair opportunity to litigate an issue in a prior lawsuit.").

All elements of collateral estoppel are present in this case based upon this Court's July 21, 2015 Order in the 2013 contested foreclosure action (1:13-cv-00429-JJM-LDA). There, the Defendant mounted challenges to Citibank, as Trustee's authority to foreclose under Rhode Island law: namely, Citibank, as Trustee's ownership of the Note and Mortgage. The Court rejected Defendant's claims holding "Plaintiffs lack standing to assert their challenges to the assignment and Defendants' possession of their mortgages." *Caito*, 1:13-cv-00429-JJM-LDA,

12

ECF No. 30, at 5. Moreover, the 2013 action involved the same set of facts in that the Defendant was challenging her default on the Note, breach of the Mortgage and seeking to prevent Citibank, as Trustee from foreclosure. The Court actually litigated the same issues in that proceeding and issued a final judgment on the merits with its Opinion granting Citibank, as Trustee's Motion to Dismiss. *See Wiggins*, 326 F. Supp. 2d at 303. Accordingly, the doctrine of collateral estoppel operates to bar any subsequent challenge to Citibank, as Trustee's ownership of the Note and Mortgage.

Beyond collateral estoppel, Defendant has no basis to challenge Citibank, as Trustee's authority to foreclose, because Defendant previously executed a Settlement and Release Agreement in September 2016.[7] (SOF ¶ 7.) The doctrines of release and waiver bar Defendant's affirmative defenses. In *Nottingham Partners v. Trans-Lux Corp.*, the First Circuit explained that release of a civil suit by earlier settlement bars any subsequent action. 925 F.2d 29, 31–32 (1st Cir. 1991). The Court concluded as a matter of law that a release of all claims as part of a state court settlement extends to subsequent claims commenced in federal court and arising out of the same set of facts. *See id.* at 32. As the claims asserted in the second lawsuit "shared a common gravamen" with those set forth in the earlier action—and arose out of the same transaction—the First Circuit found the defense of release to be "fully applicable," and thus was compelled to affirm entry of summary judgment in favor of the releasees. *See id.* at 32-33. Rhode Island state courts respect the terms of the release as they would any other contractual agreement entered into among the parties absent justification to invalidate the release. *See*, *e.g.*, *Young v. Warwick*

---

[7] The Confidential Settlement and Release Agreement was reached and executed under confidentiality, and as such Plaintiff is not providing copy as an exhibit to this motion. Defendant's counsel has a copy of the agreement because he represented Caito in negotiating the release and signed the agreement to approve form and content. To the extent the Court requires review of this agreement in order to issue an order, Plaintiff will provide a copy for *in camera* review.

13

*Rollermagic Skating Ctr., Inc.*, 973 A.2d 553, 561 (R.I. 2009); *see also Guglielmi v. Rhode Island Hosp. Trust Fin. Corp.*, 573 A.2d 687, 689 (R.I. 1990) (discussing factors for determining validity of release agreements). A release intending to waive all claims will be upheld and applied to bar claims if the release is unambiguous, meaning that it is reasonably susceptible of only one interpretation. *See Nelson v. Ptaszek*, 505 A.2d 1141, 1143 (R.I. 1986) (denying plaintiff's attempt to circumvent a release when release specifically evidenced intent to waive all claims, including claim set forth in subject action).

Here, Defendant executed an agreement that released all known and unknown claims up to the agreement's effective date, September 27, 2016. Critically, the agreement includes the following provision:

> **Acknowledgment of Debt:** Borrower [i.e. Caito] acknowledges and confirms that the Investor [i.e. Citibank, as Trustee] is the current mortgagee and Note holder, and that certain debt incurred by her on the June 6, 2006 note to American Brokers Conduit is owed to Investor. Borrower acknowledges the validity of the Assignment of Mortgage from American Brokers Conduit to Investor and the validity of the debt to the Investor, and hereby waives here right to challenge the validity of the Assignment and debt.

(*Id.*) By executing the Confidential Settlement and Release Agreement, Defendant has acknowledged that Citibank, as Trustee is current mortgagee, holder of the Note, and that the debt she incurred on June 6, 2006 was owed to Citibank, as Trustee. She specifically waived any right to challenge the validity of the assignment and the debt. Defendant has expressly acknowledged waiver of any right she may have had following dismissal of the prior filed action to challenge the debt she owed to Citibank, as Trustee, and to challenge the transfer and assignment of the Note and Mortgage to Citibank, as Trustee.

2. *Citibank, as Trustee's commencement of the judicial foreclosure action accelerated the mortgage*

In an attempt to challenge this foreclosure, Defendant claims that Citibank, as Trustee did not properly accelerate the sums due on the Mortgage prior to filing this action. (*See* Def.'s Answer at 3.) Defendant's allegation ignores a general principle that initiation of a judicial foreclosure action accelerates the mortgage, which this Court previously explained in *Boynton v. Fed. Hous. Fin. Agency*, C.A. No. 1:15-cv-00350-JJM-LDA, 2017 U.S. Dist. LEXIS 150442, at *6 (D.R.I. Sept. 15, 2017) ("[T]he Court finds that Fannie Mae did accelerate this mortgage when it filed the judicial foreclosure action . . . ."). Thus, Defendant's assertion is insufficient to raise any genuine issue of fact of Citibank, as Trustee's authority to foreclose.

3. *Any question of fees and expenses charged to the loan account can be resolved by the Court through an accounting following the Court's order to foreclose*

Paragraph 14 of Defendant's Mortgage provides the following agreement on fees and expenses:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

(Am. Compl., Ex. B at ¶ 14.) Defendant's Answer baldly claims that her loan account was charged certain fees and expenses that were "not authorized by or in conformity with the terms of the subject note and mortgage." (Def.'s Ans. at 3.) While Defendant may attempt to dispute the amount currently due on her mortgage loan account, all amounts charged to the account were agreed to and are justified under the terms of the mortgage. The transaction history appended to the Affidavit of Sony Prudent of Ocwen, as loan servicer, confirms all proper fees and expenses. (*See* Ocwen Aff., Ex. A.) Moreover, Plaintiff will return to the Court following the auction with

a breakdown of all costs, fees and expenses (including the costs and fees to litigate this matter) as a final accounting of the debt and for approval of this judicial foreclosure sale. Finally, no part of Defendant's Answer alleges that she paid the improper fees and expenses, and so Defendant has not suffered any damages. *See Viera v. Bank of N.Y. Mellon*, C.A. No. 17-cv-0523-WES-PAS, 2018 U.S. Dist. LEXIS 176276, at *10-11 (D.R.I. Oct. 12, 2018) ("Plaintiff has not explained how the inclusion of the allegedly improper fees and expenses charged to his account on November 15, 2016 caused him actual harm. There is no allegation in the Complaint that Plaintiff ever paid any of the allegedly improper charges . . . .").

## V.     CONCLUSION

Based on the foregoing, and as established by the undisputed facts and exhibits and allegations of the First Amended Verified Complaint, Citibank, as Trustee respectfully requests this Court grant its Motion for Summary Judgment on Count I of for Judicial Foreclosure, and enter judgment in its favor to proceed with foreclosure of the Property.

302966158v4 1010069

Respectfully submitted,

CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-3,

By Its Attorneys,

*/s/ Ethan Z. Tieger*
Samuel C. Bodurtha, Bar No. 7075
Ethan Z. Tieger, Bar No. 9308
HINSHAW & CULBERTSON LLP
56 Exchange Terrace
Providence, RI 02903
Telephone: (401) 751-0842
Facsimile: (401) 751-0072
sbodurtha@hinshawlaw.com
etieger@hinshawlaw.com

Dated:   May 15, 2019

## CERTIFICATE OF SERVICE

I, Ethan Z. Tieger, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on May 15, 2019.

*/s/ Ethan Z. Tieger*
Ethan Z. Tieger

302966158v4 1010069