**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**CITIBANK, N.A. AS TRUSTEE FOR AMERICAN**
**HOME MORTGAGE ASSETS**
**TRIST 2006-3, MORTGAGE BACKED PASS-THROUGH**
**CERTIFICATES SERIES 2006-3**

     **VS**
**KATHERINE L. CAITO**

       **MEMORANDUM  OF LAW IN SUPPORT OF DEFENDANT'S**
       **MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant's Motion  for Summary

Judgment for failure to comply with the terms of the mortgage prior to

commencing this Judicial Foreclosure action.

       **THE MAY 11, 2018  NOTICE DID NOT STRICTLY**
       **COMPLY WITH THE TERMS OF THE MORTGAE AND**
       **LACKED A SPECIFIC DATE TO CURE**

Paragraph 22 of the mortgage provides that the Lender must send a notice of

default which contains specific language as a condition precedent to acceleration

and sale. However Defendant never received any valid default letter from the

owner of the note and the mortgage or an agent indicating that it was acting on

behalf of the owner of the note and the mortgage. Certain provisions of paragraph

22 of the mortgage were required to be complied with before an acceleration of the

1

loan was declared. The Owner of the Note and the Mortgage was required to

specify:

> a.   the default;
>
> b.   the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;
>
> c.   that failure to cure the default on or before the date specified in the Notice may result in the acceleration and the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

Paragraph 22 of the mortgage, which contains conditions for the exercise of

the statutory power of sale, reads as follows:

> **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the**

**STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

A review of the Defendant's mortgage indicates that the following notice, dated May 11, 2018, attached to the Plaintiff's complaint as Exhibit D and contained the following language, which is not compliant with the terms of the mortgage and established Rhode Island law:

Mortgage payments on the above referenced account are past due, which has caused a default under the terms of the Mortgage or Deed of Trust(hereinafter, "Security Instrument.") As of 5/11/2008, the following amounts are past due:

| | |
|---|---|
| Principal and interest | $1,7555,311.72 |
| Interest arrearage | $0.0 |
| Escrow | $419,235.00 |

3

| | |
|---|---|
| Late charges | $21,282.05 |
| Insufficient funds charges | 0.00 |
| Fees/expenses | $6,086.49 |
| Suspense balance (Credit) | 0.00 |
| Interest Reserve balance | 0.00 |
| TOTAL DUE | $$2,201,915.26 |

In order to cure the default, payment for the total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 06/17/2018, at the address listed on page four of this notice. Payment must be received by MoneyGram, bank check, money order or certified funds. Please be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security instrument or mortgage agreement, in addition to the overdue amount of the mortgage account. Any payment to reinstate the mortgage after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the Mortgage will be returned, and will not stop any foreclosure proceedings already begun on the Property.

**PRIOR TO SUBMITTING A PAYMENT, PLEASE CALL US TO VERIFY THE EXACT AMOUNT PAST DUE ON THE ACCOUNT**

Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property. Upon acceleration, the total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure including but not limited to reasonable attorney's fees and costs. A customer has the right to reinstate the account after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

If the default is not cured on or before the date specified above, Ocwen Loan Servicing, LLC ("Ocwen"), at its option may require immediate payment in full of

4

all sums secured by the Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted under Applicable Law. Ocwen shall be entitled to collect all expenses incurred in pursuing the remedies provided under applicable law, including, but not limited to, reasonable attorney's fees and costs of title evidence. If Ocwen invokes the STATUTORY POWER OF SALE,  Ocwen shall mail a copy of a notice of sale to the customer and to other persons in a manner prescribed by applicable law. . .If the mortgage account cannot be brought current, we should be contacted immediately do discuss possible alternatives to foreclosure.  We want to help remedy the delinquent status of this account and would like to discuss alternatives that might be available, While our primary objective is the collection of past due amounts on the account, we want to work to find the best available alternative to bring the account current. . . For any questions of concerns, we can be reached toll-free at 800.746.2936. We available Monday through Friday 8 am to 9pm and Saturday 8 am to 5 pm ET.
Daniel Robbins has been assigned as your relationship manager and will be your designated  representative for resolution inquiries and submission of documents.

Sincerely, Loan Servicing
**TOLL FREE PHONE**: 800.746.2936

The last page of the notice provided a form for Payment Remittance

Information. This form indicated again that payment had to be made by certified

funds and indicated the only manner in which payment of the arrearage could be

made:

Western Union
 Money Gram,
Mail a Money Order/Certified Check
Bank Wire

Instructions were provided for all of these designated method of  payment.

5

A review of this notice indicates that it was defective. It did not reference a specific date for the Defendant to cure the arrearage. Rather the letter stated that the arrearage had to be cured on or before June 17, 2018. Thus there was no specific date to cure as the phrase on or before includes every date from the date of the letter until June 17, 2018. The notice did not specify a particular date, by which the cure amount had to be paid or face acceleration by Ocwen Loan Servicing and sale of the mortgaged premises. No person could determine from the letter the actual date on which to cure. This letter was deceptive because it did not specify an exact date to cure, only a range of dates from the date of the letter until June 17, 2018. Thus there was not strict compliance with the terms of the mortgage as required by Rhode Island as developed in regard to contracts and notices, which are conditions precedent to the exercise of certain contractual rights.

Rhode Island contract law is quite specific in this regard. There was not strict compliance with the terms of the contract, which was a condition precedent at indicated in the case of *Cinq-Mars v. Travelers Ins. Co.,* 218 A.2d 467, 471 (R.I. 1966). In that case, the Court interpreted an insurance contract and held:

It is, of course accepted law that compliance with such a policy condition is a condition precedent to an insurer's liability. Sherwood Ice Co. v. U.S. Casualty Co., 40 R.I. 268; 8 Appleman, Insurance Law & Practice, § 4732, p. 7.

In the recent case of *Commerce Park Village Green v. Vito Vitone,* KD-2-11-1029 (Superior Court, September 22, 2016), Justice Rubine reviewed a notice provision as a criterial for an eviction:

  The Tenant claims that the Landlord was required to serve the Tenant with a "proper move out or vacate notice" before a complaint for eviction may commence, as well as before the holdover provision of the Lease may be invoked. Defective notice under the statute is jurisdictional, and this Court has no jurisdiction to consider a complaint absent strict compliance with the notice provisions of the statute. See, *Hedco Ltd. v. Blanchette,* 763 A.2d 639 (R.I. 2000); see also, *Abbenante v. Giampietro*, 75 R.I. 349, 66 A.2d 501 (1949). The purpose of notice is to advise the tenant of the reason for eviction, and provides an opportunity to cure prior to the commencement of an eviction action. Proper notice also affords the tenant a reasonable opportunity to secure alternative housing before an eviction action is commenced.

In the case of *Haviland v. Simmons,* 45 A.3d 1246 (R.I., 2012), the Rhode Island Supreme Court decided that if there was any ambiguity in a contract, that such issue had to be resolved at trial:

Where an ambiguity exists in a provision of a contractual 1259*1259 document, the construction of that provision is a question of fact."*Fryzel v. Domestic Credit Corp.,* 120 R.I. 92, 98, 385 A.2d 663, 666 (1978) (citing*Geary v. Hoffman,* 98 R.I. 413, 417, 204 A.2d 302, 305 (1964); *Russolino v. A. F. Rotelli & Sons,* 85 R.I. 160, 163, 128 A.2d 337, 340 (1957)). We are of the opinion that, although an express agreement was entered into, based on our review of the contract in its entirety, an ambiguity exists concerning the terms of the agreement relative to the standard under which Haviland's reappointment is to be evaluated.
*Haviland*, at pp. 1258-1259

The language in the mortgage, which was a condition precedent was not complied with by the Plaintiff.

In the case of *Abbenante v. Giampietro,* 75 R.I. 349, 353, 66 A.2d 501, 503 (1949),* the Supreme Court review a notice case in which a specific date was not provided for a Notice to Quit. A question existed as whether the tenant had to quit on the next day after his tenancy terminated on February 29, 1949. The Court held:

We are unable to agree with this contention. If plaintiffs were demanding the premises freed of the existing tenancy at $25 a month defendant was entitled to an **unequivocal** notice to quit on the day next succeeding the last day of such tenancy.

Thus the Court held that in a Notice case, for a notice to be effective it had to be unequivocal as to the time of compliance, which did not occur in this case.

In the case of *Hedco v. Blanchette*, 763 A. 2d 639 (R.I., 2000), the Rhode Island Supreme Court upheld this principle when it held:

In considering the sufficiency of a termination notice, we have repeatedly stated [**8]  that "the important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given." *Tate v. Peter Charles Reynolds, Inc.,* 622 A.2d 449, 450 (R.I. 1993) (per curiam) (citing *De Luca v. Cinima,* 72 R.I. 346, 350, 51 A.2d 369, 370-71 (1947)). Although a tenant may be clearly apprised of the termination of his lease, we have determined a notice to be fatally defective when it ordered the tenant to quit on the last day of his term instead of the first day following it, *Industrial Trade Unions of America v. Metayer,* 69 R.I. 199, 203, 32 A.2d 789, 790-91 (1943), or when it did not clearly indicate that an agent was acting on behalf of the landlord. *Tate,* 622 A.2d at 450.

8

The Court held:

Because service of a valid and proper notice to quit is a condition precedent to maintaining a trespass and ejectment action, plaintiff failed to properly invoke the jurisdiction of the court. *See* *Abbenante v. Giampietro,* 75 R.I. 349, 353, 66 A.2d 501, 503 (1949) (holding that [HN8] tenancy is not terminated without proper notice, regardless of landlord's intention).

Thus the Court held that in a Notice case, for a notice to be effective it had to be

unequivocal as to the time of compliance, which did not occur in this case.

This Court in *Martins v. Federal Housing Finance Agency*, No. 15-

cv-235-M-LDA followed established Rhode Island law and held that strict

compliance was required for paragraph 22 notices just like any other

contracts. *Martins* involved a Judicial Foreclosure in Federal Court. The

Court held:

In Rhode Island, if a contract contains a notice requirement, then a court construes that notice requirement as a condition precedent, which requires strict compliance. *Cinq-Mars v. Travelers Ins. Co.,* 218 A.2d 467, 471 (R.I. 1966) (requirement of written notice for a claim by the insured is a "condition precedent to the insurer's liability."); *Ins. Co. of N. Am. v. Kayser-Roth Corp.,* No. C.A. PC 92-5248, 1999 WL 81366, at *22 (R.I. Super. July 29, 1999) (stating that notice requirements are a condition precedent in insurance contracts); *Dyer v. Ryder Student Transp. Servs., Inc.,* No. 98-4489, 1999 WL 395417, at *2 (R.I. Super. June 7, 1999) ("If notice by a tenant is not given to a landlord in accordance with the terms of the lease, the right to renew has been lost or has lapsed. . . .").

Furthermore, Paragraph 22 of the Mortgage is a condition precedent, which requires strict compliance, when a mortgagee seeks acceleration and foreclosure. *In re Demers,* 511 B.R. 233, 238, 239 (Bankr. D.R.I. 2014) (holding

9

that a notice omitting a borrower's right to go to court to contest acceleration was fatal, and that even if notice to go to court was ambiguously provided, that ambiguity must be construed against the drafter).

*Martins* was quite specific:

Defendants now seek to foreclose on the Property through an order from this Court, instead of non-judicially. The change of process for the foreclosure, however, does not alleviate compliance with the agreement they made in the Mortgage, including the Paragraph 22 notice requirements. Despite the fact that the judicial foreclosure statute, R.I. GEN. LAWS § 34-11-22, does not expressly require compliance with the Mortgage document, the Rhode Island Supreme Court has stated that "the right to exercise the power of sale in a mortgage is derived from contract, not statute," and that the power of sale "does not exist independently" from the mortgage agreement. *Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1084, 1085 (R.I. 2013). Simply put, if a mortgagee agrees to give a certain notice before a foreclosure, it does not matter whether it is a judicial or non-judicial foreclosure. The mortgagee must do that which it agreed. Thus, this Court must review compliance with Paragraph 22 of the Mortgage as a matter of contract law, irrespective of whether Defendants are seeking judicial or non-judicial foreclosure.

The Court granted Summary Judgment to the homeowner stating:

There is no genuine issue as to any material fact concerning whether Fannie Mae complied with the Mortgage Agreement. It did not. At the least, the notices failed, on their face, to specify an exact date by which Ms. Martins could cure default, that she could reinstate the loan after acceleration, and that she has a right to bring court action. With respect to these elements of the notice, there is no plausible way that a jury could find for Defendants, and the notice is indeed material, as it determines whether Defendants have complied with the Mortgage Agreement.

Defendant makes the same argument in this case as in *Martins,* particularly as to the date of the cure. .

Judge Finkle of the Rhode Island Bankruptcy Court in the case of *In Re Demers*, 511 B.R. 233 (Bankr R.I., 2014) analyzed Rhode Island law and found

10

that strict compliance with paragraph 22 of a mortgage was a condition precedent

to acceleration and sale. In *Demers,* the Court considered a Proof of Claim filed by

Wells Fargo through its servicing name of America's Servicing Company.  A

notice  was sent to the Debtor/mortgagor prior to a foreclosure, which was stopped

by the Debtor's Chapter 13 bankruptcy filing.  The Court found that strict

compliance with Paragraph 22 of the mortgage was a condition precedent to

acceleration and exercise of the statutory power of sale under Rhode Island law.

The Court held:

> Reading the Note and Mortgage as an integrated contract, I find the loan
> agreement between Ms. Demers and ASC is unambiguous and ASC's
> compliance with Mtg. Paragraph 22 is a condition precedent to its right to
> accelerate the Note and pursue its remedy of foreclosure against the
> Property. That paragraph, in plain and ordinary terms, states that prior to
> accelerating the Note ASC is required to give Ms. Demers notice of "the
> right to bring a court action to assert the non-existence of a default or any
> other defense of Borrower to acceleration and sale." The Notice without
> question did not inform Ms. Demers that she had a right to bring an action in
> court. Quite clearly the Notice did not comply with this prerequisite.
> Even so, if I were to determine that the loan agreement read as a whole is
> "reasonably and clearly susceptible of more than one interpretation" and
> potentially ambiguous based upon an arguable inconsistency among Note
> Paragraph 7 and Mtg. Paragraphs 14 and 22, I would still conclude that
> under the loan agreement ASC is not entitled to recover the Disputed
> Charges. Any ambiguity in a contract "must be construed against the drafter
> of the document," in this case ASC (or its predecessor-in-
> interest). *Haviland,* 45 A.3d at 1260 ( *quoting  Fryzel,* 385 A.2d at 666-67).
> Furthermore, "virtually every contract contains an implied covenant of good
> faith and fair dealing between the parties." *Dovenmuehle Mortg., Inc. v.*
> *Antonelli,* 790 A.2d 1113, 1115 (R.I.2002). I see no reason this loan

11

transaction should be exempted from this general rule. Indeed, in a
transaction such as this between an individual homebuyer and a mortgage
lender, there is an imbalance of power such that the more powerful and
sophisticated party, ASC, must be held to this standard of good faith and fair
dealing.

The Court analyzed the purpose of the provision as a condition and held that:

Notice provisions in mortgage documents usually require default notices to contain
specific information, which serves a very clear and specific purpose; it informs
mortgagors of their rights so that they may act to protect them. Therefore, when the
terms of the note and mortgage require notice of default, proper notice is a
condition precedent to an action for foreclosure.
For unexplained reasons, the Notice sent by ASC upon Ms. Demers' 2012 default
deviated from these prior notices and omitted this contractually mandated notice
provision. This defect resulted in the invalidity of the foreclosure process ASC
pursued and precludes recovery of its associated costs.


        The Massachusetts Supreme Judicial Court  analyzed this type of notice in

exactly the same manner.  In the case of *Pinti v. Emigrant Mortgage Company*,

No. SJC-11742 (Ma., July 17, 2015), the Court invalidated a foreclosure where

there was not strict compliance with the provisions of paragraph 22.  The Court

commenced by viewing the extraordinary power that a mortgagee possessed when

non-judicial foreclosure commenced with no judicial intervention:

This court has recently reemphasized the point that in light of "the substantial
power that the statutory scheme affords to a [mortgagee] to foreclose without
immediate judicial oversight, we adhere to the familiar rule that `one who sells
under a power [of sale] must follow strictly its terms'"; the failure to do so results
in "no valid execution of the power, and the sale is wholly void."  Ibanez, 458
Mass. at 646, quoting  Moore v. Dick, 187 Mass. 207, 211 (1905). See  Pryor v.

12

Baker, 133 Mass. 459, 460 (1882)("The exercise of a power to sell by a mortgagee is always carefully watched, and is to be exercised with careful regard to the interests of the mortgagor"). This is true with respect to terms that are connected to the power of sale contained in the mortgage instrument itself, [10] and to terms contained in § 21, the statutory power of sale, or in one of "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" to which § 21 refers.

It then proceeded to analyze the nature of the Paragraph 22 notice:

Insofar as the plaintiffs' mortgage is concerned, paragraph 22 begins by requiring notice of default to be given prior to any acceleration of the sums secured by the mortgage; then specifically prescribes the contents of the notice of default; and then provides that, if the default is not cured before the date specified in the notice, the mortgagee may invoke the statutory power of sale (as well as pursue other remedies). As the paragraph is written, therefore, the sending of the prescribed notice of default is essentially a prerequisite to use of the mortgage's power of sale, because the power of sale may be invoked only if the default is not cured within the time specified in the notice of default. In this regard, we agree with the plaintiffs that the "terms of the mortgage" with which strict compliance is required — both as a matter of common law under this court's decisions and under § 21 [15] — include not only the provisions in paragraph 22 relating to the foreclosure sale itself, but also the provisions requiring and prescribing the preforeclosure notice of default. See Foster, Hall & Adams Co., 213 Mass. at 322-324.

The Court then concluded by holding:

> this court's decisions about mortgage terms indicate that by structure and content, the notice of default required to be given under paragraph 22 is integrally connected, and operates as a prerequisite, to the proper exercise of the mortgage instrument's power of sale. Emigrant's strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid; Emigrant's failure to strictly comply rendered the sale void.

Thus the *Pinti* case supports Plaintiff's position that the notice was void and defective because it did not strictly comply with the terms of the mortgage.

13

The language of the purported default notice is defective on its face. There are two relevant portions of paragraph 22. The first is 22(c) which requires language which indicates:   **a date,** not less than 30 days from the date the notice is given to Borrower, by which the default must be cured. The second is 22(d) which states that failure to cure the default **on or before the date specified** in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. This notice used the paragraph 22(d) provision for the paragraph 22(c) provision. As a result, there was no specific date in 22(c) and the on or before provision of 22(d) had no specific date to reference from paragraph 22(c). On or before June 17, 2018 is not a specific date to cure which could be referenced in 22(d). Effectively this notice stated that the Defendant had to cure at any date before June 17, 2018, which included  thirty different dates within thirty days of the letter. Thus this letter was defective on those grounds alone, rendering this action subject to dismissal. There is no genuine issue of material fact as this notice could not satisfy the strict compliance standard of Martin and Thompson and the existing Rhode Island case law. Plaintiff chose to proceed without a specific default letter as this Court found in the notice sent out by Ocwen in the case of *Camarena v. Ocwen Loan Servicing*, et al 18-cv-132JJM-LDA.  Exhibit 1 attached

to this memorandum is the notice sent in that case, in which Ocwen Loan

Servicing, LLC stated:

DEMAND is hereby made against you to cure this default by July 3, 2016.

This notice was not sufficient to allow for a Temporary Restraining Order.

The on or before time frame for each notice mandated cure on a series of

unspecified dates, some of which were within the thirty day period. Paragraph 22

provides that once a specific date is set, only then can the notice state:

that failure to cure the default on or before the date specified in the
Notice may result in the acceleration of the sums secured by this Security
Instrument and sale of the property

Here the initial on or before language did not specify a particular date to

cure, which could be referenced in the required "on or before" section of

Paragraph 22.  This

Clearly supporting Martins and the notion of strict compliance, the  First

Circuit in  *Thompson v. JPMorgan Chase Bank, N.A*. CA. No. 18-1559 was

decided on February 8, 2019  set forth relevant requirements for strict compliance

with the terms of the mortgage, which were not complied with in this case.  In

*Thompson*, the First Circuit reversed the dismissal by the District Court and

reversed a foreclosure sale due to the fact that the purported default notice failed to

notify the mortgagor of the limitations of the right to reinstate. The Court held that

15

due to the strict compliance required under Massachusetts law and the obligation not to provide language in the notice which was deceptive, the failure to advise the mortgagor that reinstatement could occur no later than five days before the scheduled sale was fatally defective. It also held that there was no need to demonstrate prejudice arising from said failure to notify the mortgagor.

   *Martins and Dan Harry v. PNC Bank C.A. No. 17-136 WES* (D.R.I., February 26, 2018) have restated pre-existing and established  Rhode Island law, which  mandated that mortgage contracts must be strictly complied with in order to exercise the statutory power of sale.   Failure to do comply with the conditions precedent contained in paragraph 22 of the mortgage would thus invalidate any subsequent foreclosure.  The Court in *Dan Harry* held that strict compliance was required and noted that the Rhode Island Supreme Court in *Bucci v. Mortgage Electronic Registration Systems, Inc*. 68 A. 3d 1069(R.I., 2013) had interpreted Rhode Island mortgages applying Massachusetts case law due to the similarities of the statutes authorizing statutory power of sale:

   Also pertinent is that the Rhode Island Supreme Court's decisions regarding mortgage interpretation turn to Massachusetts case law to fill in the interstices in Rhode Island mortgage jurisprudence. See Cruz v. Mortg. Elec. Registration Sys, Inc., 108 A.3d 992, 997 (R.I. 2015) (looking to guidance from Massachusetts to develop law pertaining to standing to challenge mortgage assignments) (citing as guidance Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1 (1st Cir. 2014) (applying Massachusetts law)); Bucci, 68 A.3d at 1087 ("we interpret the term `mortgagee' in

16

our statutes in a similar fashion as did the Supreme Judicial Court of Massachusetts") (citing as guidance Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352 (D. Mass. 2011) (applying Massachusetts law), aff'd, 708 F.3d 282 (1st Cir. 2013), and Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E. 2d 1118 (Mass. 2016)). Accordingly, it is appropriate for this Court to consider persuasive the relevant mortgage-law guidance from Massachusetts. See, e.g., Jose, 54 N.E. 3d at 1132 & n.3 (claim that foreclosure may be rendered invalid by mortgagee's failure to conduct pre-foreclosure face-to-face meeting survives summary judgment); Cook, 31 N.E. 3d at 1131 (mortgagor's claims to restore title and avoid eviction based on mortgagee's failure to comply with HUD regulations before foreclosing survive summary judgment).

**THE NOTICE DID NOT STRICTLY COMPLY WITH PARAGRAPH 22 AND PARAGRAPH 19 UNDER *THOMPSON* AND DECEPTIVELY FAILED TO INDICATE THAT THE DEFENDANT HAD UNTIL FIVE DAYS BEFORE A SALE DATE TO CURE**

In view of the strict compliance requirement for all conditions precedent to foreclosure, *Thompson* is clearly applicable to Rhode Island Law.  In *Thompson*, the First Circuit held:

 The mortgage terms for which Massachusetts courts demand strict compliance include the provisions in paragraph 22 requiring and prescribing the pre-foreclosure default notice.
you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place"—could mislead the Thompsons into thinking that they could wait until a few days before the sale to tender the required payment.

Since Rhode Island law as established by case law in this District also imposes strict compliance, any analysis in *Thompson*, applies to Rhode Island mortgage cases.  Thus the Court's analysis of the interplay between paragraph 19 and paragraph 22 of the mortgage clearly apply to this case.  Paragraph 19 clearly

17

states that a borrower has up to five days prior to the sale date to reinstate the

mortgage loan, which had been accelerated by curing the arrearage.  In *Thompson*,

the default letter had deceptively advised the mortgagee about the right to reinstate

without providing the mortgagee the information that this right ended five days

before the sale. Here a similar notice, which omitted the paragraph 19 limitation

was given to the Defendant:

Any payment to reinstate the mortgage after acceleration must therefore include an
amount sufficient to cover such expenses and fees incurred. Payments received that
are less than the amount sufficient to cover such expenses and fees incurred.
Payments received that are less than the amount required to reinstate the Mortgage
will be returned, and will not stop any foreclosure proceedings already begun on
the Property.

In order to cure the default, payment for the total amount past due, plus any
amount(s) becoming due in the interim, must be received on or before 06/17/2018,
at the address listed on page four of this notice. Payment must be received by
MoneyGram, bank check, money order or certified funds. Please be aware, after
acceleration of the debt, there may be expenses and attorney's fees and costs
incurred by us to enforce the terms of the Security instrument or mortgage
agreement, in addition to the overdue amount of the mortgage account.
Failure to cure the default on or before the date specified in the notice may ersult in
acceleration of the sums secured by the Security Instrument and sale of the
Property. Upon acceleration, the total obligation will be immediately due and
payable without further demand. In foreclosure proceedings, we are entitled to
collect the total arrearage in addition to any expenses of foreclosure including but
not limited to reasonable attorney's fees and costs. A customer has the right to
reinstate the account after acceleration and the right to bring a court action to assert
the non-existence of a default or any other defense to acceleration and sale.

18

If the default is not cured on or before the date specified above, Ocwen Loan Servicing, LLC ("Ocwen"), at its option may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted under Applicable Law. Ocwen shall be entitled to collect all expenses incurred in pursuing the remedies provided under applicable law, including, but not limited to, reasonable attorney's fees and costs of title evidence. If Ocwen invokes the STATUTORY POWER OF SALE,  Ocwen shall mail a copy of a notice of sale to the customer and to other persons in a manner prescribed by applicable law. . .If the mortgage account cannot be brought current, we should be contacted immediately do discuss possible alternatives to foreclosure.  We want to help remedy the delinquent status of this account and would like to discuss alternatives that might be available, While our primary objective is the collection of past due amounts on the account, we want to work to find the best available alternative to bring the account current. . . For any questions of concerns, we can be reached toll-free at 800.746.2936. We available Monday through Friday 8 am to 9pm and Saturday 8 am to 5 pm ET.
Daniel Robbins has been assigned as your relationship manager and will be your designated  representative for resolution inquiries and submission of documents.


However this notice despite offering the defendant the opportunity to

reinstate after acceleration and providing a phone number to call to get the exact

amount due to reinstate after acceleration, deceptively failed to tell the defendant

that the right to reinstate would end five days before a sale.  *Thompson* made it

clear that when interpreting strict compliance with contractual condition precedents

to acceleration and sale, the Court did not require a showing of prejudice on the

part of the mortgagee.  In *Thompson*, the First Circuit specifically held:


Paragraph 22 demands strict compliance, regardless of the existence, or not, of prejudice to a particular mortgagor

19

It was not necessary for the mortgagor in *Thompson* to demonstrate that he was able to pay the arrearage, but only to allege that deception occurred in the default notice and that paragraph 22 was not strictly complied with by the mortgagee.

## THE NOTICE DID NOT STRICTLY COMPLY WITH THE MORTGAGE BY REQUIRING CERTIFIED FUNDS TO CURE

*Thompson's* strict compliance obligation in a paragraph 22 notice, without the necessity of demonstrating prejudice likewise applies to all aspects of the default notice provided to the defendant. The amount of the obligation must be the exact amount owed by the mortgagor, which is in default. There can be no other conditions which are imposed by the mortgagee and the acceleration amount must be accurate.  In this case none of these requirements were met.   The notice sent to the defendant required certified funds. However the only provision in the mortgage, which requires payment in certified funds is paragraph 1 which states:

However if any check or other instrument received  by Lender  as payment under this Note or  this security instrument is returned to Lender unpaid, lender may require subsequent payments to  due under the Noe and this Security Instrument be made in one or more of eh following forms, as selected by Lender: (a) cash; (b) money order: (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is  drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer

Defendant, as indicated in her affidavit,  never made a payment for which funds were returned. Thus there was no contractual basis for this demand for

certified funds in the letter dated May 11, 2018. This additional term did not strictly comply with the terms of the mortgage and imposed an additional condition, not imposed by the language of the mortgage. *Thompson* holds that the Defendant does not have to demonstrate that she was prejudiced by this noncontractual condition imposed by Ocwen in its letter.  Thus this condition rendered the letter dated May 11, 2018 defective and as a result it could not be the basis for this foreclosure suit.

### THE NOTICE DID NOT STRICTLY COMPLY WITH THE MORTGAGE BY STATING AN INACCURATE AMOUNT OF THE ARREARAGE

The letter also did not strictly comply with the terms of the mortgage since it did not state the exact amount of the arrearage.  Ocwen's that the default consisted of $2,201,915,26, which included the inaccurate amount of fees of $6,086.49  plus the additional amounts which could be obtained by calling Ocwen at 800-746-2936 did not comply with *Martins*, *Dan Harry* or *Thompson*.  The addition of other charges for charges assessed after the date of the letter,  under the terms of the mortgage could not be a component of the default letter. Such subsequent charges could not be added on to the original arrearage, since they were not specified with an actual amount and they were not subject to the thirty day right to cure and could not be the basis of an acceleration of the note. The notice stated that the mortgagor

21

had to call  to obtain the exact amount due.  None of these requirements were included in the terms of the mortgage and as a result there was no strict compliance. Under *Thompson*, no prejudice needed to be demonstrated by mortgagor and thus the purported default notice was defective.

The letter's assertion that the Defendant owed $2,201,915.26 was also not accurate and as a result there was no strict compliance with the terms of the mortgage. Failure to provide an accurate default notice renders a Default Notice defective since the condition precedent to acceleration and sale, judicial or nonjudicial is an accurate stating of the amount in default. The Plaintiff's exhibit A demonstrated that the arrearage included multiple charges not permitted by the terms of the mortgage and included multiple inaccurate charges,   which were included in the purported default notice. This amount, claimed to be the arrearage, included multiple unreasonable and unnecessary charges, which were charged by Ocwen to the mortgage loan account contrary to the terms of the mortgage

As indicated by the Defendant's affidavit, this amount, claimed to be the arrearage, included the following improper charges which rendered the default notice inaccurate. All the charges for foreclosure and foreclosure related charges were not accurate charges contained within the $6086.49 fees and expenses of the

May 11, 2018 letter.  These charges which resulted in the $6086.49 being

inaccurate were the following:

| 11-14-16 | FC thru Judgment | $556.25 |
| 4-1-16 | Selling Office/Sheriff Cancel fee | $425.00 |
| 3-8-16 | Sale Publication | $1203.76 |
| 2-22-16 | Selling Officer/Sheriff Cancel Fee | $425.00 |
| 2-1-16 | FC Thru complaint | $125.00 |
| 2-1-16 | Selling Officer/Sheriff Cancel Fee | $425.00 |
| 2-1-16 | Sale Publication | $714.88 |
| 7-23-13 | FC thru Title search | $520.00 |

These total fees totaled $4394.90.  The Defendant's affidavit indicates that she

never received a default letter pursuant to the terms of the mortgage which would

have allowed any exercise of the statutory power of sale. Thus all the foreclosure

related charges were not accurate and should not have been included in the

purported default notice.

As indicated by the Defendant's affidavit, at no time was a sheriff ever hired

to sell her home. Nor at any time was there a Selling Officer or any other official

hired to sell her home. At no time was a judicial foreclosure commenced in 2013-

2016, which could result in a Judgment being entered. Despite this fact, the

23

purported default letter included three fees for service of process, specifically the following:

| | | |
|---|---|---|
| 5-8-15 | Service of process | $22.10 |
| 2-7-18 | Service of Process | $10.84 |
| 2-22-16 | Service of Process | $56.54 |

The purported default letter also included a fee for additional hour court appearance of $50.00 on 2-22-16. There was no Court appearance for an attorney to be paid an extra hourly fee on February 22, 2016 and where there was never any servicer of process on the Defendant as indicated by her affidavit, which also stated that she was never served process by Ocwen or any other entity.

The purported default letter included three skip trace fees, specifically the following:

| | | |
|---|---|---|
| 5-8-18 | Skip Trace fee | $5.46 |
| 2-22-16 | Skip Trace fee | $5.30 |
| 7-23-13 | Skip Trace fee | $5.30 |

Such fees are incurred to determine the address of the borrower. However as indicated by her affidavit, the Defendant had always lived at her home at 16 Yosesmite Valley Road, Westerly, RI, 02891 and there was no reason to search for her address, as Ocwen knew that she was living in the house.

24

.    The total fees of $6086.49 also included property inspection fees for the period from April, 2013 to May 2018 in the amount of $458.74 for 37 separate charges. At all times Ocwen was aware that the Defendant was living in the property and that she had an attorney, throughout this entire time.  She paid the taxes for the property from 2016 through 2018.      Ocwen knew that the property was not abandoned and that there was regular contact with the Defendant or her attorney.  She also indicated that at no time did any person come into her home to inspect the condition of the house. Ocwen's compute system automatically orders property inspection fees when a loan is in arrears.   As a result of improper charges referenced herein,  the purported default notice contains inaccurate charges included in the $6086.49 charges for fees and expenses.

Since the amount of the alleged arrearage was not accurate, the transmittal of an inaccurate amount to cure did not strictly comply with the terms of the mortgage. The mortgage clearly states that the mortgagee must be provided the amount of the default.      Ocwen deceptively provided the wrong amount of the default for the reasons alleged in this complaint. Since this default amount included charges not permitted by the terms of the mortgage, it was inaccurate.   The failure to provide an accurate default amount resulted in this letter not strictly complying with the terms of the mortgage and as a result the Defendants did not strictly

comply with the terms of the mortgage and a  condition precedent to acceleration and sale and filing this action was not met. *Thompson* held that there was no need to demonstrate prejudice regarding this issue and as a result, this letter was insufficient to trigger the right to exercise the statutory power of sale.

*Thompson* clearly applies to Rhode Island mortgages as it looked at strict compliance and determined that strict compliance applies to all aspects of the paragraph 22 letter. When read in conjunction with *Martins* and *Dan Harry*, *Thompson* mandates that this notice includes:

a.      the amount of the default

b.      the exact date, at least thirty days from the date the letter is deposited in the mail that this exact arrearage must be cured to avoid acceleration and sale

c.      The right to be advised of the right to reinstate after acceleration

d.      The right to bring a court action to assert the nonexistence of a default and any other defenses to acceleration and sale.

Due to the language of the letter from Ocwen which added additional terms, then there was no strict compliance with the terms of the mortgage.

Under paragraph 19, once the default letter mentions options to avoid foreclosure and any payment of the arrearage, it must under paragraph 22 advise the mortgagor that reinstatement can only occur by paying the exact arrearage

26

amount stated in the letter no later than five days before the sale. Failure to so provide this information constitutes deceptive language, not permitted by paragraph 22 of the mortgage. In this case,  Ocwen included language prohibited by *Thompson*, which told the defendant how to obtain the actual amount of the arrearage and how to make this reinstatement payment, albeit by certified funds, not allowed by the terms of the mortgage. The First Circuit in *Thompson* held:

> Omitting the qualification (that the payment must be tendered at least five days before the foreclosure date) in our view rendered the notice potentially deceptive.

The holding in *Thompson* applies to any mortgage contract which requires strict compliance, not just Massachusetts mortgages.  In Massachusetts such strict compliance was recognized in the mortgage context by the Massachusetts Supreme Judicial Court in *Pinti v. Emigrant Mortg. Co.*, 33 N.E.2d 1212 (Mass. 2015).  In this jurisdiction strict compliance with the terms of the mortgage was recognized in *Martins*, citing pre-existing and established Rhode Island contract and property law.   Thus failure to comply  strictly with paragraph 22 renders this foreclosure action subject to dismissal for failure to comply with a condition precedent. *Thompson* makes it clear that the defendant does not have to demonstrate prejudice that he was precluded from paying off the loan by the incorrect amount stated in the default letter. Rather under *Martins, Dan Harry* and *Thompson*, once there is

27

non-compliance with the terms of the mortgage in the purported default letter, such

letter could not be the basis to foreclose judicially or exercise the statutory power

of sale. *Thompson* made it clear that mortgage provisions such as paragraph 22

required strict compliance. Thus prejudice need not be demonstrated by the

Defendant, who was not required to allege that she could have cured the default

had the amount stated been accurate or that any other terms of the purported

default letter did not strictly comply with the terms of the mortgage. The First

Circuit's holding went well beyond the 5 day before the sale limitation for

reinstatement. It unequivocally indicated that strict compliance would not require a

showing that the mortgagor was prejudiced by the defective notice and as a result,

this case clearly impacts all Rhode Island mortgage cases.

Also, Judge Burroughs of the United States District Court for the District

of Massachusetts ruled that the failure to strictly comply with paragraph 22

rendered the foreclosure sale void. *Paiva v. Bank of N.Y. Mellon*, 2015 U.S. Dist.

LEXIS 105370 (D. Mass. Aug. 11, 2015). In the *Paiva* case, the court agreed

with the borrower's contention that the mortgage servicer's "notice of default did

not satisfy the requirements of paragraph 22 of the mortgage, not because any of

the required substance was missing from the notice, but because the notice should

have come from [Bank of New York Mellon] as the lender, rather than from

28

Countrywide as the servicer of the loan." *Id*. at *5-6. Relying on the *Pinti* decision, the court held that the mortgagee failed to strictly comply with the mortgage and declared the foreclosure sale void. *Id*. at *8. See also *United States Bank Nat'l Ass'n v. Rotondi*, 2015 Mass. App. Div. LEXIS 56 at *5-6 (Mass.App. Div. 2015) (declaring foreclosure sale void due to "no compliance with the notice provisions of paragraph 22" because servicing agent sent notice of default before purported mortgagee held an interest in the mortgage). In this case, no reference was made at all in the purported letter dated May 11, 2018, to the actual owner of the mortgage loan.

The analysis of *Paiva* was followed by the recent case of *Saade v Wilmington Trust National Association*, No. 18-cv-11534 D. Mass., February 28, 2019, in which the Court stated:

> The court agrees with the Paiva decision only to the extent that the servicer sending the Notice of Default sends it on behalf of the prior lender or fails to identify the lender at the time of the Notice. But here, the Notice of Default was sent on behalf of the identified current lender. Mot. for Prelim. Inj. [#45-1], at 4 ("[T]his firm has been retained by Fay Servicing, LLC as servicer for Wilmington Trust, National Association, not in its individual capacity, but solely as trustee for MFRA Trust 2014-2 (the `Mortgagee') . . . ."].[3] Saade has not provided, and this court has not found, further authority for the notion that strict compliance with Paragraph 22 precludes the lender from acting through its agents, such as the servicer or a law firm, where the lender is explicitly identified.

*Thompson* makes it clear that strict compliance must be followed in all respects.

The mortgage requires that the Lender, or its assigns be the entity which declares

the default, even if that is done by a servicer on behalf of an identified

lender/mortgagee. The Supreme Court had previously mandated that a notice had

to be sent by an attorney on behalf of the owner of the property. In the case of *De

Luca v. Cinima*, 72 R.I. 346, (R.I., 1947), an alleged notice to quit was not valid. In

order to be valid the notice to quit must be from the landlord and the signing

should be in some form clearly indicating that the notice originated with the

landlord.

  The cases of *Leite* v. *Croveiro,* 36 R.I. 62, 89 A. 20, (R.I., 1913)  support

this position.   In the *Leite* case the court, at page 64, stated:

While the statute does not prescribe any particular form of notice nor direct the
particular manner in which such notice shall be served it does contain the explicit
statement that the notice must be from the landlord. In the case at bar the notice
itself does not contain anything showing it emanated from the landlord, who is the
only person, under the statute, qualified to give an effective notice. It is simply a
notice from an attorney without the employment of any words indicating that he is
acting for or in behalf of the landlord. In the absence of any statement to that effect
in the notice itself, the court cannot assume that the attorney in affixing his own
signature thereto was acting for the plaintiffs. Nor can the plaintiffs be permitted to
supply the omission by oral testimony."

  The Rhode Island Supreme Court in *Tate v. Reynold,* 622 A. 2d 449

(R.I., 1993)   reviewed compliance with a Rhode Island statute, which

30

required a notice to quit to be provided by an attorney acting on behalf of

the party providing the Notice to Quit:

On appeal defendant asserts that the February 1985 notice to quit was facially defective because it did not indicate that an agent was acting on behalf of the landlord. The statute governing notices to quit, G.L. 1956 (1984 Reenactment) § 34-18-4, has been construed in two cases that support defendant's position. The defendant cites *DeLuca v. Cinima,* 72 R.I. 346, 51 A.2d 369 (1947), and *Leite v. Croveiro,* 36 R.I. 62, 89 A. 20 (1913), in its argument. In *Leite* the court noted that the statute contained "the explicit statement that the notice must be from the landlord." 36 R.I. at 64, 89 A. at 20. The *DeLuca* court emphasized that when a notice to quit comes from a source other than the landlord, the important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given. 72 R.I. at 350, 51 A.2d at 370-71. Therefore, we agree with defendant and hold that the trial justice erred in concluding that the February 1985 notice to quit was valid. The second notice to quit contained the landlord's name. Thus it complied with the provisions of § 34-18-4 because it clearly indicated that it emanated from the landlord. *See id.*

## THE PLAINTIFF DID NOT ACCELERATE THE NOTE

There is no genuine dispute of material fact that the Plaintiff did not mail the

Defendant an acceleration notice pursuant to the terms of the mortgage, prior to

filing this complaint. However the Plaintiff admits that no such acceleration has

occurred and demands that the Court order the mortgage accelerated. However an

acceleration letter  is an essential component to commencing a Judicial Foreclosure

or to exercise the statutory power of sale as defined and detailed in the mortgage

contract and the promissory note. This is mentioned in paragraph 22 of the

mortgage, which is the precondition to acceleration and sale:

31

Acceleration; Remedies. **Lender shall give notice to Borrower prior to acceleration** following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The     notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice **may result in acceleration of the sums secured by this Security Instrument and sale of the Property**. The notice shall further inform     Borrower of the right to reinstate after acceleration and the right to bring an action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option **may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE** and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

In addition, the mortgage contract allows the mortgagor to reinstate after

acceleration in order to avoid the statutory power of sale. Paragraph 19 is entitled

**Borrower's Right to Reinstate After Acceleration** and states:

If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale

32

contained in this Security Instrument . . . Upon reinstatement by Borrower this security instrument and obligation secured hereby shall remain fully effective as if no acceleration had occurred.

It is undisputed that Plaintiff has never received an acceleration notice as required by the terms of her mortgage. The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. No acceleration was declared and as a result the statutory power of sale could not be exercised due to the failure of Defendants to accelerate the mortgage loan by an acceleration letter.

The Defendant never received such a notice, which Plaintiff admits. It asks the Court to accelerate the loan, which had to be done prior to filing this action, not to ask the Court to accelerate. In any case, the loan cannot be accelerated due to the fact that the Defendant did not receive a valid default letter.

## CONCLUSION

*Thompson* made it clear that notices prior to foreclosure must be accurate and will be strictly construed as contractual condition precedents to the exercise of the statutory power of sale and to judicial foreclosures. For the reasons stated in this memorandum, the Defendant's Motion for Summary Judgment should be granted and the complaint dismissed for failure to meet a condition precedent of the mortgage.

May 15, 2019

                                    KATHERINE CAITO
                                    By her Attorney

                                    /s/ John B. Ennis
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, Rhode Island 02920
                                    (401) 943-9230
                                    jbelaw75@gmail.com

CERTIFICATION OF SERVICE

I hereby certify that I emailed a copy of this Memorandum of Law  to Samuel Bodurtha and Ethan Teiger on May 15, 2019.


/s/ John B. Ennis, Esq.