**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CITIBANK, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-3, <br><br>    Plaintiff, <br><br>v. <br><br>KATHERINE L. CAITO, <br><br>    Defendant, <br><br>v. <br><br>INTERNAL REVENUE SERVICE, <br><br>    Interested Party. | C.A. No. 1:18-cv-00427-JJM |

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO</u>**
**<u>DEFENDANT KATHERINE L. CAITO'S SUMMARY JUDGMENT MOTION</u>**

**<u>I. INTRODUCTION</u>**

Katherine Caito's ("Defendant" or "Cairo") summary judgment motion argues non-existent defects in the CitiBank notice of default, proposes far-fetched interpretations of the disclosures required under Paragraph 22 of the CitiBank Mortgage, and attempts to impose Massachusetts law that cannot apply to the facts of this case much less any foreclosure of a Rhode Island mortgage on a Rhode Island property. The challenges Defendant attempts to interpose on CitiBank, as Trustee's pre-foreclosure notice exceed the disclosures, the scope, and the purpose of a contractual notice of default issued prior to foreclosure and provide no relief from the judgment and order CitiBank, as Trustee pursues in this case.

## II. LEGAL ARGUMENT

### A. Defendant Presents No Viable Basis to Challenge CitiBank, as Trustee's Notice of Default

Defendant's argument against the May 11, 2018 Notice of Default's strict compliance with Paragraph 22 of the Mortgage can be broken down into three categories: (1) Defendant claims she did not receive a valid Notice of Default from the owner of the note and mortgage or from an agent; (2) Defendant believes that the use of "on or before" language in the Notice did not specify a particular date by which she must cure and challenges the steps she was required to take to cure the default; and (3) Defendant challenges the costs and fees disclosed.

#### 1. CitiBank, as Trustee's Attorney-in-Fact Issued the Notice of Default

Defendant opens and concludes her challenge to the Notice of Default by arguing that she did not receive this letter from the owner of the note and mortgage and that the lender, as opposed to the mortgage loan servicer, should have sent the Notice. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Defendant's Memo"), Doc. No. 22-1, at pp. 1, 28-31.) Contrary to Defendant's theory, the Rhode Island Supreme Court has affirmed the validity of a foreclosure sale where the mortgagee's servicer, acting under power of attorney, properly mailed notice of sale to the borrowers because a mortgage loan servicer, as agent for the lender, acquires all rights possessed by the lender, including the right to exercise the power of sale. *Breggia v. Mortg. Elec. Registration Sys., Inc.*, 102 A.3d 636, 641 (R.I. 2014); *Ingram v. Mortg. Elec. Regis. Sys., Inc.*, 94 A.3d 636, 641 (R.I. 2014). Applying *Breggia* and *Ingram*, this Court has concluded that a foreclosure sale was properly noticed by the mortgagee's loan servicer, as an agent of the lender. *252 Wolfrock Rd. Realty Redemption Co. v. Wells Fargo Bank N.A.*, C.A. No. 16-126, 2016 U.S. Dist. LEXIS 9191, at *3-*4 (D.R.I. July 11, 2016).

The undisputed facts of this case demonstrate that Ocwen Loan Servicing, LLC ("Ocwen") issued the May 11, 2018 Notice of Default to the Defendant prior to initiating this judicial foreclosure as attorney-in-fact for CitiBank, as Trustee. Ocwen noticed the default and filed the judicial foreclosure action under an April 11, 2017 Limited Power of Attorney from CitiBank, N.A. (Power of Attorney, *Exhibit A*.) Specifically, the CitiBank Limited Power of Attorney appointed Ocwen as attorney-in-fact for enumerated tasks that included "The right to collect, accelerate, initiate suit on and/or foreclose all Loans…." (*Id*. at p. 1.) Moreover, the Power of Attorney identified certain mortgage loans for which CitiBank appointed Ocwen its attorney-in-fact on an appended Exhibit A, which includes the trust into which Defendant's mortgage loan was conveyed and assigned, and the foreclosing plaintiff in this case: American Home Mortgage Asset Trust 2006-3 Mortgage Backed Pass Through Certificate, Series 2006-3.

Defendant has no factual basis to deny CitiBank as Trustee's power of attorney granted to Ocwen much less Ocwen's authority as agent for CitiBank, as Trustee to issue the Notice of Default. Moreover, Defendant relies upon Massachusetts law, which this Court has previously disregarded as misplaced, while ignoring well settled Rhode Island law that permits a mortgage loan servicer, under power of attorney, to foreclose on behalf of the lender. In *252 Wolfrock*, 2016 U.S. Dist. 91191 at *3-*4, this Court concluded that a borrower's reliance upon Massachusetts law, specifically *Paiva v. Bank of New York Mellon*, 120 F.Supp.3d 7, 10 (D. Mass. 2015), was misplaced because Rhode Island's power of sale statute allows the mortgagee to issue the notice of sale to mortgagors in order to initiate foreclosure. *Wolfrock* should guide this Court in declining to review Defendant's challenge to foreclosure founded on Massachusetts law.

2. The Notice of Default Strictly Complied with Paragraph 22 of Defendant's Mortgage

In *Martins v. Fed. Hous. Fin. Agency*, 214 F. Supp. 3d 163, 169 (D.R.I. 2016), this Court concluded that a mortgagee was required to issue a notice of default with disclosures that strictly complied with the statutory power of sale prior to commencing foreclosure. "In real estate contracts, when required notice fails to specify dates, inform the borrower of his or her right to reinstate a loan after acceleration, or inform the borrower of the ability to bring a court action to contest acceleration, that notice is insufficient. *Id.* (citing *In re Demers*, 511 B.R. 233, 239 (Bankr. D.R.I. 2014); *Hedco, Ltd. v. Blanchette*, 763 A.2d 639, 642, 643 (R.I. 2000)). Here, Defendant's Mortgage required Citibank, as Trustee to provide Defendant, as "Borrower," a notice specifying the following information before accelerating the loan balance:

> (a) the default; (b) the action required to the cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default or on before the date specified in the notice may result in acceleration of the sums secured by the this Security Instrument and the sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."

(Am. Compl., Ex. B at ¶ 22.) Comparing the face of the May 11, 2018 Notice of Default with Paragraph 22 of the Mortgage demonstrates strict compliance because the Notice includes all of the required disclosures. Nevertheless, Defendant raises a series of challenges on summary judgment, none of which threaten strict compliance.

Defendant argues that the Notice of Default did not reference a specific date to cure the arrearage despite disclosure of June 17, 2018 as the deadline to cure because the notice demanded cure "on or before" that date. (Defendant's Memo at pp. 6, 14-15.) CitiBank, as Trustee's use of the "on or before" language in the Notice matched Paragraph 22(d), which

required disclosure that "failure to cure the default on or before the date specified in the notice may result in acceleration…." (Mortgage, *Exhibit B* to Am. Compl.) Defendant's argument that "[n]o person could determine from the letter the actual date on which to cure" ignores the fact that CitiBank, as Trustee would have accepted Defendant's cure at any time up to June 17, 2018 and that this specific "on or before" language appears in Paragraph 22 of the Mortgage.

Defendant further argues a defect in the Notice of Default on grounds of conditions that were imposed in order to cure the default, primarily the requirement of payment by certified funds. (Defendants' Memo, p. 20.) In doing so, Defendant ignores Paragraph 22(b) of the Mortgage, which requires disclosure of the action required to cure the default. (Mortgage, Ex. B to Am. Compl.) Paragraph 22 of the Mortgage does not circumscribe the conditions imposed by the mortgagee in order to cure the default so that the Defendant here can object to a demand of payment by certified funds, or contact with the mortgage holder to verify the exact amount past due on the account in order to reinstate. Instead, Paragraph 22 requires that CitiBank, as Trustee to disclose the *action* required to cure, and here CitiBank, as Trustee's action required that the Defendant make any cure payment by certified funds. The Court should not fault CitiBank, as Trustee for a request that Defendant pay more than $2MM by certified funds to cure.

### 3. Defendant Presents no Valid Basis to Challenge the Notice of Default by Objecting to Costs and Fees

Defendant challenges the Notice of Default's strict compliance by objecting to CitiBank, as Trustee's $6,086.49 in expenses incurred on the loan as part of the $2,201,915.26 due to cure the default. Undisputed facts reject Defendant's challenge to all expenses charged on the account. First, however, the Defendant's opinion alone on the validity of these expenses cannot form a basis to challenge the disclosure's strict compliance with Paragraph 22. Paragraph 22 demands disclosure of the default and the action required to cure that default, and CitiBank, as

5

Trustee disclosed the default by informing the Defendant "mortgage payments on the above referenced account are past due, which has caused default under the terms of the Mortgage…." (Notice of Default, *Exhibit D* to Am. Compl.) The notice further informed Defendant of amounts past due and includes unpaid principal and interest in the amount of $1,755,311.72, escrow advances of $419,235, and late charges in the amount of $21,282, to which the Defendant has not objected. Finally, the notice disclosed $6,086.49 in fees and expenses, which have accrued on the Defendant's account over the course of 7 years following her 2012 default. (Defendant's Memo, Doc. No. 22-1 at pp. 21-26.) There is no dispute that CitiBank, as Trustee disclosed to the Defendant the total debt owed, including costs and fees. The transaction history for the loan provides the actual charges that accrued on the account and were disclosed in the Notice of Default. (Transaction History, *Exhibit A* to Affidavit of Sony Prudent, Doc. No. 41-4 at pp. 2-3.) Defendant provides no evidence to challenge the fees but opines: "I have reviewed Exhibit A and can state with certainty that certain of these charges are not accurate or were not accurately incurred and were not reasonable and necessary." (Affidavit of Katherine Caito, Doc. No. 22-2 at ¶7.)

The Defendant's description of the fees alone validates CitiBank, as Trustee's inclusion in the default notice under the terms of the Mortgage. The Mortgage expressly permits CitiBank, as Trustee to charge a borrower the following fees:

> ….for services performed in connection with Borrower's default, for the purpose of protecting Lender's interests in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charge of such fee.

(Mortgage, *Exhibit B* to Am. Compl. at ¶ 14.) Defendant characterizes the expenses charged as foreclosure fees, service of process fees, court appearance fees, skip trace fees to confirm address

and property inspection fees. (Defendant's Memo at pp. 22-25.) The Defendant's own memorandum and supporting affidavit demonstrate the justification of these fees disclosed as valid under the Mortgage.

Even if this Court were prepared to review the validity of the fees charged, the Court cannot credit Defendant's affidavit allegations as material facts given her overt omission and tacit denial of critical facts and circumstances in the history of her mortgage loan. Defendant objects to costs and fees from foreclosures, which were assessed to Defendant's account between November of 2015 and November of 2016 by declaring, under oath, the absence of any foreclosure sale. (Affidavit of Katherine Caito, Doc. No. 22-2 at ¶¶ 13-19.) Defendant neglects to include in these averments the fact that she obtained a stay of foreclosure by filing a petition to appoint receiver in the Rhode Island Superior Court on February 9, 2016. (*Katherine Caito v. One Lot of Real Estate*, C.A. No. WC-2016-0061). In fact, the Defendant signed a petition in which she represented to the Superior Court that a foreclosure sale was scheduled for February 11, 2016. (Petition, *Exhibit B* at ¶ 6.) Moreover, the Defendant did not disclose any defect in the pending foreclosure as part of the petition, she did not challenge the notice of default or notice of sale, instead she proposed to the Superior Court that a receiver should appointed to protect the interests of the creditors (including CitiBank, as Trustee). (Petition, Ex. B at ¶ 12.) Superior Court Justice Brian Stern appointed a temporary receiver at 12:20pm on February 10, 2016. (Order Appointment Temporary Receiver, *Exhibit C*.) At 12:34pm on February 10, 2016, Defendant's counsel e-mailed foreclosure counsel to demand cancellation of the February 11, 2016 sale due to the appointment of a receiver. (02/10/2016 E-Mail, *Exhibit D*.)

The Defendant also fails to include in her affidavit averments that once she avoided foreclosure through an eleventh hour *ex parte* petition to appoint receiver, she reached an

agreement with CitiBank, as Trustee to allow the court appointed receiver to sell the property in exchange for a release of all claims.[1] A year and half after the receiver was appointed, the Defendant requested dismissal of the receivership at a time when the receiver was prepared to auction the property and CitiBank, as Trustee filed a motion to approve proof of claim and for authorization to credit bid at auction. (CitiBank, as Trustee's Motion to Approve Amended Proof of Claim, *Exhibit E*; Defendant's Memorandum of Law in Objection to Approval of Claim, *Exhibit F* at p. 9.)

The Court cannot credit the Defendant's conclusory assertions for legitimate objection to the costs, fees and expenses that CitiBank, as Trustee incurred in foreclosure that she previously acknowledged and evaded through court action. The same analysis can and should be applied to title search fees in July of 2013 and service of process fees incurred in May of 2015. These fees represent charges and costs on the Property that were incurred at a time when CitiBank, as Trustee was preparing to foreclose only to halt the process as a result of pending litigation, first *Katherine L Caito v. Mortgage Electronic Registration Systems, Inc.*, C.A. No. 13-00429 and second *Katherine L. Caito v. MERS*, C.A. No. 15-1947. Once again, the Defendant presents no valid basis to dispute the costs and fees that were incurred while CitiBank, as Trustee attempted to foreclose following her default only to halt the process because of Defendant's ongoing pursuit of litigation. Moreover, given that Defendant has released all claims, known and unknown, up to and through the date inception of the 2016 receivership petition, she has no valid basis to object to fees and costs.

Finally, Defendant challenges property inspections on grounds that CitiBank, as Trustee knew she was living in the house and had no reason to inspect the Property, and skip trace fees

---

[1] A more complete discussion of the settlement agreement is included in CitiBank, as Trustee's Memorandum of Law in Support of its Motion for Summary Judgment. (Doc. No. 21-1 at pp. 13-14.)

because there was no reason to search for her address. (Defendant's Memo at pp. 24-25.) Defendant ignores the terms and conditions of the Mortgage. In Paragraph 9, if the Defendant fails to perform the covenants and agreements of the mortgage, the agreement allows CitiBank, as Trustee to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property." (Mortgage, Ex. B to Am. Compl.) Specifically, "[s]ecuring the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off." (*Id.*) Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument." (*Id.*) Defendant also ignores Paragraph 14 of the Mortgage, which as reviewed above allows CitiBank, as Trustee to assess property inspections as a loan charge.

Defendant does not dispute that she has failed to make a monthly mortgage loan payment since May of 2012. CitiBank, as Trustee has inspected the premises 37 times over the course of 7 years to ensure that the Property was secure. The Defendant's claim that the inspection of the premises 37 times in 7 years is unreasonable and unnecessary because that she lives there ignores the Mortgage and is ludicrous. The value of the property alone (nearly $6.5MM), and CitiBank, as Trustee's Mortgage securing repayment of a debt at nearly $6MM, demands a modicum of property preservation. The Defendant cannot simply argue that her refusal to vacate the premises despite years of default and failure to cure somehow eliminates the need for a mortgagee to inspect the property on a regular basis and under the terms of the Mortgage. The Defendant's challenge to skip trace fees on the claim that CitiBank, as Trustee had no reason to search her

address three times over the course of 7 years of foreclosure related litigation ignores all noticing and servicing requirements and cannot support any valid basis to challenge the Notice of Default.

### B. Defendant Impermissibly Relies on Massachusetts Law to Argue Strict Compliance under Rhode Island Law

Defendant attempts to interject Massachusetts law, namely a recent First Circuit decision that interprets M.G.L. ch. 244 § 35A, into this Court's adjudication of whether CitiBank, as Trustee has complied with Rhode Island law in pursuit of a judicial foreclosure of a Rhode Island mortgage on Rhode Island property. The Court should deny the request because: (1) Plaintiff misinterprets and misapplies the decision issued in *Thompson v. JPMorgan Chase Bank, N.A.*, 915 F.3d 801 (1st Cir. 2019), (2) an accurate interpretation of the decision, even while applying Massachusetts statute and regulations, provides no basis to challenge CitiBank, as Trustee's notice of default; and (3) the First Circuit has issued a misguided decision currently subject to a petition for rehearing.

In *Thompson*, 915 F.3d at 804, the First Circuit reversed dismissal of a Massachusetts contested foreclosure action because the notice of default included what the Panel assumed to be the foreclosing bank's additional language: "you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place." In the opinion of the Court, the additional language was potentially deceptive because Paragraph 19 of the borrowers' mortgage required a reinstatement tender at least five days prior to sale. *Id.* at 804-805. The Court recognized that the mortgagee was not obligated to lay out the procedures for reinstatement under Paragraph 19, but Chase was obligated to provide notice under Paragraph 22 that was accurate and avoided potential deception. *Id.* at 805.

In this case, the Plaintiff misinterprets and misapplies *Thompson* to argue that CitiBank, as Trustee's Notice of Default did not strictly comply with Paragraph 22 of the mortgage for

failure to advise Defendant on the limitations placed on a reinstatement payment following acceleration under Paragraph 19. (Defendant's Memo at pp. 17- 20.) Defendant applies *Thompson* to argue that a Rhode Island mortgagee's failure to advise the mortgagor that reinstatement could occur no later than five days before the scheduled sale is fatally defective. The First Circuit, however, did not conclude in any part of *Thompson* that failing to notify a borrower of the limitations on reinstatement under the mortgage contract was fatally defective to foreclosure. Instead, the Court specifically noted that a bank was under no obligation to lay out the reinstatement procedures of Paragraph 19. *Thompson*, 915 F.3d at 805. The Court concluded, albeit on misguided information and analysis, that additional language Chase employed in noticing default could be misleading, with some "imagination." This Court should deny Plaintiff's summary judgment argument based upon a plain reading of *Thompson*, in which the First Circuit does not demand, even under Massachusetts law, that a bank advise a mortgagor that reinstatement could occur no sooner than five days before the foreclosure.

      For reasons discussed below, the First Circuit issued a misguided interpretation of Massachusetts law in *Thompson*, but even if this Court were to apply the First Circuit's reasoning, CitiBank, as Trustee's Notice of Default was neither misleading nor deceptive. In *Thompson*, 915 F.3d at 804, the First Circuit concluded that the bank's notice strictly complied with Paragraph 22 at first glance. *Id.* at 804. The Court, however, was troubled by Chase's additional language: "you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place…." *Id.* The additional language caused the Court to find that the notice was potentially misleading and deceptive because the Thompson mortgage required a reinstatement tender no sooner than 5 days prior to foreclosure. *Id.*

11

Here, review of CitiBank, as Trustee's Notice of Default demonstrates strict compliance with Paragraph 22 of the Plaintiff's Mortgage in the mandatory disclosures including that the Plaintiff had the right to reinstate after acceleration. (Notice of Default) More importantly, the Notice of Default did not include the additional language, which caused the First Circuit in *Thompson* to determine that the bank's notice was potentially misleading or deceptive, or any additional language for that matter. Defendant argues that the Notice failed under *Thompson* analysis because CitiBank, as Trustee included a disclosure that the Defendant had the right to reinstate after acceleration, which is a required disclosure under Paragraph 22. Defendant also relies upon CitiBank, as Trustee providing a phone number the Defendant could call to obtain the exact amount due on the loan as an additional disclosure, which cannot demonstrate any material issue of fact or challenge to foreclosure. (Defendant's Memo at p. 19.) As a result, even if this Court were to apply *Thompson* (and it should not under any circumstance) to the undisputed fact of this case, the holding provides no basis to void the Notice of Default because the additional language that caused the First Circuit concern is nowhere to be found in CitiBank, as Trustee's Notice of Default.

The *Thompson* decision includes a critical error of analysis this Court must consider on review of Defendant's argument. The First Circuit assumed that the foreclosing bank was the "one writing the notice" with "ample opportunity and expertise to make it entirely accurate," and added their own language to create a potentially misleading and deceptive notice of default. 915 F.3d at 805. The error in the Court's analysis occurred because the bank's supposed additional language was actually a required disclosure under Massachusetts law. In 2012, the Massachusetts Division of Banks issued 209 C.M.R § 56.00 *et seq.* to implement the Massachusetts Legislature's enactment of M.G.L. 244, § 35A, which requires mortgage holders to provide

borrowers notice of right to cure prior to initiating foreclosure. 209 C.M.R § 56.03 required mortgagees to send a right-to-cure notice that "strictly conforms to the … form under 209 C.M.R § 56.04. The form notice in 209 C.M.R. § 56.04 includes the following sentence: "After [150/90 DAY EXPIRATION DATE], *you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place.*" *Id.* at §56.04 (emphasis added). (*See* 209 C.M.R. § 56.04, *Exhibit G*.)

Chase's pre-foreclosure notice, and what the First Circuit failed to account for in deciding *Thompson*, included the supposed additional language in order to strictly conform their notice of default to Massachusetts law. In other words, the notice issued in *Thompson* strictly complied with Paragraph 22 of the Thompson mortgage *and* complied with M.G.L. ch. 244 §35A by strictly conforming to the Code of Massachusetts Regulations form at 209 CMR §56.04. (Default Notice, *Thompson v. JPMorgan Chase Bank, N.A.*, Case 1:18-cv-10131-RWZ, Doc. No. 9-1, *Exhibit H*.) This and other errors in analysis have caused JPMorgan Chase Bank, N.A. to file a petition for rehearing, which is now supported by several Amicus Briefs.

Even if this Court does not seek to delve into whether the First Circuit issued a misguided holding now pending a request for rehearing, at a minimum the Court must recognize that the *Thompson* decision and its implications are decidedly focused on Massachusetts law. Review of the notice of default at issue in *Thompson* on its own, and particularly when compared to the notice of default at issue in this case, demonstrates a statutory framework and right to cure procedure that is entirely foreign to this jurisdiction. (*Exhibit H*.) No mortgage holder in this jurisdiction would ever issue a notice with the additional language that puzzled the First Circuit because Rhode Island law does not require this mandatory language. The General Assembly has not legislated any counterpart or law similar to M.G.L. ch. 244, § 35A, and the Rhode Island

13

Department of Business Regulation has not issued any regulation similar to 209 C.M.R. § 56.00 *et seq.* Because the First Circuit reviewed a Massachusetts foreclosure, that followed a Massachusetts notice of default and right to cure, and determined, errantly, that the notice did not comply with Massachusetts law, this Court should not consider the *Thompson* decision for guidance on the sufficiency of the Notice of Default in this case.

Defendant attempts to justify reliance upon Massachusetts by arguing that Rhode Island courts apply Massachusetts case law due to similarities of the statutes authorizing statutory power of sale. (Defendant's Memo at pp. 16-17, 27-29.) Defendant's broad inclusion of persuasive authority from Massachusetts presents no viable challenge here. For example, Defendant simply assumes the adoption of *Pinti v. Emigrant Mortgage Company*, 472 Mas. 226, 33 N.E.3d 1213 (2015) as applicable to Rhode Island law because the Massachusetts Supreme Judicial Court ("SJC") invalidated a foreclosure where the notice of default did not strictly comply with the mortgage. The reasoning of *Pinti*, however, distinguishes the decision from Rhode Island law because the SJC specifically relied upon M.G.L. c. 183, § 21 to demand strict compliance. By contrast, in *Martins*, 214 F.Supp.3d at 169-70, this Court specifically relied on Rhode Island law that a construed a notice requirement to a contract as a condition precedent, which required strict compliance. In another example, Defendant relies on *Paiva*, 120 F.Supp.3d at 10 to demand strict compliance, but this Court previously determined that a borrower's reliance upon that case, and Massachusetts law for that matter, was "misplaced." *252 Wolfrock Rd.*, 2016 U.S. Dist. LEXIS 91191 at *3; *see also Cornejo v. Bank of N.Y. Melon*, C.A. No. 16-64, 2016 U.S. Dist. LEXIS 110032 at *6-*7 (D.R.I. Aug. 17, 2016) ("Paiva, however, interprets Massachusetts law, and, Plaintiff's reliance on it for guidance under Rhode Island is, thus,

misplaced.") In *Thompson*, the First Circuit interpreted and relied exclusively upon Massachusetts law, and Defendant's reliance upon *Thompson*, much like *Paiva*, is misplaced.

### C. Defendant Ignores Rhode Island Law While Arguing that CitiBank, as Trustee did not Accelerate the Note

Defendant errantly argues that CitiBank, as Trustee was required to send her an acceleration letter. In *Boynton v. Federal Housing Finance Agency, et al.*, C.A. No. 1:15-cv-00350-JJM-LDA, 2017 U.S. Dist. LEXIS 150442, at *6 (D.R.I. Sept. 15, 2017), this Court concluded that Fannie Mae accelerated the mortgage when it filed the judicial foreclosure action. In *Viera v. Bank of N.Y. Mellon*, C.A. No. 17-cv-0523, 2018 U.S. Dist. LEXIS 176276, at *4-6 (D.R.I. Oct. 12, 2018), Judge Smith dismissed a similar claim under a breach of contract cause of action finding that Paragraph 22 of a mortgage did not require a foreclosing mortgagee to send borrower a separate notice of acceleration. Defendant's argument ignores the general principle, supported by this Court's precedent, that initiation of a judicial foreclosure action accelerates the mortgage. Paragraph 22 of the Mortgage at issue in this litigation contains no requirement for a separate notice of acceleration such that Plaintiffs' claim cannot provide any basis to evade foreclosure.

### III. CONCLUSION

For the reasons stated above, based upon the evidence provided and response to Defendant Katherine L. Caito's Statement of Undisputed Facts, CitiBank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 requests denial of Defendant's summary judgment motion and entry of judgment in their favor.

303935160V1 1010069

Respectfully submitted,

CITIBANK, N.A., AS TRUSTEE FOR
AMERICAN HOME MORTGAGE
ASSETS TRUST 2006-3, MORTGAGE
BACKED PASS-THROUGH
CERTIFICATES SERIES 2006-3,

By Its Attorneys,

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha, Bar No. 7075
Ethan Z. Tieger, Bar No. 9308
HINSHAW & CULBERTSON LLP
56 Exchange Terrace
Providence, RI 02903
Telephone: (401) 751-0842
Facsimile: (401) 751-0072
sbodurtha@hinshawlaw.com
etieger@hinshawlaw.com

Dated:   July 15, 2019

**CERTIFICATE OF SERVICE**

I, Samuel C. Bodurtha, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 15, 2019.

*/s/ Samuel C. Bodurtha*
Samuel C. Bodurtha

303935160V1 1010069