# EXHIBIT F

Case 1:18-cv-00427-JJM-LDA   Document 36-6   Filed 07/15/19   Page 2 of 12 PageID #: 619

Filed in Providence/Bristol County Superior Court
Submitted: 9/21/2017 3:44:06 PM
Envelope: 1211458
Reviewer: Alexa G.

| STATE OF RHODE ISLAND | SUPERIOR COURT |
|---|---|
| WASHINGTON, SC | |

KATHERINE L. CAITO

VS.                                                                          C.A. NO.: WC-2016-61

ONE LOT OF REAL ESTATE
REFERENCED AS PLAT: 3 LOT: 2419
OF WESTERLY TAX ASSESSOR
LOCATED AT 16 YOSEMITE VALLEY
ROAD, WESTERLY, RHODE ISLAND

**MEMORANDUM OF LAW IN OBJECTION TO APPROVAL OF CLAIM**

Petitioner, by her attorney has objected to the Motion to Approve the Amended Claim and requests an evidentiary hearing. The Petitioner and the Receiver did not anticipate that this matter would be scheduled on a Motion for a Proof of Claim, but that on September 22, 2017, the Court would conduct a status conference, not a hearing. The Receiver is out of town and will not be present. In addition, the Petitioner is filing a Motion to Dismiss the Receivership and to pay the Receiver his fees and costs. As a result, the Receiver will be paid in full without any Court involvement and the case closed.

**THE OCWEN AFFIDAVIT IS NOT A COMPETENT AFFIDAVIT IN SUPPORT OF THE PROOF OF CLAIM**

This loan originated on June 6, 2006. However Ocwen did not become the loan servicer until February 4, 2013. It should be initially noted that this loan is a

1

d in Providence/Bristol County Superior Court
omitted: 9/21/2017 3:44:06 PM
velope: 1211458
viewer: Alexa G.

negative amortization loan, which increases the principal balance based upon the payment and the interest rate in effect each year determined by a particular index. Ocwen's affiant has not provided any documents concerning the loan history or credits prior to the date in commenced servicing of the mortgage loan. The alleged affiant presented blatant and unverifiable hearsay regarding the loan history and the amount due. The Supreme Court has held in *Rhode Island Managed Eye Care v. Blue Cross & Blue Shield*, 996 A. 2d 684,693 (R.I., 2010):

Rule 803(6) of the Rhode Island Rules of Evidence is colloquially known as the "business-records exception" to the hearsay rule. "The business-records exception * * * is premised on the unusual reliability of records supplied by systematic checking and on a business's reliance on the precision of records created through regular habits." *Fondedile, S.A. v. C.E. Maguire, Inc.*, 610 A.2d 87, 94 (R.I.1992). Rule 803(6) provides that to be admissible a business record must be "made at or near the time [of the act, event, condition, opinion, or diagnosis at issue] by, or from information transmitted by, another person with knowledge * * *." Further, the rule requires that the record have been "kept in the course of a regularly conducted business activity," which must be "shown by the testimony of the custodian or other qualified witness." However, the rule also provides that a business record should not be admitted if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.*

. . . We have enunciated a four-part test, based on the rule, for the admissibility of a hearsay business record:

"First, the record must be regularly maintained in the course of a regularly conducted business activity. Second, the source of the information must be a person with knowledge. Third, the information must be recorded contemporaneously with the event or occurrence, and fourth, the party introducing the record must provide adequate foundation testimony." *Fondedile S.A.*, 610 A.2d at 93-94.

2

d in Providence/Bristol County Superior Court
omitted: 9/21/2017 3:44:06 PM
velope: 1211458
viewer: Alexa G.

In order "[t]o provide [an] adequate foundation a party must prove the first three requirements and authenticate the document or record." *Id.* at 94.

Rule 901 of the Rhode Island Rules of Evidence addresses the authentication of evidence. "In making Rule 901 determinations, trial justices must decide whether there is enough support in the record to conclude that it is 'reasonably probable' that the evidence is what the offeror [pro]claims it to be." *State v. Oliveira,* 774 A.2d 893, 926 (R.I.2001) (quoting *State v. Griffin,* 691 A.2d 556, 558 (R.I. 1997)). "If so, then the evidence's [per]suasive force is for the jury to decide." *Id.*

Under Rule 901, a document's authenticity may be established in any number of different ways. Rule 901(b)(1) provides "[b]y way of illustration only, and not by way of limitation," that the rule will be satisfied if a witness with knowledge testifies that "a matter is what it is claimed to be." In *State v. Calenda,* 787 A.2d 1195 (R.I.2002), we addressed the authentication of a computer printout as a business record. In that case we explained that, "[e]ssentially, a person who is knowledgeable about the preparation of records and their use in the course of the business is capable of identifying them sufficiently to satisfy the prerequisite for their admission as business records." *Id.* at 1200. Further, the party who authenticates the document need not be the custodian of the records to lay an adequate foundation, and foundation testimony may be supplied by more than one witness. *See id.*[3]

This alleged affiant, an employee of a nonparty, Ocwen Financial Corporation, not Ocwen did not reference any documents, identify any documents or provide any foundational testimony as to the basis for the claim. Instead all she did was state that the Petitioner owed a certain amount and attached a purported Payoff statement. This affidavit did not meet the tests of the hearsay rule and the business records exception. She indicated no familiarity with the Ocwen records as loan servicer nor the records of any prior loan servicer. She merely recited a bald, factually empty statement that this was accurate without indicating which

3

Filed in Providence/Bristol County Superior Court
Submitted: 9/21/2017 3:44:06 PM
Envelope: 1211458
Reviewer: Alexa G.

documents she reviewed, nor how he was familiar with the Citibank or Ocwen records, which is the test for admitting into evidence records of a third party. Thus this naked assertion as to the amount due should be disregarded by the Court and stricken from the record as unreliable hearsay.

This witness however has nothing to do with the day to day loan servicing of Ocwen Loan Servicing. Rather, as established in the attached deposition of her in Arizona on August 13, 2015,(Exhibit A), she is a witness for Ocwen's legal department and for attorneys who are representing Ocwen. In this deposition she stated on page 10:

I mean that's part of my job duties is the research that I do for the Law Department and outside counsel from time to time that requires that I appear as corporate rep based on my review of the business records and things of that nature
q. And sometimes you provide affidavits, is that correct?
A. Yes I do
On page 16 she stated:

Q. And what- how would you describe your job duties as Senior Loan Analyst in the Law Department?
A. I research contested litigated matter, and those are obviously cases. . .

And then as I said, from time to time, that would required that I appear to testify about business records, verify business records, things like that.
Q. All fight-from who for-for a research request, somebody inside Ocwn with what-
A. No Ocwen refers their legal work out whether it be Business Unit and/or Law Department to outside counsel to manage and handle the litigation. . .
Q. All right. So typically they come from counsel?
A. Correct.

4

d in Providence/Bristol County Superior Court
omitted: 9/21/2017 3:44:06 PM
elope: 1211458
iewer: Alexa G.

As indicated in this deposition on page 19, Ocwen utilizes a servicing Platform called RealServicing for its records. Thus this affiant is nothing but a professional witness who testifies for a living at the behest of outside counsel. Her alleged affidavit must be disregarded as it is short of factual basis.

It has been established that Ocwen Loan Servicing, LLC does not keep accurate records for its loan servicing platform known as REALServicing. On December 19, 2014, Ocwen Loan Servicing, LLC and Ocwen Financial Corporation entered into a Consent Order with the New York Department of Financial Services. A copy is attached as Exhibit B. This Consent Order contained the following findings of fact:

In 2010 and 2011 . . . The examination of Ocwen identified, amoung other thins, deficiencies in Ocwen's servicing platform and loss mitiation infrastructure, including (a) robo signing, (b) inaccurate affidavits and failure to property validate document execution process,(c) missing documentation, (d) wrongful foreclosure, (e) failure to properly maintain books and records, and (f) initiation of foreclosure actions without proper legal standing.

As a result Ocwen entered into a Consent Order to remedy these problems. However in 2012 it was found that there was widespread noncompliance with the 2012 agreement including : " failing to demonstrate implementation of policies and

5

procedures to verify borrower information on newly boarded accounts to accurately reflect the status and current balance of the borrower's account." Thus a new Consent Order was entered on December 5, 2012, attached as Exhibit C. The compliance monitor for Ocwen thus found in paragraph 14, which is listed under the heading of:

**Inadequate and Ineffective Information Technology Systems and Personnel**

Ocwen's information technology systems are a patchwork of legacy systems and systems inherited from acquired companies, many of which are incompatible. . . As a result, Ocwen regularly gives borrowers incorrect or outdated information, sends borrowers backdated letters, unreliably tracks data for investors and maintains inaccurate records.

In paragraph 17 the finding was made that Ocwen's core servicing functions rely on inadequate systems, which includes comments codes of more than 8400 codes, with duplication. In short Ocwen's record keeping was deficient with no basis for being admitted into evidence. It is unreliable and trustworthy as established by this Consent Order, which in fact amended by the March 27, 2017 Consent Order attached as Exhibit D. Its records are not reliable and cannot be presented to this Court as accurate. For this reason the Proof of Claim should not be considered without an evidentiary hearing with discovery.

6

Filed in Providence/Bristol County Superior Court
Submitted: 9/21/2017 3:44:06 PM
Envelope: 1211458
Reviewer: Alexa G.

An example of the bankrupt nature of this proof of claim is the outrageous time sheet attached by which the law firm of Hinshaw Culbertson seeks to obtain legal fees from the sale of Petitioner's home in the amount of $106,518.81. These outrageous fees are based on a more than 100 page timesheet estimate, which includes significantly improper fees and inflated fees. For example this fee affidavit seeks legal fees on the part of numerous personnel of Hinshaw Culbertson to respond to RESPA Requests for Information and Notices of Error. Ocwen seeks fees in its Motion for responding to the Notices of Error and Requests for Information responded to by the loan servicer. However RESPA precludes such fees. 12 CFR 1024.35 (h) provides:

**(h)** *Payment requirements prohibited.* **A <u>servicer</u> shall not charge a fee**, or require a borrower to make any payment that may be owed on a borrower's account, as a condition of responding to a notice of error.

12 CFR 1024.36(g)(1) likewise provides:

**(g)** *Payment requirement limitations* -

**(1)** *Fees prohibited.* Except as set forth in paragraph (g)(2) of this section, Defendant seeks fees in its Motion for responding to the Notices of Error and Requests for Information responded to by the loan servicer

12 CFR 1024.36(g)(1) likewise provides:

7

:d in Providence/Bristol County Superior Court
omitted: 9/21/2017 3:44:06 PM
elope: 1211458
iewer: Alexa G.

**(g)** *Payment requirement limitations -*

**(1)** *Fees prohibited.* Except as set forth in paragraph (g)(2) of this section, a servicer shall not charge a fee, or require a borrower to make any payment that may be owed on a borrower's account, as a condition of responding to an information request.

Thus the fees sought by the loan servicer are precluded by the provisions of Federal Law.

Thus these outrageous fees for RESPA response in violation of Federal Law should indicate to the Court that this fee petition requires discovery of the basis for these fees and should be denied. Ocwen cannot charge them and thus they cannot be payable to this law firm. In addition, there should be an inquiry if these were actually paid by Ocwen.

The legal fees also include $9532.16 in unknown or redacted fees which should be disregarded and not considered by the Court. Redacting fees does not advise the Court as to the exact nature of the work allegedly done. However this fee petition also seems to be timed in minimum time segments of 6 minutes at the minimum and no bill is submitted which is not a multiple of 6 minutes. Such a billing program is not reasonable nor properly charged under the terms of the mortgage. Actual time which is reasonable and necessary must be charged, not .1 hour multiple estimates. This firm should have a time program which contains actual time not estimates and minimum charges.

d in Providence/Bristol County Superior Court
Submitted: 9/21/2017 3:44:06 PM
Envelope: 1211458
Reviewer: Alexa G.

Finally Petitioner objects on the grounds that this Motion gave Petitioner less than 10 days to prepare. As previously indicated, it was agreed to have a status conference tomorrow at 9:30 AM, not to have a hearing.

### PETITIONER REQUESTS THAT THE RECEIVERSHIP BE DISMISSED WITH HER TO PAY ALL THE RECEIVER'S FEES

It is obvious that Ocwen acting on behalf of this Trust merely wants to credit bid for this house at a foreclosure sale with no scrutinty as to the amounts of the charges. It is already misrepresenting the amount of the claim and seeks to obtain this Court's approval of such an inflated and inaccurate claim. Thus the Petitioner requests the Court to Dismiss the Receivership and discharge the receiver with the Petitioner to pay his fee, which he states is $7200.00. This will not prejudice Ocwen and will remove additional work for the Court. For these reasons, the claim should be denied and an Order issued dismissing the receivership upon payment of the Receiver's fees. If the Court declines to enter this Order, Petitioner seeks to depose Ocwen regarding this claim.

d in Providence/Bristol County Superior Court
Submitted: 9/21/2017 3:44:06 PM
Envelope: 1211458
Reviewer: Alexa G.

KATHERINE CAITO

By her Attorney

/s/ John B. Ennis
JOHN B. ENNIS, ESQ.
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
(401) 679-0035
jbelaw75@gmail.com

## CERTIFICATION

I hereby certify that a true and correct copy of the within Memorandum of Law was emailed to Samuel Bodurtha on September 21, 2017.

/s/ John B. Ennis

10

d in Providence/Bristol County Superior Court
mitted: 9/21/2017 3:44:06 PM
elope: 1211458
iewer: Alexa G.

## SCHEDULE A

Ocwen Loan Servicing, LLC
Attn: Research Department
P.O. Box 24736
West Palm Beach, FL 33416-4736

Korde & Associates, PC
321 Billerica Road
Suite 210
Chelmsford, MA 01824-4100

Citibank, N.A., as Trustee

11