**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**CITIBANK, N.A AS TRUSTEE FOR AMERICAN HOME**
**MORTGAGE ASSETS**
**TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH**
**CERTIFICATES SERIES 2006-3**

          **VS**                   **C.A. NO:1:18-cv-427-JJM**

**KATHERINE L. CAITO**
**INTERNAL REVENUE SERVICE**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE**
**AFFIDAVIT OF SONY PRUDENT AND EXHIBIT A**

This case is before the Court in a Judicial Foreclosure case pursuant to

R.I.G.L. §34-27-1. This action was filed alleging that the Plaintiff was Citibank,

N.A. as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage

Backed Pass-through Certificates Series 2006-3. The Defendant has filed a Motion

to Strike the Affidavit of a purported employee of Ocwen Financial Services

Corporation, not Ocwen Servicing, LLC., Sony Prudent, who claims to have

signed this purported affidavit on May 15, 2019, and attached Exhibit A to this

affidavit. This affidavit is being filed pursuant to FRCP 56(c)(4), which requires

that an affiant filing a Motion in Support of Summary Judgment must make the

affidavit on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the

1

matters stated. In this case, the affiant has not complied with FRCP 56 and has not established any of the requirements of FRCP 56.

This mortgage loan was executed on  June 3, 2006 to American Broker's Conduit. The original  loan servicer was American Home Mortgage, which filed Chapter 11 Bankruptcy in 2007. The subsequent servicer was a new entity, named American Home Mortgage Servicing, Inc. which became servicer after the prior entity's bankruptcy. Subsequently that entity changed its name to Homeward Residential. Finally on March 1, 2013, servicing was transferred to a separate entity, Ocwen Loan Servicing, LLC.  The current servicer pursuant to a servicing transfer is PHH Mortgage Servicing, a separate corporation.

The recent decision of the First Circuit Court of Appeals in  *US Bank National Association v. Jones*, 18-1719(May 30, 2019) references FRE 803(6) and records of prior mortgage services and  is the basis for Defendant's Motion to Strike the Affidavit of Sony Prudent, the purported affiant in the Summary Judgment motion in this case.   In *Jones*, the Court analyzed the hearsay rule and whether the testimony of a Caliber Loan Servicing employee and an exhibit referencing the status of the loan after two prior servicers was properly admitted under the hearsay rule business record's exception FRE 803(6).  The issue in *Jones* was whether there was a sufficient foundation under 803(6) for the current loan

2

servicer employee to testify about the status of the mortgage loan account and how

it was boarded into the electronic system of record of the current servicer.  In

*Jones*, there was live testimony of a witness at a foreclosure trial. The Court set

forth the criteria for the admission of records of another servicer.  The Court held:

> [W]hether a third party's records . . . can be integrated into the records of the
> offering entity . . . for purposes of admission under the business records exception
> **is not an issue upon which this circuit has reached a uniform conclusion**"
> covering every instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012).
> **Rather, the admissibility of the evidence turns on the facts of each case.**

> Thus, we have affirmed the admission of business records containing third-party
> entries without third-party testimony where the entries were **"intimately
> integrated**" into the business records, FTC v. Direct Marketing Concepts, Inc., 624
> F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that produced the business
> records "**relied on the [third-party] document and documents such as those[]
> in his business,**" United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (internal
> quotation marks omitted). Conversely, in the absence of third-party evidence**, we
> have rejected the admission of business records containing or relying on the
> accuracy of third-party information integrated into the later record where,
> for example, the later business did not "use[] a procedure for verifying" such
> information, lacked a "self-interest in assuring the accuracy of the outside
> information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir.
> 1999) (emphasis omitted), or sought admission of third-party statements made "by
> a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at
> 75 (alterations omitted)). The key question is whether the records in question are
> "reliable enough to be admissible." Direct Marketing Concepts, 624 F.3d at 16
> n.15..

The Court reviewed the testimony of the trial witness and noted:

> In answering that question, we are mindful that the "**reliability of business
> records is said variously to be supplied by systematic checking, by regularity
> and continuity which produce habits of precision, by actual experience of**

**business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation**." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The rule seeks "to capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee who had testified that:

**Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19.

(emphasis added)

In *Jones*, the Court also noted that the mortgagor did not dispute the transaction history by claiming overbilling or unrecorded payments and did not contest the findings of the District Court that there were no discrepancies. However in this case, the affidavit of Katherine Caito and the subsequent Mortgage Loan Modification executed by the Defendant and recorded in the Land of Evidence Records of the Town of Westerly distinguish this case from Jones and mandates that the affidavit in support of the Summary Judgement motion be stricken as unverified hearsay. In this case, the Defendant disputes the accuracy of the records of Ocwen and the prior servicers.

Here the Defendant executed a Mortgage Modification Agreement, which corrected the actual interest rate on the mortgage and note.  This agreement corrected the interest rate on the loan to the Current Index set forth in the mortgage plus 3.125% in percentage points, contrasted with the 3.5 % in percentage points contained in the original mortgage and note. The affidavit of Sony Prudent ignored this agreement, which was recorded in the Land Evidence Records of the Town of Westerly  on October 23, 2006 in Book 1581 Page 329.

The holding in *Jones* mandates that the affidavit of Sony Prudent is defective because it does not verify anything about the boarding or the verification of the records of Homeward Residential (formerly American Home Mortgage Servicing, Inc. incorporated in Delaware on September 6, 2007 as indicated in its filing with the Rhode Island Secretary of State on December 18, 2007, attached to this memorandum as Exhibit A.  This corporation was not the original American Home Mortgage Servicing, Inc., the original servicer, which filed a Chapter  11 Bankruptcy Petition on August 6, 20007 in case number 07-11050 in the United States Bankruptcy Court for the District of Delaware.   Thus this mortgage loan has been serviced by four entities:

(1) The first American Home Mortgage Servicing, Inc. until its bankruptcy on August 6, 2007.

(2) The second American Home Mortgage Servicing, Inc. from its creation on September 6, 2007 until its name change of Homeward Residential, Inc. on May 31, 2012 as reflected in the attached record of the Rhode Island secretary of state.

(3)    Ocwen Loan Servicing, LLC from March 1, 2013 to June 1, 2019.

(4) PHH Mortgage Services from June 1, 2019.

Another issue for the Court's consideration of this Motion is that Ocwen's records have been admitted by it to be inherently inaccurate in filings with the State of Rhode Island and the State of New York. See the attached Consent Orders filed with the State of New York and Rhode Island. In these filings Ocwen made certain concessions and admissions. In its December 15, 2012 Consent Order, in New York, Ocwen admitted:

WHEREAS, the examination also preliminarily identified instances that the Department believes indicate non-compliance with the Agreement by Ocwen, including, in some instances: (1) failing to provide certain bonowers direct contact information for their designated loss mitigation staff or a single point of contact ("SPOC"); (2) pursuing foreclosure actions against certain bonowers who are seeking a loan modification (refered to in the Agreement as "dual tracking"); (3) failing to conduct an independent review of certain loan modification denials; (4) **failing to demonstrate its adoption of policies and procedures to effectively**

**track sanctioned third-party vendors, including local foreclosure counsel; (5) failing to demonstrate its implementation of policies and procedures to verify borrower information on newly boarded accounts to accurately reflect the status and current balance of the borrower's account;**
(Emphasis added)

In its December 19, 2014 Consent Order in New York,   Ocwen admitted:

17. Ocwen's core servicing functions rely on its inadequate systems. Specifically, Ocwen uses comment codes entered either manually or automatically to service its portfolio; each code initiates a process, such as sending a delinquency letter to a borrower, or referring a loan to foreclosure counsel. With Ocwen's rapid growth and acquisitions of other servicers, the number of Ocwen's comment codes has ballooned to more than 8,400 such codes. Often, **due to insufficient integration following acquisitions of other servicers, there are duplicate codes that perform the same function.** The result is an unnecessarily complex system of comment codes, including, for example, 50 different codes for the single function of assigning a struggling borrower a designated customer care representative.

18. Despite these issues, Ocwen continues to rely on those systems to service its portfolio of distressed loans. Ocwen's reliance on technology has led it to employ fewer trained personnel than its competitors. For example, Ocwen's Chief Financial Officer recently acknowledged, in reference to its offshore customer care personnel, that Ocwen is simply "training people to read the scripts and the dialogue engines with feeling." Ocwen's policy is to require customer support staff to follow the scripts closely, and Ocwen penalizes and has terminated customer support staff who fail to follow the scripts that appear on their computer screens. In some cases, this policy has frustrated struggling borrowers who have complex issues that exceed the bounds of a script and have issues speaking with representatives at Ocwen capable of addressing their concerns. Moreover, Ocwen's customer care representatives in many cases provide conflicting responses to a borrower's question. Representatives have also failed in many cases to record in Ocwen's servicing system the nature of the concerns that a borrower has expressed, leading to inaccurate records of the issues raised by the borrower.

19. Ocwen's inadequate infrastructure and ineffective personnel have resulted in Ocwen's failure to fulfill its legal obligations. Prior to the Department's and the

Compliance Monitor's review, Ocwen did not take adequate steps to implement reforms that it was legally obligated to implement pursuant to the 2011 Agreement.

On September 28, 2017, Ocwen and its predecessor Homeward Residential entered into a Consent Order  with the State of Rhode Island Department of Business Regulation, in which it agreed to eliminate its defective electronic system of record, called RealServicing. This was part of a nationwide settlement with Ocwen and its affiliates.  These regulatory actions and concessions and admissions by Ocwen indicate the unreliability of its electronic system of record and its failure to verify status of loans boarded on its system after servicing transfer.

This mortgage is not a simple interest mortgage. Rather it is a negative amortization adjustable rate mortgage.  There are three purported affidavits submitted in this case. They are the affidavit in support of the original complaint, the affidavit in support of the amended complaint and the affidavit in support of the motion for summary judgment.   The summary judgment affidavit was executed by an employee of Ocwen Financial Servicies Corporation, not the loan servicer, Ocwen Loan Servicing, LLC. This affidavit was executed by "employee", Sony Prudent who did not comply with the provisions of  FRE 803(6) and *Jones*. This  purported affidavit states:

I, Sony Prudent, hereby declare and state as follows:

8

1. I am a Senior Loan Analyst for Ocwen Financial Corporation, whose indirect subsidiary is Ocwen Loan Servicing, LLC ("Ocwen"), and I am authorized to/make this affidavit on behalf of Ocwen. Ocwen is the loan servicer for the subject mortgage loan on behalf of Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 ("Citibank,as Trustee").

I am over the age of 18 and competent to testify as to the matters contained in this affidavit. I have access to the business records of Ocwen, including the business records for and relating to the loan at issue in this litigation. I make this affidavit based upon my review of those records relating to the loan and from my own personal knowledge of how they are kept and maintained. The loan records are maintained by Ocwen in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity. Ocwen's records that relate to the loan that I reviewed and relied upon for the statements made in this Affidavit include images of the note, Ocwen's electronic servicing system and images of correspondence.

3. I have reviewed Ocwen's records with respect to mortgage loan number ending 2929 for the borrower and Defendant, Katherine L. Caito (the "Borrower").

9. Borrower failed to cure her default by June 17, 2018, as was required in the Notice of Default to avoid acceleration and sale. Borrower has not reinstated the Mortgage following her receipt of the Notice of Default. Following the Borrower's failure to cure her default, judicial foreclosure proceedings were then commenced to proceed to a foreclosure auction of the Property.

10. According to Ocwen's records, as of May 14,2019, approximately $4,622,474.40 is due and owing in principal, $1,350,190.85 is due and owing in interest, and $210,438.82 is due and owing in escrow payments on the Borrower's mortgage loan.

11. Since Borrower's default on the Mortgage in May 2012, additional costs, fees and expenses have been incurred on Borrower's mortgage loan and applied to. the unpaid balance. Attached hereto as *Exhibit A* is a true and accurate copy of the

Payment Reconciliation History on the Mortgage, itemizing all costs, fees and expenses applied to the account. All costs, fees, and expenses are necessary and proper and were incurred in compliance with the terms of the Note and Mortgage.

This affidavit  does not meet the criteria of *Jones* or FRE 803(6). The First

Circuit indicated in *Jones* that the following was necessary to allow business

records into evidence which incorporated another company's records:

"reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation

No such language was contained in the Sony Prudent affidavit. No reference was

made to the prior servicers' records. No language indicated that Ocwen integrated

these records into its own business records after verification of the reliability of the

prior servicers' records as to the status of the loan when it was service transferred

first to American Home Mortgage Servicing, Inc. 2( Homeward Residential) and

then to Ocwen. In fact neither the words reliable nor integrate appear in the

affidavit for Summary Judgment. Nor is there any reference to the prior servicers.

Ocwen simply cannot establish what the status of the mortgage loan account was

when the loan was service transferred on February 4, 2013 as indicated by Exhibit

A-1.

Its supposed payment reconciliation attached to the Summary Judgment has no reference to the prior history of the loan, which was a negative amortization, adjustable rate mortgage. Plaintiff has not presented reliable non-hearsay evidence regarding the status of the mortgage loan when the original AHMSI filed bankruptcy and transferred servicing, when Homeward Residential (AHMSI2) commenced servicing and when the loan was transferred to Ocwen. Plaintiff's affiant did not vouch for the reliability of these records nor did it comply with the requirements of FRC 803(6) as set forth in *Jones*. This affidavit did not identify the records which the affiant reviewed and did not provide anything other than a regurgitation of the hearsay business exception rule. There is no evidence presented which indicate the manner in which the witness verified the prior servicer's records or if in fact the prior servicer's records were in fact verified and were deemed accurate.

Ocwen  has admitted in three Consent Orders in New York and one in Rhode Island, that its electronic system of record is not accurate. These Consent Orders cast doubt on Ocwen's  record keeping and raise issues with the amount of the purported arrearage and the alleged balance. This is a negative amortization mortgage, whose original servicer was American Home Mortgage. In 2007 after er that entity's bankruptcy  the loan was service transferred to the new entity known

11

as  American Home Mortgage Servicing, Inc. ("Homeward Residential") and then

to Ocwen (now to PHH Mortgage Services). Since the affiant has not verified that

the records were not verified, then the affidavit is not compliant with the hearsay

rule and cannot support the  accuracy of the default letter and the amount

accelerated.   The Federal Rules of Evidence require  proof of the accuracy of the

records of other business entities, and proof of Ocwen's, Homeward Residential's

and American Home Mortgages' records under FRE 901, 902 and the business

records exception of the hearsay rule.

Furthermore, the affidavit on its face ignores the fact that the Defendant's

mortgage and note were modified and the mortgage payments were not calculated

accurately. Plaintiff's Exhibit B, which was attached to the complaint was recorded

on June 6, 2006 in the Land Evidence Records of the Town of Westerly. This

document contained a different Adjustable Rate Mortgage rider than the one as to

which Defendant should have been charged since origination. This adjustable rate

rider on the Defendant's  mortgage contained  a different adjustable rate than her

loan was processed for based on the disclosures for this loan. The recorded

mortgage indicates that the mortgage adjustable rate would be calculated at 3.5%

in percentage points to be added to the Current Index. However effective June 6,

2006, the Plaintiff signed a modification agreement which provided for the

accurate rate, which was 3.125% in percentage points to be added to the Current Index. This change was created by a Mortgage Modification Agreement, which agreement was signed by her and by American Home Mortgage, the original loan servicer. This document was recorded in the Land Evidence Records of the Town of Westerly  on October 23, 2006 in Book 1581 Page 329.   A genuine and authentic copy of this Modification Agreement is attached as Exhibit A-4.

Thus all the calculations of the Ocwen records and the allegations of the Plaintiff in this complaint are wrong. Based on the original principal balance of $4,500,000.00, the change in the calculation of the interest rate by reducing the percentage which was added to the Current Index equaled .375%  from origination of the mortgage loan until the present. Since July 1, 2006, the interest rate on her mortgage has been calculated at the Current Index plus 3.5%. The last loan change from  Ocwen is attached as Exhibit A-5. This exhibit is a genuine and authentic copy of the Mortgage Interest Rate and Monthly Payment change mailed to her, through her attorney.

Due to her mortgage being a negative amortization mortgage, the principal balance of the mortgage increased to an amount greater than $4,500,000.00. However based on a simple calculation of .375% for each year from the date of the first mortgage payment, which accrued interest since July 1, 2006, there have been

13

thirteen years of inaccurate interest calculations of her mortgage in the minimum amount of $16,875.00 per year. As a result, the amount charged for interest over thirteen years exceeds $219,375.00 at the current time. The Plaintiff's affidavit makes no mention of the fact that her mortgage and note were modified by American Home Mortgage. The purported Affidavit referenced the inaccurate default letter and inaccurately stated the amount of principal and interest due and miscalculated the late charges due based on the incorrect percentage added to the Current Index contrary to the terms of the modified mortgage and note.

*Jones* clearly interprets the Federal Rules of Evidence and demonstrates the requirements to admit business records into evidence.  Without verification of the American Home and Homeward Residential records, this affidavit cannot be admitted into evidence under the Federal Rules.  The fact that the mortgage was modified shortly after origination and the rate of the note was wrong, resulted in a completely inaccurate default letter and purported affidavit.

 For these reasons the Motion  to Strike the Affidavit of Sony Prudent should be granted.

KATHERINE CAITO

July 15, 2019                                          By her Attorney

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw75@gmail.com

CERTIFICATION OF SERVICE

I hereby certify that I emailed a copy of this Memorandum of Law to Samuel Bodurtha and Ethan Tieger on July 15, 2019.

/s/ John B. Ennis, Esq.

15