## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

CITIBANK, N.A AS TRUSTEE FOR AMERICAN HOME
MORTGAGE ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-
THROUGH CERTIFICATES SERIES 2006-3

          VS                    C.A. NO:1:18-cv-427-JJM

KATHERINE L. CAITO
INTERNAL REVENUE SERVICE

### AFFIDAVIT OF KATHERINE CAITO

I, Katherine Caito, hereby declare and state as follows:

1. I am the defendant in this case.

2. Since I owned this property, I have never sent or provided any lender or mortgagee or loan servicer a mortgage payment check with insufficient funds to pay the mortgage, which was returned unpaid.

3. I was never advised by any lender or mortgagee or loan servicer that a check had been returned for nonpayment and that as a result all payments had to be paid by (a) cash;(b) money order;(c) certified check, bank check, treasurer's check, provided any such check is drawn upon and institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

4. The letter from Ocwen Loan Servicing, LLC dated May 11, 2018 contained inaccurate amounts of fees and charges in the amount of $6086.49.

1

5. The affidavit for Summary Judgment contains a purported affidavit of a person named Sony Prudent, which contains an Exhibit A.

6. This Exhibit A contains a purported loan history, which suggests that as of May 11, 2018, the total of fees and expenses was $6086.49. Exhibit A indicates that after May 11, 2018, ten charges of $14.50 each were added to the charges.

7. I have reviewed Exhibit A and can state with certainty that certain of these charges are not accurate or were not actually incurred and were not reasonable and necessary.

8. From origination of the mortgage loan, I never received a default letter from any loan servicer which provided me a specific date to cure any default and which was deposited in the United States mail at least thirty days before the date which was specified for the cure date.

9. I never received a default notice consistent with the terms of paragraph 22 or paragraph 19 of the mortgage.

10. Thus all the charges for foreclosure and foreclosure related charges were not accurate charges contained within the $6086.49 fees and expenses of the May 11, 2018 letter. These charges which resulted in the $6086.49 being inaccurate were the following:

11-14-16    FC thru Judgment                                    $556.25

| 4-1-16 | Selling Office/Sheriff Cancel fee | $425.00 |
| 3-8-16 | Sale Publication | $1203.76 |
| 2-22-16 | Selling Officer/Sheriff Cancel Fee | $425.00 |
| 2-1-16 | FC Thru complaint | $125.00 |
| 2-1-16 | Selling Officer/Sheriff Cancel Fee | $425.00 |
| 2-1-16 | Sale Publication | $714.88 |
| 7-23-13 | FC thru Title search | $520.00 |

11. These total fees totaled $4394.90.

12. I never received a default letter pursuant to the terms of the mortgage which would have allowed any exercise of the statutory power of sale.

13. At no time was a sheriff ever hired to sell my home.

14. At no time was there a Selling Officer or any other official hired to sell my home.

15. At no time was a judicial foreclosure commenced in 2013-2016, which could result in a Judgment being entered.

16. The purported default letter included three fees for service of process, specifically the following:

| 5-8-15 | Service of process | $22.10 |
| 2-7-18 | Service of Process | $10.84 |

3

2-22-16       Service of Process           $56.54

17. The purported default letter also included a fee for additional hour court appearance of $50.00 on 2-22-16.

18. There was no Court appearance for an attorney to be paid an extra hourly fee on February 22, 2016 and where there was never any servicer of process on me.

19. I was never served process by Ocwen or any other entity.

20. The purported default letter included three skip trace fees, specifically the following:

5-8-18        Skip Trace fee              $5.46

2-22-16       Skip Trace fee              $5.30

7-23-13       Skip Trace fee              $5.30

21. However I have always lived at my home at 16 Yosesmite Valley Road, Westerly, RI, 02891 and there was no reason to search for my address, as Ocwen knew that I was living in the house.

22. The total fees of $6086.49 also included property inspection fees for the period from April, 2013 to May 2018 in the amount of $458.74 for 37 separate charges.

23. At all times Ocwen was aware that I was living in the property and that I had an attorney. I paid the taxes for the property from 2016 through 2018.

4

Ocwen Loan Servicing, LLC would be effective on March 1, 2013.

34. The last page of Exhibit A-1 contained a payment coupon from , which indicated on that effective February 13, 2013 no amount was past due on my mortgage.

35. Plaintiff's Exhibit B, which was attached to the complaint was recorded on June 6, 2006 in the Land Evidence Records of the Town of Westerly. This document contained a different Adjustable Rate Mortgage rider than the one contained in the loan modification. This adjustable rate rider on my mortgage contained a different adjustable rate on than my loan was processed for based on the disclosures for this loan. The recorded mortgage indicates that my mortgage adjustable rate would be calculated at 3.5% in percentage points to be added to the Current Index. However on June 6, 2006, I signed a modification agreement which provided for the accurate rate, which was 3.125% in percentage points to be added to the Current Index. The rate was lowered when American Home Mortgage, drafted a Mortgage Modification Agreement, which was signed by me and by American Home Mortgage, the original loan servicer. This document was recorded in the Land Evidence Records of the Town of Westerly on October 23, 2006 in Book 1581 Page 329. A genuine and authentic copy of is attached as Exhibit A-4.

36. Based on my original principal balance of $4,500,000.00, the change in the calculation of the interest rate by reducing the percentage which was added to the Current Index equaled .375% from origination of the mortgage loan until the present.

37. Since August 1, 2006, the interest rate on my mortgage has been calculated at the Current Index plus 3.5%. The last rate change from Ocwen is attached as Exhibit A-5. This exhibit is a genuine and authentic copy of the Mortgage Interest Rate and Monthly Payment change mailed to me, through my attorney By Ocwen.

38. Due to my mortgage being a negative amortization mortgage, the principal balance of the mortgage increased to an amount greater than $4,500,000.00. However based on a simple calculation of .375% for each year from the date of the first mortgage payment acccruaral of interest on July 1, 2016, there have been thirteen years of inaccurate interest calculation of my mortgage in the minimum amount of $16,875.00 per year. As a result, the amount charged for interest over thirteen years exceeds $219,375.00 at the current time. The Plaintiff's affidavit makes no mention of the fact that my mortgage and note was modified by American Home Mortgage.

39. The purported May 11, 2018 default notice mailed to me inaccurately stated

based on the incorrect percentage added to the Current Index contrary to the terms of the modified mortgage and note.

40. I entered into a Settlement Agreement with Ocwen Loan Servicing, LLC. Plaintiff's attorney insisted that a nonexistent entity, named American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 also be a party to this agreement and that I agree to release that entity, which claimed that it was the investor. The amount of the obligation due to the owner of the note and the mortgage was not resolved by that agreement. I did not acknowledge the actual amount of the debt of this obligation in this settlement agreement. The purpose of the agreement was to facilitate the Receivership. I made an agreement with Ocwen and an entity, which the records of the Securities and Exchange Commission indicates does not exist under that name.

41. This entity did not sign the agreement and no person from Citibank signed this agreement.

41. The mortgage assignment was dated August 27, 2012.

42. I was not advised pursuant to the provisions of the Truth in Lending Act that the mortgage loan had been sold, within thirty days of August 27, 2012.

43. Korde & Associates, P.C. claimed to mail me a purported Notice of Default, dated October 30, 2015. A copy of this letter is attached as Exhibit A-2.

8

44. However this letter did not comply with the terms of my mortgage since it was deposited in the United States mail on October 31, 2015 at 12:23 AM.

45. Exhibit A-3 is the USPS tracking record for the mailing of this letter, which indicates that this letter was not deposited into the United States mail until October 31, 2015.

46. This letter was only provided me 29 days to cure the purported default from the date that it was deposited into the United States mail.

47. Despite this defect, Korde & Associates, P.C. sought to exercise the statutory power of sale and incurred legal fees and costs, which were charged to my mortgage loan account and were included in the $6086.49 of legal fees and costs included in the amount of the default letter mailed to me.

I I declare under the pain and penalty of perjury that the foregoing is true and correct.

July 15, 2019

*Katherine Caito*

KATHERINE CAITO

Subscribed and sworn to before me this 15th day of July, 2019.

*[signature]*

NOTARY PUBLIC

9

VANESSA LYN BLUM
Notary Public, State of Rhode Island
My Commission Expires Oct. 20, 2020