NEW YORK STATE
DEPARTMENT OF FINANCIAL SERVICES

In the Matter of

OCWEN FINANCIAL CORPORATION,
OCWEN LOAN SERVICING, LLC

## CONSENT ORDER PURSUANT TO NEW YORK BANKING LAW § 44

The New York State Department of Financial Services (the "Department") and Ocwen Financial Corporation, the parent company of Ocwen Loan Servicing, LLC (together, "Ocwen"), (collectively, the "Parties") stipulate that:

WHEREAS, Ocwen Loan Servicing, LLC is a New York State-licensed mortgage banker and an exempt mortgage loan servicer, pursuant to the New York Banking Law, and the Department is responsible for its supervision and regulation in New York;

WHEREAS, on December 19, 2014, the Parties entered into a Consent Order (the "2014 Consent Order") which, among other things, required Ocwen to retain an independent operations monitor (the "Operations Monitor") for a period of 24 months to review and assess the adequacy and effectiveness of Ocwen's operations;

WHEREAS, under the 2014 Consent Order, the Department retained the right to extend the term of the Operations Monitor for another twelve months if the Department determined that Ocwen did not achieve certain benchmarks established by the Operations Monitor;

WHEREAS, the Operations Monitor was required to, among other things, review and make recommendations for improving Ocwen's operations and to assist the company in building a corporate governance structure that would help ensure ongoing compliance with legal and regulatory obligations.

1

WHEREAS, Ocwen formally engaged the Operations Monitor on March 30, 2015;

WHEREAS, during the past two years, Ocwen has implemented certain of the reforms required by the 2014 Consent Order and the recommendations made by the Operations Monitor;

WHEREAS, among other things, Ocwen has expanded its Board of Directors by installing a number of independent directors, made improvements in enhancing its compliance and information technology infrastructure and, most significantly for the borrowers whose loan Ocwen services, the company has improved its borrower correspondence function to minimize the likelihood of providing inaccurate, misdated or otherwise contradictory and misleading information;

WHEREAS, notwithstanding these improvements, Ocwen is still in the process of implementing a number of reforms and recommendations, and has yet to demonstrate that its reforms are sustainable; and

WHEREAS, in the waning months of the Operations Monitor's initial 24-month term, Ocwen began to initiate a significant shift in certain aspects of its servicing operations and the Department has concerns about the company's ability to implement these changes and service loans without considerable regression of its compliance management systems, operational control environment and technology infrastructure.

NOW, THEREFORE, in recognition of both the progress the company has made and the Department's ongoing concerns about the safety and soundness of Ocwen's operations, the Department deems it prudent, and Ocwen agrees, to enter into this Consent Order.

## Settlement Provisions

**Operations Monitor**

11. By April 14, 2017, the Operations Monitor will issue a final report detailing all outstanding corrective measures that Ocwen must implement to address weaknesses and deficiencies in Ocwen's operations. The Operations Monitor's engagement shall terminate upon the submission of the final report.

12. Within thirty (30) days of receiving the Operations Monitor's final report, Ocwen will submit to the Department a detailed written plan to address the outstanding corrective measures and all of the items listed in paragraph 14 (the "Corrective Action Plan"). In the event that Ocwen disagrees with the necessity or scope of any of the outstanding corrective measures, or the operational deficiency to which they relate, Ocwen shall include in the Corrective Action Plan an explanation of its objections, alternative proposals that Ocwen believes will achieve the same objective or purpose as the corrective measures at issue, and an explanation as to why Ocwen's alternative proposals are preferable to achieving the necessary outcome.

13. The Parties shall seek to reach an agreement regarding any proposed modification to the outstanding corrective measures. If they are unable to agree on any modification of the proposed corrective measures, then Ocwen shall implement those corrective measures which the Department deems appropriate.

14. In addition to the outstanding corrective measures, Ocwen shall conduct an enterprise wide risk assessment and an information technology risk assessment within six months of the date of this Consent Order and provide the completed assessments to the Department.

15. Ocwen will report to the Department on its progress in addressing the Corrective Action Plan on a quarterly basis, starting with the end of the second calendar quarter of 2017.

16. In addition, the Department will conduct an examination of Ocwen on a date selected by the Department to assess Ocwen's implementation of the outstanding corrective measures and the safety and soundness of its servicing operations. Nothing in this paragraph shall impact the Department's authority to conduct examinations of Ocwen at any time.

17. The Department will not extend the term of the Operations Monitor an additional twelve months, as contemplated in paragraph 46 of the 2014 Consent Order; however, the Parties agree that the Department may, in its sole discretion, require Ocwen to retain an independent consultant that is acceptable to the Department to review and issue recommendations on Ocwen's servicing operations if the Department concludes, as a result of the examination provided for in paragraph 16, that Ocwen has materially failed to implement the Corrective Action Plan or otherwise finds that Ocwen's servicing operations are materially deficient.

**Senior Management**

18. Ocwen's Board of Directors will engage in an ongoing review of the performance of the company's senior management, focusing on senior management's oversight of ongoing or material changes to Ocwen's servicing operations, addressing the Corrective Action Plan, implementation of the 2017 information technology plan, and the company's adherence to the revised policies and procedures developed with the assistance of the Operations Monitor.

**Mortgage Servicing Rights ("MSRs")**

19. To assist the Department in determining whether to ease the restrictions on Ocwen's ability to acquire MSRs, the Department has scheduled an on-site examination of Ocwen. As part of this examination, the Department will assess whether Ocwen is currently able to service mortgage loans without experiencing the widespread servicing failings identified in the 2012 agreement between Ocwen and the Department and the 2014 Consent Order.

20. The Department will review the examination findings to determine whether to approve Ocwen's request to ease the restrictions on its ability to acquire new MSRs.

21. Ocwen acknowledges and understands that this Consent Order does not address any findings that may arise out of the scheduled examination. The Department and Ocwen will confer separately to address any newly identified findings.

**Breach of Consent Order**

22. In the event that the Department believes Ocwen to be in material breach of this Consent Order ("Breach"), the Department will provide written notice to Ocwen, and Ocwen must, within ten (10) business days of receiving such notice, or on a later date if so determined in the Department's sole discretion, appear before the Department to demonstrate that no Breach has occurred or, to the extent pertinent, that the Breach has been cured.

23. The parties understand and agree that Ocwen's failure to make the required showing within the designated time period will be presumptive evidence of Ocwen's Breach. Upon a finding of Breach, the Department has all the remedies available to it under the New York Banking and Financial Services Laws and may use any evidence available to the Department in any ensuing hearings, notices, or orders.

**Waiver of Rights**

24. Ocwen understands and agrees that no provision of this Consent Order is subject to review in any court or tribunal outside the Department.

**Parties Bound by the Consent Order**

25. This Consent Order is binding on the Department and Ocwen, as well as Ocwen's successors and assigns that are under the Department's supervisory authority. This Consent Order does not bind any federal or other state agency or any law enforcement authority.

26. Nothing in this Consent Order shall limit the Department's authority to examine or otherwise address any conduct.

**Notices**

27. All notices or communications regarding this Consent Order will be sent to:

For the Department:

Peter C. Dean
Executive Deputy Superintendent
Real Estate Finance Division
One State Street
New York, NY 10004

For Ocwen:

Timothy M. Hayes
Executive Vice President and General Counsel
Ocwen Financial Corporation
1661 Worthington Road #100
West Palm Beach, FL 33409

**Miscellaneous**

28. Each provision of this Consent Order will remain effective and enforceable until stayed, modified, suspended, or terminated by the Department.

29. No promise, assurance, representation, or understanding other than those contained in this Consent Order has been made to induce any party to agree to the provisions of the Consent Order.

**IN WITNESS WHEREOF**, the parties have caused this Consent Order to be signed this 27th day of March 2017.

| | |
|---|---|
| **OCWEN FINANCIAL CORPORATION** | **NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES** |
| By: _____ <br> RONALD FARIS <br> President and Chief Executive Officer | By: _____ <br> MARIA T. VULLO <br> Superintendent of Financial Services |
| **OCWEN LOAN SERVICING, LLC** | **NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES** |
| By: _____ <br> TIMOTHY M. HAYES <br> Executive Vice President | By: _____ <br> PETER C. DEAN <br> Executive Deputy Superintendent, Real Estate Finance Division |