# EXHIBIT 1

AMERICAN HOME MORTGAGE ASSETS LLC,

COMPANY

WELLS FARGO BANK, N.A.,

MASTER SERVICER

AND

CITIBANK, N.A.,

TRUSTEE

POOLING AND SERVICING AGREEMENT

DATED AS OF JULY 1, 2006

———————————

MORTGAGE-BACKED PASS-THROUGH CERTIFICATES

SERIES 2006-3

---

## TABLE OF CONTENTS

### ARTICLE I
### DEFINITIONS

Section 1.01          Defined Terms.
      Accepted Master Servicing Practices
      Accrual Period
      Accrued Certificate Interest
      Additional Disclosure Notice
      Additional Form 10-D Disclosure
      Additional Form 10-K Disclosure
      Adjustable Rate Mortgage Loans
      Advance
      Affiliate
      Aggregate Stated Principal Balance
      Agreement
      AHMC
      Allocated Realized Loss Amount
      Assessment of Compliance
      Assignment
      Assumed Final Maturity Date
      Available Funds

Bankruptcy Code
Book-Entry Certificate
Business Day
Cap Contract
Cap Contract Reserve Fund
Cap Counterparty
Cap Extra Principal Distribution Amount
Cash Liquidation
Certificate
Certificate Account
Certificateholder
Holder
Certificate Owner
Certificate Principal Balance
Certificate Register
Class
Class A Certificates
Class I-A Certificates
Class I-A-1 Certificates
Class I-A-2-1 Certificates
Class I-A-2-2 Certificates
Class I-A-3 Certificates
Class II-A Certificates
Class II-A-1-1 Certificates
Class II-A-1-2 Certificates
Class II-A-2 Certificates
Class II-A-3-1 Certificates
Class II-A-3-2 Certificates
Class III-A Certificates
Class III-A-1-1 Certificates
Class III-A-1-1 Underlying Interest
Class III-A-1-2 Certificates
Class III-A-2 Certificates
Class III-A-3-1 Certificates
Class III-A-3-2 Certificates
Class A Certificates
Class C Certificates
Class C Interest
Class M Certificates
Class M-1 Certificates
Class M-2 Certificates
Class M-3 Certificates
Class M-4 Certificates
Class M-5 Certificates
Class M-6 Certificates
Class M-7 Certificates
Class M-8 Certificates
Class P Certificates
Class P Interest
Class R Certificate
Class R-1 Interest
Class R-2 Interest
Class R-3 Interest
Class R-4 Interest
Class R-X Certificate
Closing Date

Closing Date Deposit Amount
Code
Collateral Value
Commission
Company
Compensating Interest
Confirmation
Cooperative
Cooperative Assets
Cooperative Building
Cooperative Lease
Cooperative Loan
Cooperative Unit
Corporate Trust Office
Corresponding Certificate
Cumulative Loss Trigger Event
Current Report
Curtailment
Custodian
Cut-off Date
Cut-off Date Balance
Debt Service Reduction
Deferred Interest
Deficient Valuation
Definitive Certificate
Deleted Mortgage Loan
Delinquency Trigger Test
Delinquent
Depositor
Depository
Depository Participant
Determination Date
Disqualified Organization
Distribution Account
Distribution Date
Distribution Report
Due Date
Due Period
EDGAR
Eligible Account
Eligible Substitute Mortgage Loan
ERISA Restricted Certificates
Event of Default
Exchange Act
Exchange Act Reports
Fannie Mae
FDIC
Fitch Ratings
Form 8-K Disclosure Information
Form 10-K Filing Deadline
Freddie Mac
Grantor Trust
Group I Available Funds
Group I Cut-off Date Balance
Group I Loans
Group I Net Rate Cap

Group I Principal Distribution Amount
Group I Senior Certificates
Group I Senior Principal Distribution Amount
Group II Available Funds
Group II Cut-off Date Balance
Group II Loans
Group II Net Rate Cap
Group II Principal Distribution Amount
Group II Senior Certificates
Group II Senior Principal Distribution Amount
Group III Available Funds
Group III Net Rate Cap
Group III Principal Distribution Amount
Group III Senior Principal Distribution Amount
Initial Certificate Principal Balance
Insurance Policy
Insurance Proceeds
Interest Rate Swap Agreement
Interest Remittance Amount
Late Collections
Lender-Paid Insured Loans
Lender-Paid Insurer
Lender-Paid Primary Insurance Policy
Lender-Paid Primary Insurance Rate
LIBOR Business Day
LIBOR Certificate
LIBOR Interest Determination Date
Liquidated Mortgage Loan
Liquidation Proceeds
Loan Group
Loan Group I
Loan Group II
Loan Group III
Loan-to-Value Ratio
Lost Note Affidavit
Margin
Marker Rate
Master Servicer
Master Servicing Compensation
Maximum Uncertificated Accrued Interest Deferral Amount
MERS
MERS® System
Mezzanine Principal Distribution Amount
MIN
MOM Loan
Monthly Advance
Monthly Payment
Moody's
Mortgage
Mortgage File
Mortgage Loan
Mortgage Loan Purchase Agreement
Mortgage Loan Schedule
Mortgage Note
Mortgage Rate
Mortgaged Property

Mortgagor
MTA
MTA Certificates
MTA Interest Determination Date
Net Deferred Interest
Net Liquidation Proceeds
Net Mortgage Rate
Net Prepayment Interest Shortfall
Net Prepayments
Net Rate Cap
Net Rate Shortfall
Net Rate Shortfall Carry-Forward Amount
Net Swap Payment
Nonrecoverable Advance
Non-United States Person
Notional Amount
OC Floor
Offered Certificates
Officers' Certificate
One-Month LIBOR
Opinion of Counsel
Optional Termination Date
OTS
Outstanding Mortgage Loan
Outstanding Principal Balance
Overcollateralization Target Amount
Overcollateralized Amount
Ownership Interest
Pass-Through Rate
PCAOB
Permitted Investment
Permitted Transferee
Person
Prepayment Assumption
Prepayment Charge
Prepayment Interest Shortfall
Prepayment Period
Primary Hazard Insurance Policy
Primary Mortgage Insurance Policy
Principal Distribution Amount
Principal Prepayment
Principal Prepayment in Full
Principal Remittance Amount
Prospectus Supplement
Protected Account
Purchase Price
Qualified Insurer
Rating Agency
Realized Loss
Record Date
Reference Banks
Regular Certificate
Regular Interest
Regulation AB
Relevant Servicing Criteria
Relief Act

Relief Act Interest Shortfall
REMIC
REMIC 1
REMIC 1 Interest Loss Allocation Amount
REMIC 1 Marker Allocation Percentage
REMIC 1 Overcollateralization Amount
REMIC 1 Principal Loss Allocation Amount
REMIC 1 Regular Interests
REMIC 1 Required Overcollateralization Amount
REMIC 1 Sub WAC Allocation Percentage
REMIC 1 Subordinated Balance Ratio
REMIC 2
REMIC 2 Certificate
REMIC 2 Certificateholder
REMIC 2 Regular Interest
REMIC 3
REMIC 3 Regular Interest
REMIC 4
REMIC 4 Regular Interest
Remittance Report
REO Acquisition
REO Disposition
REO Imputed Interest
REO Proceeds
REO Property
Reportable Event
Reporting Servicer
Repurchase Price
Request for Release
Residual Certificates
Residual Interest
Responsible Officer
Rolling Sixty Day Delinquency Rate
Sarbanes Oxley Certification
Security Agreement
Senior Certificates
Senior Enhancement Percentage
Senior Principal Distribution Amount
Servicer
Servicer Remittance Date
Servicing Advances
Servicing Agreement
Servicing Criteria
Servicing Fee
Servicing Fee Rate
Servicing Function Participant
Servicing Officer
Servicing Rights Pledgee
Significance Estimate
Significance Percentage
Single Certificate
Sixty-Day Delinquency Rate
Sponsor
Standard & Poor's
Startup Day
Stated Principal Balance

Stepdown Date
Stepdown Target Subordination Percentage
Step-Up Date
Subordinate Component
Subordinate Net Rate Cap
Subservicer
Subsequent Recoveries
Substitution Adjustment
Swap Counterparty
Swap Counterparty Principal Portion
Swap Counterparty Termination Event
Swap Notional Amount
Swap Termination Payment
Tax Returns
Termination Price
Terminating Purchase
Transfer
Transferor
Trigger Event
Trust Fund
Trust REMIC
Trustee
Uncertificated Accrued Interest
Uncertificated Principal Balance
Uncertificated Pass-Through Rate
Uncertificated REMIC 1 Pass-Through Rate
Underlying Interest
Underwriter
Uninsured Cause
United States Person
Voting Rights
Weighted Average Net Mortgage Rate

| Section 1.02 | Determination of LIBOR. |
| Section 1.03 | Determination of MTA. |
| Section 1.04 | Allocation of Certain Interest Shortfalls. |

ARTICLE II
CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

| Section 2.01 | Conveyance of Mortgage Loans. |
| Section 2.02 | Acceptance of the Trust Fund by the Trustee. |
| Section 2.03 | Representations, Warranties and Covenants of the Master Servicer and the Company. |
| Section 2.04 | Assignment of Interest in the Mortgage Loan Purchase Agreement. |
| Section 2.05 | Issuance of Certificates; Conveyance of REMIC Regular Interests and Acceptance of REMIC 1, REMIC 2, REMIC 3 and REMIC 4 by the Trustee. |
| Section 2.06 | Negative Covenants of the Trustee and Master Servicer. |
| Section 2.07 | Purposes and Powers of the Trust. |
| Section 2.08 | Grantor Trust Designations. |

ARTICLE III
ADMINISTRATION AND SERVICING OF THE TRUST FUND

| | |
|---|---|
| Section 3.01 | Administration and Servicing of Mortgage Loans. |
| Section 3.02 | REMIC-Related Covenants. |
| Section 3.03 | Monitoring of Servicer. |
| Section 3.04 | Fidelity Bond. |
| Section 3.05 | Power to Act; Procedures. |
| Section 3.06 | Due-on-Sale Clauses; Assumption Agreements. |
| Section 3.07 | Release of Mortgage Files. |
| Section 3.08 | Documents, Records and Funds in Possession of Master Servicer To Be Held for Trustee. |
| Section 3.09 | Standard Hazard Insurance and Flood Insurance Policies. |
| Section 3.10 | Presentment of Claims and Collection of Proceeds. |
| Section 3.11 | Maintenance of the Primary Mortgage Insurance Policies. |
| Section 3.12 | Trustee to Retain Possession of Certain Insurance Policies and Documents. |
| Section 3.13 | Realization Upon Defaulted Mortgage Loans. |
| Section 3.14 | Compensation for the Master Servicer. |
| Section 3.15 | REO Property. |
| Section 3.16 | Protected Accounts. |
| Section 3.17 | Certificate Account. |
| Section 3.18 | Permitted Withdrawals From the Certificate Account. |
| Section 3.19 | Distribution Account. |
| Section 3.20 | Permitted Withdrawals and Transfers From the Distribution Account. |
| Section 3.21 | Annual Statement as to Compliance. |
| Section 3.22 | Annual Assessments of Compliance and Attestation Reports. |
| Section 3.23 | Exchange Act Reporting. |
| Section 3.24 | Intention of the Parties and Interpretation. |
| Section 3.25 | Reserved. |
| Section 3.26 | Optional Purchase of Defaulted Mortgage Loans. |
| Section 3.27 | Reserved. |
| Section 3.28 | Grantor Trust Reporting. |

## ARTICLE IV
## PAYMENTS TO CERTIFICATEHOLDERS

| | |
|---|---|
| Section 4.01 | Distributions. |
| Section 4.02 | Statements to Certificateholders. |
| Section 4.03 | Remittance Reports; Advances by the Master Servicer. |
| Section 4.04 | Distributions on the REMIC Regular Interests. |
| Section 4.05 | Allocation of Realized Losses. |
| Section 4.06 | Information Reports to Be Filed by the Servicer. |
| Section 4.07 | Compliance with Withholding Requirements. |
| Section 4.08 | The Interest Rate Swap Agreement and the Grantor Trust. |
| Section 4.09 | Allocation of Net Deferred Interest. |
| Section 4.10 | The Cap Contract. |
| Section 4.11 | Cap Contract Reserve Fund |

## ARTICLE V
## THE CERTIFICATES

Section 5.01      The Certificates.
Section 5.02      Registration of Transfer and Exchange of Certificates.
Section 5.03      Mutilated, Destroyed, Lost or Stolen Certificates.
Section 5.04      Persons Deemed Owners.

ARTICLE VI
THE COMPANY AND THE MASTER SERVICER

Section 6.01      Liability of the Company and the Master Servicer.
Section 6.02      Merger, Consolidation or Conversion of the Company or the Master Servicer.
Section 6.03      Limitation on Liability of the Company, the Master Servicer, the Trustee and Others.
Section 6.04      Limitation on Resignation of the Master Servicer.
Section 6.05      Sale and Assignment of Master Servicing.

ARTICLE VII
DEFAULT

Section 7.01      Events of Default.
Section 7.02      Trustee to Act; Appointment of Successor.
Section 7.03      Notification to Certificateholders.
Section 7.04      Waiver of Events of Default.
Section 7.05      List of Certificateholders.

ARTICLE VIII
CONCERNING THE TRUSTEE

Section 8.01      Duties of Trustee.
Section 8.02      Certain Matters Affecting the Trustee.
Section 8.03      Trustee Not Liable for Certificates or Mortgage Loans.
Section 8.04      Trustee May Own Certificates.
Section 8.05      Trustee's Fees.
Section 8.06      Eligibility Requirements for Trustee.
Section 8.07      Resignation and Removal of the Trustee.
Section 8.08      Successor Trustee.
Section 8.09      Merger or Consolidation of Trustee.
Section 8.10      Appointment of Co-Trustee or Separate Trustee.

ARTICLE IX
TERMINATION

Section 9.01      Termination Upon Repurchase or Liquidation of All Mortgage Loans or upon Purchase of Certificates.
Section 9.02      Termination of the Trust REMICs.
Section 9.03      Additional Termination Requirements.

ARTICLE X
REMIC PROVISIONS

Section 10.01          REMIC Administration.
Section 10.02          Prohibited Transactions and Activities.
Section 10.03          Master Servicer and Trustee Indemnification.

ARTICLE XI
MISCELLANEOUS PROVISIONS

Section 11.01          Amendment.
Section 11.02          Recordation of Agreement; Counterparts.
Section 11.03          Limitation on Rights of Certificateholders.
Section 11.04          Governing Law.
Section 11.05          Notices.
Section 11.06          Severability of Provisions.
Section 11.07          Successors and Assigns.
Section 11.08          Article and Section Headings.
Section 11.09          Notice to Rating Agencies.
Section 11.10          Third Party Rights.


Signatures
Acknowledgments

Exhibit A-1          Form of Class A Certificates
Exhibit B-1          Form of Class M Certificates
Exhibit B-2          Form of Class R Certificate and Class RX Certificate
Exhibit B-3          Form of Class C Certificate
Exhibit B-4          Form of Class P Certificate
Exhibit B-5          Form Of Grantor Trust Certificate
Exhibit C            Form of Custodian Initial Certification
Exhibit D            Form of Custodian Final Certification
Exhibit E            Form of Remittance Report
Exhibit F            Form of Request for Release
Exhibit G-1          Form of Investor Representation Letter
Exhibit G-2          Form of Transferor Representation Letter
Exhibit G-3          Form of Rule 144A Investment Representation
Exhibit G-4          Form of Transferor Certificate for Transfers of Residual Certificates
Exhibit G-5          Form of Transfer Affidavit and Agreement for Transfers of Residual Certificates
Exhibit H            Mortgage Loan Schedule
Exhibit I            Form of Lost Note Affidavit
Exhibit J            Form of Mortgage Loan Sale and Servicing Agreement
Exhibit K            [Reserved]
Exhibit L            Servicing Criteria To Be Addressed In Assessment of Compliance
Exhibit M            Form of Servicing Agreement
Exhibit N            Form of Mortgage Loan Purchase Agreement
Exhibit O            Form 10-D, Form 8-K And Form 10-K Reporting Responsibility
Exhibit P            Form of Interest Rate Swap Agreement
Exhibit Q            Form of Cap Contract Confirmation
Exhibit R            Form of Limited Power of Attorney
Exhibit S            Form of Additional Disclosure Notification

This Pooling and Servicing Agreement, dated and effective as of July 1, 2006, is entered into among American Home Mortgage Assets LLC, as company (the "Company"), Wells Fargo Bank, N.A., as master servicer (in such capacity, the "Master Servicer"), and Citibank N.A., as trustee (the "Trustee").

PRELIMINARY STATEMENT:

The Company intends to sell pass-through certificates (collectively, the "Certificates"), to be issued hereunder in multiple Classes, which in the aggregate will evidence the entire beneficial ownership interest in the Trust Fund created hereunder. The Certificates will consist of twenty-six Classes of Certificates, designated as Class I-A-1, Class I-A-2-1, Class I-A-2-2, Class I-A-3, Class II-A-1-1, Class II-A-1-2, Class II-A-2, Class II-A-3-1, Class II-A-3-2, Class III-A-1-1, Class III-A-1-2, Class III-A-2, Class III-A-3-1, Class III-A-3-2, Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8, Class R, Class RX, Class P and Class C Certificates.

The parties intend that the portions of the Trust Fund representing (i) the Class III-A-1-1 Underlying Interest and (ii) the Swap Agreement and the proceeds thereof will be treated as a grantor trust under subpart E of Part I of subchapter J of the Code and that the beneficial interests therein will be represented by the Class III-A-1-1 Certificates.

REMIC 1

As provided herein, the Trustee will make an election to treat the segregated pool of assets consisting of the Mortgage Loans (exclusive of the Cap Contract, the Cap Contract Reserve Fund, the Interest Rate Swap Agreement and the Grantor Trust) as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 1". The Class R-1 Interest will represent the sole Class of "residual interests" in REMIC 1 for purposes of the REMIC Provisions.

The following table irrevocably sets forth the designation, the Uncertificated REMIC 1 Pass-Through Rate, the initial Uncertificated Principal Balance, and for purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC 1 Regular Interests. None of the REMIC 1 Regular Interests will be certificated.

| Designation | Uncertificated REMIC 1 Pass-Through Rate | | Initial Uncertificated Principal Balance | Assumed Final Maturity Date[1] |
|---|---|---|---|---|
| LT-AA | (2) | $ | 828,511,481.30 | October 25, 2046 |
| LT-I-A-1 | (2) | $ | 1,785,015.00 | October 25, 2046 |
| LT-I-A-2-1 | (2) | $ | 493,755.00 | October 25, 2046 |
| LT-I-A-2-2 | (2) | $ | 250,000.00 | October 25, 2046 |
| LT-I-A-3 | (2) | $ | 446,255.00 | October 25, 2046 |
| LT-II-A-1-1 | (2) | $ | 1,078,365.00 | October 25, 2046 |
| LT-II-A-1-2 | (2) | $ | 725,000.00 | October 25, 2046 |
| LT-II-A-2 | (2) | $ | 751,405.00 | October 25, 2046 |
| LT-II-A-3-1 | (2) | $ | 325,840.00 | October 25, 2046 |
| LT-II-A-3-2 | (2) | $ | 125,000.00 | October 25, 2046 |
| LT-III-A-1-1 | (2) | $ | 574,675.00 | October 25, 2046 |
| LT-III-A-1-2 | (2) | $ | 574,675.00 | October 25, 2046 |
| LT-III-A-2 | (2) | $ | 478,895.00 | October 25, 2046 |

| | | | | |
|---|---|---|---|---|
| LT-III-A-3-1 | (2) | $ | 221,905.00 | October 25, 2046 |
| LT-III-A-3-2 | (2) | $ | 65,435.00 | October 25, 2046 |
| LT-M1 | (2) | $ | 215,580.00 | October 25, 2046 |
| LT-M2 | (2) | $ | 59,180.00 | October 25, 2046 |
| LT-M3 | (2) | $ | 38,045.00 | October 25, 2046 |
| LT-M4 | (2) | $ | 38,045.00 | October 25, 2046 |
| LT-M5 | (2) | $ | 42,270.00 | October 25, 2046 |
| LT-M6 | (2) | $ | 46,500.00 | October 25, 2046 |
| LT-M7 | (2) | $ | 46,500.00 | October 25, 2046 |
| LT-M8 | (2) | $ | 29,590.00 | October 25, 2046 |
| LT-ZZ | (2) | $ | 8,496,467.58 | October 25, 2046 |
| LT-P | (2) | $ | 100.00 | October 25, 2046 |
| LT-1SUB | (2) | $ | 4,204.54 | October 25, 2046 |
| LT-1GRP | (2) | $ | 63,705.05 | October 25, 2046 |
| LT-2SUB | (2) | $ | 4,247.76 | October 25, 2046 |
| LT-2GRP | (2) | $ | 64,359.96 | October 25, 2046 |
| LT-3SUB | (2) | $ | 2,707.28 | October 25, 2046 |
| LT-3GRP | (2) | $ | 41,018.98 | October 25, 2046 |
| LT-XX | (2) | $ | 845,239,635.32 | October 25, 2046 |

(1)     For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest possible maturity date has been designated as the "latest possible maturity date" for each REMIC 1 Regular Interest.

(2)     Calculated in accordance with the definition of "Uncertificated REMIC 1 Pass-Through Rate" herein.

<u>REMIC 2</u>

As provided herein, the Trustee will make an election to treat the segregated pool of assets consisting of the REMIC 1 Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 2". The Class R-2 Interest will represent the sole Class of "residual interests" in REMIC 2 for purposes of the REMIC Provisions.

The following table irrevocably sets forth the Class designation, Pass-Through Rate and Initial Certificate Principal Balance for each Class of Certificates or REMIC Regular Interest that represents ownership of one or more of the "regular interests" in REMIC 2 created hereunder.

| Class Designation | Initial Certificate Principal Balance | | Pass-Through Rate | Assumed Final Maturity Date[1] |
|---|---|---|---|---|
| I-A-1 | $ | 357,003,000 | Adjustable[2] | October 25, 2046 |
| I-A-2-1 | $ | 98,751,000 | Adjustable[2] | October 25, 2046 |
| I-A-2-2 | $ | 50,000,000 | Adjustable[2] | October 25, 2046 |
| I-A-3 | $ | 89,251,000 | Adjustable[2] | October 25, 2046 |
| II-A-1-1 | $ | 215,673,000 | Adjustable[2] | October 25, 2046 |
| II-A-1-2 | $ | 145,000,000 | Adjustable[2] | October 25, 2046 |
| II-A-2 | $ | 150,281,000 | Adjustable[2] | October 25, 2046 |
| II-A-3-1 | $ | 65,168,000 | Adjustable[2] | October 25, 2046 |
| II-A-3-2 | $ | 25,000,000 | Adjustable[2] | October 25, 2046 |
| III-A-1-1 | $ | 150,000,000 | Adjustable[2] | October 25, 2046 |
| III-A-1-2 | $ | 79,870,000 | Adjustable[2] | October 25, 2046 |
| III-A-2 | $ | 95,779,000 | Adjustable[2] | October 25, 2046 |
| III-A-3-1 | $ | 44,358,000 | Adjustable[2] | October 25, 2046 |
| III-A-3-2 | $ | 13,110,000 | Adjustable[2] | October 25, 2046 |

| | | | | |
|---|---|---|---|---|
| M-1 | $ | 43,116,000 | Adjustable[2] | October 25, 2046 |
| M-2 | $ | 11,836,000 | Adjustable[2] | October 25, 2046 |
| M-3 | $ | 7,609,000 | Adjustable[2] | October 25, 2046 |
| M-4 | $ | 7,609,000 | Adjustable[2] | October 25, 2046 |
| M-5 | $ | 8,454,000 | Adjustable[2] | October 25, 2046 |
| M-6 | $ | 9,300,000 | Adjustable[2] | October 25, 2046 |
| M-7 | $ | 9,300,000 | Adjustable[2] | October 25, 2046 |
| M-8 | $ | 5,918,000 | Adjustable[2] | October 25, 2046 |
| Class C Interest | $ | 8,453,757.76 | (3) | October 25, 2046 |
| Class P Interest | $ | 100.00 | N/A | October 25, 2046 |

(1)    For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest possible maturity date has been designated as the "latest possible maturity date" for each Class of Certificates.

(2)    Calculated in accordance with the definition of "Pass-Through Rate" herein.

(3)    The Class C Interest will not accrue interest on its Certificate Principal Balance, but will accrue interest at the Class C Pass-Through Rate on the Notional Amount of the Class C Interest outstanding from time to time which shall equal the aggregate of the Uncertificated Principal Balances of the REMIC 1 Regular Interests (other than REMIC 1 Regular Interest LT-P).

<u>REMIC 3</u>

As provided herein, the Trustee will make an election to treat the segregated pool of assets consisting of the Class C Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 3". The Class R-3 Interest will represent the sole Class of "residual interests" in REMIC 3 for purposes of the REMIC Provisions.

The following table irrevocably sets forth the designation, the Pass-Through Rate, the initial Certificate Principal Balance, and for purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for the Class C Certificates.

| <u>Designation</u> | <u>Pass-Through Rate</u> | | Initial Certificated <u>Principal Balance</u> | Assumed Final <u>Maturity Date</u>[1] |
|---|---|---|---|---|
| Class C | (2) | $ | 8,453,757.76 | October 25, 2046 |

(1)    For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest possible maturity date has been designated as the "latest possible maturity date" for the Class C Certificates.

(2)    Calculated in accordance with the definition of "Pass-Through Rate" herein.

<u>REMIC 4</u>

As provided herein, the Trustee will make an election to treat the segregated pool of assets consisting of the Class P Interest as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 4". The Class R-4 Interest will represent the sole Class of "residual interests" in REMIC 4 for purposes of the REMIC Provisions.

The following table irrevocably sets forth the designation, the Pass-Through Rate, the initial Certificate Principal Balance, and for purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for the Class P Certificates.

| Designation | Pass-Through Rate | Initial Certificated Principal Balance | Assumed Final Maturity Date[1] |
|---|---|---|---|
| Class P | N/A | $ 100.00 | November 25, 2046 |

(1)     For purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest possible maturity date has been designated as the "latest possible maturity date" for the Class P Certificates.

---

ARTICLE I

DEFINITIONS

Section 1.01      Defined Terms.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article. Unless otherwise specified, all calculations in respect of interest on each class of the Class I-A-3, Class III-A-1-1, Class III-A-1-2, Class III-A-2, Class III-A-3-1 and Class III-A-3-2 Certificates and Class M Certificates shall be made on the basis of a 360-day year consisting of the actual number of days in the related Accrual Period. All calculations of interest with regard to each of the Class I-A-1, Class I-A-2-1, Class I-A-2-2, Class II-A-1-1, Class II-A-1-2, Class II-A-2, Class II-A-3-1, Class II-A-3-2 and Class C Certificates shall be on the basis of a 360-day year consisting of twelve 30-days months.

"Accepted Master Servicing Practices": With respect to any Mortgage Loan, as applicable, either (x) those customary mortgage master servicing practices of prudent mortgage master servicing institutions that master service Mortgage Loans of the same type and quality as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located, to the extent applicable to the Master Servicer (except in its capacity as successor to the Servicer), or (y) as provided in this Agreement, to the extent applicable to the Master Servicer, but in no event below the standard set forth in clause (x).

"Accrual Period": With respect to any Distribution Date and each Class of the Class I-A-3, Class III-A-1-1, Class III-A-1-2, Class III-A-3-1, Class III-A-3-2 and Class M Certificates, the period commencing on the prior Distribution Date (or in the case of the first Distribution Date, the Closing Date) and ending on the day immediately preceding that Distribution Date. With respect to the Class I-A-1, Class I-A-2-1, Class I-A-2-2, Class II-A-1-1, Class II-A-1-2, Class II-A-2, Class II-A-3-1, Class II-A-3-2, and Class C Certificates, the prior calendar month.

"Accrued Certificate Interest": For any Distribution Date and each Class of the Class A Certificates and Class M Certificates, interest accrued during the related Accrual Period at the then-applicable Pass-Through Rate on the related Certificate Principal Balance thereof immediately prior to such Distribution Date. Accrued Certificate Interest for the Class III-A-1-1 Underlying Interest and the Class I-A-3, Class III-A-1-1, Class III-A-1-2, Class III-A-3-1, Class III-A-3-2 and Class M Certificates shall be calculated on the basis of the actual number of days in the related Accrual Period and a 360-day year. Accrued Certificate Interest for each of the Class I-A-1, Class I-A-2-1, Class I-A-2-2, Class II-A-1-1, Class II-A-1-2, Class II-A-2, Class II-A-3-1, Class II-A-3-2 and Class C Certificates shall be calculated on the basis of a 360-day year consisting of twelve 30-day months. On each Distribution Date, Accrued Certificate Interest will be reduced by the following, which will be allocated to the related Certificates on a pro rata basis, based on the amount of Accrued Certificate Interest that would have been payable from the related mortgage loans absent these reductions: (a) Prepayment Interest Shortfalls on the Mortgage Loans, to the extent not covered by Compensating Interest paid by the Servicer or the Master Servicer, (b) interest shortfalls on the Mortgage Loans resulting from the application of the Relief Act or similar state law, and (c) the interest portion of Realized Losses not allocated through subordination. In addition, Accrued Certificate Interest for any Class of Certificates will be reduced by any Realized Losses allocated thereto through subordination. On each Distribution

Date, Accrued Certificate Interest on the Class A Certificates and Class M Certificates will be reduced by the amount of Net Deferred Interest, if any, allocated thereto, in accordance with Section 4.09 of this Agreement.

"Additional Disclosure Notice": Has the meaning set forth in Section 3.23 hereof.

"Additional Form 10-D Disclosure": Has the meaning set forth in Section 3.23 of the Agreement.

"Additional Form 10-K Disclosure": Has the meaning set forth in Section 4.23 of the Agreement.

"Adjustable Rate Mortgage Loans": The Mortgage Loans identified in the Mortgage Loan Schedule as having a Mortgage Rate which is adjustable at any point during the life of the related Mortgage, including any Mortgage Loans delivered in replacement thereof.

"Advance": As to any Mortgage Loan, any advance made by the Servicer or the Master Servicer on any Distribution Date pursuant to Section 4.03.

"Affiliate": With respect to any Person, any other Person controlling, controlled by or under common control with such Person. For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

"Aggregate Stated Principal Balance": As of any date of determination, the Aggregate Stated Principal Balance of the Mortgage Loans.

"Agreement": This Pooling and Servicing Agreement and all amendments hereof.

"AHMC": American Home Mortgage Corp.

"Allocated Realized Loss Amount": With respect to any Class of Offered Certificates, other than the Class I-A-1, Class II-A-1-1, Class II-A-1-2, Class III-A-1-1 and Class III-A-1-2 Certificates, and any Distribution Date, an amount equal to (a) the sum of any Realized Losses allocated to that Class of Certificates on that Distribution Date and any Allocated Realized Loss Amount for that Class remaining unpaid from the previous Distribution Dates, in each case, with interest thereon at the applicable Pass-Through Rate for such Distribution Date for such Class for the related Accrual Period plus (b) any Subsequent Recoveries with respect to such Class of Certificates.

"Assessment of Compliance": As defined in Section 3.22.

"Assignment": An assignment of Mortgage, notice of transfer or equivalent instrument, in recordable form, which is sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect a record the sale of the Mortgage.

"Assumed Final Maturity Date": The Distribution Date in October 2046.

"Available Funds": Group I Available Funds, Group II Available Funds and Group III Available Funds.

"Bankruptcy Code": The Bankruptcy Code of 1978, as amended.

"Book-Entry Certificate": Any Certificate registered in the name of the Depository or its nominee.

"Business Day": Any day other than (i) a Saturday or a Sunday, or (ii) a day on which the New York Stock Exchange or Federal Reserve is closed or on which banking institutions in the jurisdiction in which the Master

Servicer, the Servicer, any Subservicer or the Corporate Trust Office of the Trustee is located are authorized or obligated by law or executive order to be closed.

"Cap Contract": With respect to the Offered Certificates, the transaction evidenced by a confirmation, a form of which is attached hereto as Exhibit Q.

"Cap Contract Reserve Fund": The separate fund created and initially maintained by the Trustee pursuant to Section 4.11 in the name of the Trustee for the benefit of the Holders of the Offered Certificates and designated "American Home Mortgage Assets Trust 2006-3 Cap Contract Reserve Fund." Funds in the Cap Contract Reserve Fund shall be held in trust for the Holders of the Offered Certificates for the uses and purposes set forth in this Agreement. The Cap Contract Reserve Fund shall not be an asset of any REMIC.

"Cap Counterparty": Swiss Re Financial Products Corporation.

"Cap Extra Principal Distribution Amount": With respect to any Distribution Date is the lesser of (x) amounts available from the Cap Contract Reserve Fund to pay principal as provided in Section 4.11 and (y) the excess of the Overcollateralization Target Amount over the Overcollateralized Amount, but only to the extent such excess is as a result of Realized Losses incurred on the Mortgage Loans.

"Cash Liquidation": As to any defaulted Mortgage Loan other than a Mortgage Loan as to which an REO Acquisition occurred, a determination by the Servicer that it has received all Insurance Proceeds, Liquidation Proceeds and other payments or cash recoveries which the Servicer reasonably and in good faith expects to be finally recoverable with respect to such Mortgage Loan.

"Certificate": Any Class I-A-1, Class I-A-2-1, Class I-A-2-2, Class I-A-3, Class II-A-1-1, Class II-A-1-2, Class II-A-2, Class II-A-3-1, Class II-A-3-2, Class III-A-1-1, Class III-A-1-2, Class III-A-2, Class III-A-3-1, Class III-A-3-2, Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8, Class C, Class P, Class R or Class RX Certificates.

"Certificate Account": The certificate account created and maintained by the Master Servicer pursuant to Section 3.17 in the name of the Trustee for the benefit of the Holders of the Certificates. Such account shall be an Eligible Account.

"Certificateholder" or "Holder": The Person in whose name a Certificate is registered in the Certificate Register, except that only a Permitted Transferee shall be a holder of a Residual Certificate for any purposes hereof and, solely for the purposes of giving any consent pursuant to this Agreement, any Certificate registered in the name of the Company or the Master Servicer or any affiliate thereof shall be deemed not to be outstanding and the Voting Rights to which such Certificate is entitled shall not be taken into account in determining whether the requisite percentage of Voting Rights necessary to effect any such consent has been obtained, except as otherwise provided in Section 11.01. The Trustee shall be entitled to rely upon a certification of the Company or the Master Servicer in determining if any Certificates are registered in the name of the respective affiliate. All references herein to "Holders" or "Certificateholders" shall reflect the rights of Certificate Owners as they may indirectly exercise such rights through the Depository and participating members thereof, except as otherwise specified herein; provided, however, that the Trustee shall be required to recognize as a "Holder" or "Certificateholder" only the Person in whose name a Certificate is registered in the Certificate Register.

"Certificate Owner": With respect to a Book-Entry Certificate, the Person who is the beneficial owner of such Certificate, as reflected on the books of an indirect participating brokerage firm for which a Depository Participant acts as agent, if any, and otherwise on the books of a Depository Participant, if any, and otherwise on the books of the Depository.

"Certificate Principal Balance": With respect to any Class A Certificate, Class III-A-1-1 Underlying Interest or Class M Certificate, as of any date of determination, an amount equal to the sum of (x) any Net Deferred Interest allocated thereto on the related Distribution Date and all previous Distribution Dates as provided in Section

4.09 and (y) the initial Certificate Principal Balance of that Certificate or Underlying Interest, reduced by the aggregate of (a) all amounts allocable to principal previously distributed with respect to that Certificate or Underlying Interest and (b) any reductions in the Certificate Principal Balance of that Certificate or Underlying Interest deemed to have occurred in connection with allocations of Realized Losses; provided, however, that after the Certificate Principal Balance of any Certificate or Underlying Interest of the Class of Class A Certificates, Class III-A-1-1 Underlying Interest or Class M Certificates outstanding with the highest payment priority to which Realized Losses have been allocated shall be increased by the percentage interest evidenced thereby multiplied by the amount of any Subsequent Recoveries not previously allocated, but not by more than the amount of Realized Losses previously allocated to reduce the Certificate Principal Balance of that Certificate or Underlying Interest, and the Certificate Principal Balance of the Class of Class M Certificates, with a Certificate Principal Balance greater than zero with the lowest payment priority shall be further reduced by an amount equal to the percentage interest evidenced thereby multiplied by the excess, if any, of (i) the then-aggregate Certificate Principal Balance of the Class A Certificates and the Class M Certificates of that series then outstanding over (ii) the then-Aggregate Stated Principal Balance of all of the Mortgage Loans. With respect to the Class C Interest and any date of determination, the excess of the aggregate Uncertificated Principal Balance of the REMIC 1 Regular Interests over the Certificate Principal Balances of the Class A, Class M and Class P Certificates. The Class R, Class RX and Class P Certificates will not have a Certificate Principal Balance. With respect to the Class C Certificates, the Certificate Principal Balance of the Class C Interest.

"Certificate Register": The register maintained pursuant to Section 5.02.

"Class": Collectively, all of the Certificates bearing the same designation.

"Class A Certificates": The Class I-A, Class II-A and Class III-A Certificates.

"Class I-A Certificates": The Class I-A-1, Class I-A-2-1, Class I-A-2-2 and Class I-A-3 Certificates.

"Class I-A-1 Certificates": Any one of the Class I-A-1 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class I-A-2-1 Certificates": Any one of the Class I-A-2-1 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class I-A-2-2 Certificates": Any one of the Class I-A-2-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class I-A-3 Certificates": Any one of the Class I-A-3 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class II-A Certificates": The Class II-A-1-1, Class II-A-1-2, Class II-A-2, Class II-A-3-1 and Class II-A-3-2 Certificates.

"Class II-A-1-1 Certificates": Any one of the Class II-A-1-1 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class II-A-1-2 Certificates": Any one of the Class II-A-1-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class II-A-2 Certificates": Any one of the Class II-A-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class II-A-3-1 Certificates": Any one of the Class II-A-3-1 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class II-A-3-2 Certificates": Any one of the Class II-A-3-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class III-A Certificates": The Class III-A-1-1 Underlying Interest, Class III-A-1-2, Class III-A-2, Class III-A-3-1 and Class III-A-3-2 Certificates.

"Class III-A-1-1 Certificates": Any one of the Class III-A-1-1 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-5, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing (i) a REMIC Regular Interest in REMIC 2 and (ii) the right to receive payments from and the obligation to make payments to the Trustee in respect of the Swap Agreement.

"Class III-A-1-1 Underlying Interest": The Class III-A-1-1 Underlying Interest representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class III-A-1-2 Certificates": Any one of the Class III-A-1-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class III-A-2 Certificates": Any one of the Class III-A-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class III-A-3-1 Certificates": Any one of the Class III-A-3-1 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class III-A-3-2 Certificates": Any one of the Class III-A-3-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class A Certificates": The Class I-A Certificates, Class II-A Certificates and Class III-A Certificates.

"Class C Certificates": Any one of the Class C Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-3, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 3.

"Class C Interest": An uncertificated interest in the Trust Fund held by the Trustee on behalf of the Holders of the Class C Certificates, evidencing a REMIC Regular Interest in REMIC 2.

"Class M Certificates": The Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7 and Class M-8 Certificates.

"Class M-1 Certificates": Any one of the Class M-1 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-1, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class M-2 Certificates": Any one of the Class M-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class M-3 Certificates": Any one of the Class M-3 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class M-4 Certificates": Any one of the Class M-4 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class M-5 Certificates": Any one of the Class M-5 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class M-6 Certificates": Any one of the Class M-6 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class M-7 Certificates": Any one of the Class M-7 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class M-8 Certificates": Any one of the Class M-8 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-1, executed by the Trustee and authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 2.

"Class P Certificates": Any one of the Class P Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-4, executed by the Trustee and authenticated and delivered by the Trustee representing the right to distributions as set forth herein and therein and evidencing a REMIC Regular Interest in REMIC 4.

"Class P Interest": An uncertificated interest in the Trust Fund held by the Trustee on behalf of the Holders of the Class P Certificates, evidencing a REMIC Regular Interest in REMIC 2.

"Class R Certificate": Any one of the Class R Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-2, executed by the Trustee and authenticated and delivered by the Trustee, evidencing ownership of the Class R-1 Interest and Class R-2 Interest.

"Class R-1 Interest": The uncertificated Residual Interest in REMIC 1.

"Class R-2 Interest": The uncertificated Residual Interest in REMIC 2.

"Class R-3 Interest": The uncertificated Residual Interest in REMIC 3.

"Class R-4 Interest": The uncertificated Residual Interest in REMIC 4.

"Class R-X Certificate": Any one of the Class R-X Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit B-2, executed by the Trustee and authenticated and delivered by the Trustee, evidencing ownership of the Class R-3 Interest and Class R-4 Interest.

"Closing Date": July 28, 2006.

"Closing Date Deposit Amount": $720,000 deposited by the Depositor into the Distribution Account on the Closing Date. $275,957 of the Closing Date Deposit Amount shall be attributable to interest in respect of the Group I Mortgage Loans, $285,240 of the Closing Date Deposit Amount shall be attributable to interest in respect of the Group II Mortgage Loans and $158,803 of the Closing Date Deposit Amount shall be attributable to principal in respect of the Group III Mortgage Loans.

"Code": The Internal Revenue Code of 1986, as amended.

"Collateral Value": The appraised value of a Mortgaged Property based upon the lesser of (i) the appraisal made at the time of the origination of the related Mortgage Loan, or (ii) the sales price of such Mortgaged Property at such time of origination. With respect to a Mortgage Loan the proceeds of which were used to refinance an existing mortgage loan, the appraised value of the Mortgaged Property based upon the appraisal obtained at the time of refinancing.

"Commission": The Securities and Exchange Commission.

"Company": American Home Mortgage Assets LLC, or its successor in interest.

"Compensating Interest": With respect to any Distribution Date, an amount equal to Prepayment Interest Shortfalls resulting from Principal Prepayments during the related Prepayment Period, but not more than the Servicing Fees for the immediately preceding Due Period.

"Confirmation": With respect to the Class III-A-1-1 Certificates and the Swap Agreement, the Confirmation (Reference #N497732N) with a trade date of July 28, 2006, evidencing a transaction between the Trustee and the Swap Counterparty. With respect to the Class III-A-1-1 Underlying Interest, the Class I-A-3, Class III-A-1-2, Class III-A-2, Class III-A-3-1, Class III-A-3-2 and Class M Certificates and the Cap Contract, the

confirmative (Reference 1037051) with a trade date of July 28, 2006, evidencing a transaction between the Trustee and the Cap Counterparty.

"Cooperative": A corporation that has been formed for the purpose of cooperative apartment ownership.

"Cooperative Assets": Shares issued by Cooperatives, the related Cooperative Lease and any other collateral securing the Cooperative Loans.

"Cooperative Building": The building and other property owned by a Cooperative.

"Cooperative Lease": With respect to a Cooperative Loan, the proprietary lease or occupancy agreement with respect to the Cooperative Apartment occupied by the Mortgagor and relating to the related Cooperative Assets, which lease or agreement confers an exclusive right to the holder of such Cooperative Assets to occupy such apartment.

"Cooperative Loan": The indebtedness of a Mortgagor evidenced by a Mortgage Note which is secured by Cooperative Assets and which is being sold to the Depositor pursuant to this Agreement, the Mortgage Loans so sold being identified in the Mortgage Loan Schedule.

"Cooperative Unit": A specific dwelling unit in a Cooperative Building as to which exclusive occupancy rights have been granted pursuant to a Lease.

"Corporate Trust Office": With respect to the Trustee, the principal corporate trust office of the Trustee at which at any particular time its corporate trust business related to this Agreement shall be administered, which office at the date of the execution of this Agreement is located at 388 Greenwich Street, 14th Floor, New York, New York 10013, Attention: Structured Finance - AHMA 2006-3, and for all other purposes, 388 Greenwich Street, 14th Floor, New York, New York 10013, Attn: Corporate Trust Services - American Home 2006-3.

"Corresponding Certificate": With respect to:

| REMIC 1 Regular Interest/REMIC 2 Regular Interest | Certificate |
|---|---|
| LT-I-A-1 | Class 1-A-1 |
| LT-I-A-2-1 | Class 1-A-2-1 |
| LT-I-A-2-2 | Class I-A-2-2 |
| LT-I-A-3 | Class I-A-3 |
| LT-II-A-1-1 | Class II-A-1-1 |
| LT-II-A-1-2 | Class II-A-1-2 |
| LT-II-A-2 | Class II-A-2 |
| LT-II-A-3-1 | Class II-A-3-1 |
| LT-II-A-3-2 | Class II-A-3-2 |
| LT-III-A-1-1/Class III-A-1-1 Underlying Interest | Class III-A-1-1 |
| LT-III-A-1-2 | Class III-A-1-2 |
| LT-III-A-2 | Class III-A-2 |
| LT-III-A-3-1 | Class III-A-3-1 |
| LT-III-A-3-2 | Class III-A-3-2 |
| LT-M1 | Class M-1 |
| LT-M2 | Class M-2 |
| LT-M3 | Class M-3 |
| LT-M4 | Class M-4 |

| | |
|---|---|
| LT-M5 | Class M-5 |
| LT-M6 | Class M-6 |
| LT-M7 | Class M-7 |
| LT-M8 | Class M-8 |
| Class C Interest | Class C |
| REMIC 1 Regular Interest LT-P/Class P Interest | Class P |

"Cumulative Loss Trigger Event": A Cumulative Loss Trigger Event is in effect with respect to any Distribution Date on or after the Stepdown Date if the aggregate amount of Realized Losses on the Mortgage Loans from (and including) the Cut-Off Date for each such Mortgage Loan to (and including) the related Due Date (reduced by the aggregate amount of Subsequent Recoveries received from the Cut-Off Date through the Prepayment Period related to that Due Date) exceeds the applicable percentage, for such Distribution Date, of the aggregate Stated Principal Balance of the Mortgage Loans, as set forth below:

| Distribution Date | Percentage |
|---|---|
| August 2008 — July 2009 | 0.20% with respect to August 2008, plus an additional 1/12th of 0.30% for each month thereafter through July 2009 |
| August 2009 — July 2010 | 0.50% with respect to August 2009, plus an additional 1/12th of 0.35% for each month thereafter through July 2010 |
| August 2010 — July 2011 | 0.85% with respect to August 2010, plus an additional 1/12th of 0.40% for each month thereafter through July 2011 |
| August 2011 — July 2012 | 1.25% with respect to August 2011, plus an additional 1/12th of 0.25% for each month thereafter through July 2012 |
| August 2012 and thereafter | 1.50% |

"Current Report": The Current Report pursuant to Section 13 or 15(d) of the Exchange Act.

"Curtailment": Any Principal Prepayment made by a Mortgagor which is not a Principal Prepayment in Full.

"Custodian": Deutsche Bank National Trust Company, or any successor custodian appointed pursuant to the provisions hereof.

"Cut-off Date": With respect to the Mortgage Loans, July 1, 2006.

"Cut-off Date Balance": The Aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date.

"Debt Service Reduction": With respect to any Mortgage Loan, a reduction in the scheduled monthly payment for such Mortgage Loan by a court of competent jurisdiction in a proceeding under the Bankruptcy Code, except such a reduction constituting a Deficient Valuation or any reduction that results in a permanent forgiveness of principal.

"Deferred Interest": The amount of accrued interest on a Mortgage Loan, the payment of which is deferred and added to the Stated Principal Balance of a Mortgage Loan due to the negative amortization feature of such Mortgage Loan.

"Deficient Valuation": With respect to any Mortgage Loan, a valuation by a court of competent jurisdiction of the Mortgaged Property in an amount less than the then outstanding indebtedness under the Mortgage Loan, or any reduction in the amount of principal to be paid in connection with any scheduled Monthly Payment that constitutes a permanent forgiveness of principal, which valuation or reduction results from a proceeding under the Bankruptcy Code.

"Definitive Certificate": Any definitive, fully registered Certificate.

"Deleted Mortgage Loan": A Mortgage Loan replaced or to be replaced with an Eligible Substitute Mortgage Loan.

"Delinquency Trigger Test": A Delinquency Trigger Test is in effect with respect to a Distribution Date on or after the Stepdown Date if the Rolling Sixty Day Delinquency Rate for the outstanding Mortgage Loans equals or exceeds the product of 40.00% and the Senior Enhancement Percentage.

"Delinquent": A mortgage loan is considered to be: "30 to 59 days" or "30 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the next following monthly scheduled due date; "60 to 89 days" or "60 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the second following monthly scheduled due date; and so on. The determination as to whether a mortgage loan falls into these categories is made as of the close of business on the last business day of each month. For example, a mortgage loan with a payment due on July 1 that remained unpaid as of the close of business on August 31 would then be considered to be 30 to 59 days delinquent.

"Depositor": American Home Mortgage Assets LLC.

"Depository": The Depository Trust Company, or any successor Depository hereafter named. The nominee of the initial Depository for purposes of registering those Certificates that are to be Book-Entry Certificates is Cede & Co. The Depository shall at all times be a "clearing corporation" as defined in Section 8-102(5) of the Uniform Commercial Code of the State of New York and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934, as amended.

"Depository Participant": A broker, dealer, bank or other financial institutions or other Person for whom from time to time a Depository effects book-entry transfers and pledges of securities deposited with the Depository.

"Determination Date": With respect to any LIBOR Certificate, the 15th day (or if such 15th day is not a Business Day, the Business Day immediately preceding such 15th day) of the month of the related Distribution Date. With respect to any MTA Certificate and (i) the first Distribution Date, the fifteenth Business Day preceding the Closing Date, and (ii) with respect to each Distribution Date thereafter, the fifteenth Business Day preceding the date on which the related Accrual Period commences.

"Disqualified Organization": Any organization defined as a "disqualified organization" under Section 860E(e)(5) of the Code, which includes any of the following: (i) the United States, any State or political subdivision thereof, any possession of the United States, or any agency or instrumentality of any of the foregoing (other than an instrumentality which is a corporation if all of its activities are subject to tax and, except for the Freddie Mac, a majority of its board of directors is not selected by such governmental unit), (ii) a foreign government, any international organization, or any agency or instrumentality of any of the foregoing, (iii) any organization (other than certain farmers' cooperatives described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the Code (including the tax imposed by Section 511 of the Code on unrelated business taxable income), (iv) rural electric and telephone cooperatives described in Section 1381(a)(2)(C) of the Code and (v) any other Person so designated by the Trustee based upon an Opinion of Counsel that the holding of an Ownership Interest in

a Residual Certificate by such Person may cause any REMIC or any Person having an Ownership Interest in any Class of Certificates (other than such Person) to incur a liability for any federal tax imposed under the Code that would not otherwise be imposed but for the Transfer of an Ownership Interest in a Residual Certificate to such Person. The terms "United States", "State" and "international organization" shall have the meanings set forth in Section 7701 of the Code or successor provisions.

"Distribution Account": The account established and maintained by the Trustee and for the benefit of the Certificateholders, pursuant to Section 3.19 hereof. The Distribution Account shall be an Eligible Account.

"Distribution Date": The 25th day of any month, or if such 25th day is not a Business Day, the Business Day immediately following such 25th day, commencing in August 2006.

"Distribution Report": The Asset-Backed Issuer Distribution Report pursuant to Section 13 or 15(d) of the Exchange Act.

"Due Date": With respect to all of the Mortgage Loans, the date in each month on which its Monthly Payment is due, exclusive of any days of grace.

"Due Period": With respect to any Distribution Date, the period commencing on the second day of the month preceding the month of such Distribution Date (or, with respect to the first Due Period, the day following the Cut-off Date) and ending on the first day of the month of the related Distribution Date.

"EDGAR": The Electronic Data Gathering and Retrieval System of the Commission.

"Eligible Account": Any of (i) a segregated account maintained with a federal or state chartered depository institution (A) the short-term obligations of which are rated A-1+ or better by Standard & Poor's, F-1 by Fitch Ratings and P-1 by Moody's at the time of any deposit therein or (B) insured by the FDIC (to the limits established by such Corporation), the uninsured deposits in which account are otherwise secured such that, as evidenced by an Opinion of Counsel (obtained by the Person requesting that the account be held pursuant to this clause (i)) delivered to the Trustee prior to the establishment of such account, the Certificateholders will have a claim with respect to the funds in such account and a perfected first priority security interest against any collateral (which shall be limited to Permitted Investments, each of which shall mature not later than the Business Day immediately preceding the Distribution Date next following the date of investment in such collateral or the Distribution Date if such Permitted Investment is an obligation of the institution that maintains the Certificate Account or Distribution Account) securing such funds that is superior to claims of any other depositors or general creditors of the depository institution with which such account is maintained, (ii) a segregated trust account or accounts maintained with a federal or state chartered depository institution or trust company subject to regulations regarding fiduciary funds on deposit similar to Title 12 of the Code of Federal Regulations Section 9.10(b), which, in either case, has corporate trust powers, acting in its fiduciary capacity or (iii) a segregated account or accounts of a depository institution acceptable to the Rating Agencies (as evidenced in writing by a letter from the Rating Agencies to the Trustee that use of any such account as the Certificate Account or Distribution Account will not have an adverse effect on the then-current ratings assigned to the Classes of the Certificates then rated by the Rating Agencies). Eligible Accounts may bear interest.

"Eligible Substitute Mortgage Loan": A Mortgage Loan substituted by the Sponsor or AHMC, as applicable, for a Deleted Mortgage Loan which must, on the date of such substitution, as confirmed in an Officers' Certificate of Sponsor or AHMC, as applicable, delivered to the Trustee, (i) have an outstanding principal balance, after deduction of the principal portion of the monthly payment due in the month of substitution (or in the case of a substitution of more than one Mortgage Loan for a Deleted Mortgage Loan, an aggregate outstanding principal balance, after such deduction), not in excess of the Stated Principal Balance of the Deleted Mortgage Loan (the amount of any shortfall to be paid to the Master Servicer for deposit in the Certificate Account in the month of substitution); (ii) have a Mortgage Rate and a Net Mortgage Rate no lower than and not more than 1% per annum higher than the Mortgage Rate and Net Mortgage Rate, respectively, of the Deleted Mortgage Loan as of the date of substitution; (iii) have a Loan-to-Value Ratio at the time of substitution no higher than that of the Deleted Mortgage

Loan at the time of substitution; (iv) have a remaining term to stated maturity not greater than (and not more than one year less than) that of the Deleted Mortgage Loan; (v) comply with each representation and warranty set forth in Section 2.04 hereof; and, (vi) comply with each non-statistical representation and warranty set forth in the Mortgage Loan Purchase Agreement and the Mortgage Loan Sale and Servicing Agreement.

"ERISA Restricted Certificates": Any of the Class R Certificates.

"Event of Default": One or more of the events described in Section 7.01.

"Exchange Act": The Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

"Exchange Act Reports": Any reports required to be filed pursuant to this Agreement.

"Fannie Mae": Federal National Mortgage Association or any successor.

"FDIC": Federal Deposit Insurance Corporation or any successor.

"Fitch Ratings": Fitch Ratings, Inc., or its successor in interest.

"Form 8-K Disclosure Information": Has the meaning set forth in Section 3.23 hereof.

"Form 10-K Filing Deadline": Has the meaning set forth in Section 3.23 hereof.

"Freddie Mac": Federal Home Loan Mortgage Corporation or any successor.

"Grantor Trust": A segregated asset pool within the Trust Fund consisting of the Class III-A-1-1 Underlying Interest and the Interest Rate Swap Agreement, beneficial ownership of which is represented by the Class III-A-1-1 Certificates.

"Group I Available Funds": With respect to any Distribution Date, the sum of (a) Interest Remittance Amount for Loan Group I for that Distribution Date, (b) the related Closing Date Deposit Amount and (c) the Principal Remittance Amount for Loan Group I for that Distribution Date, net of (d) with respect to Loan Group I, fees payable to, and other amounts reimbursable to, the Trustee, the Master Servicer, the Servicer, the Custodian and the Lender-Paid Insurer allocable to such Loan Group I.

"Group I Cut-off Date Balance": The Aggregate Stated Principal Balance of the Mortgage Loans in Loan Group I as of the Cut-off Date.

"Group I Loans": The Mortgage Loans designated as Group I Loans on the Mortgage Loan Schedule.

"Group I Net Rate Cap": With respect to any distribution date and Class I-A Certificates, the product of:

(a) the Weighted Average Adjusted Net Mortgage Rate on the Group I Loans as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date,

(b) a fraction, the numerator of which is 30, and the denominator of which is (x) with respect to any LIBOR Certificate, the actual number of days that elapsed in the related Accrual Period or (y) with respect to any MTA Certificate, 30.

For federal income tax purposes, the equivalent of the foregoing shall be expressed as the weighted average of the Uncertificated REMIC 1 Pass-Through Rate on REMIC 1 Regular Interest LT-1GRP, weighted on the basis of the Uncertificated Principal Balance of such REMIC 1 Regular Interest.

"Group I Principal Distribution Amount": With respect to each Distribution Date is equal to the product of (i) the Principal Distribution Amount and (ii) a fraction, the numerator of which is the Principal Remittance Amount for Loan Group I for that Distribution Date and the denominator of which is the aggregate Principal Remittance Amount for each Loan Group for that Distribution Date.

"Group I Senior Certificates": The Class I-A Certificates.

"Group I Senior Principal Distribution Amount": With respect to each Distribution Date is equal to the product of (i) the Senior Principal Distribution Amount and (ii) a fraction, the numerator of which is the Principal Remittance Amount for Loan Group I for that Distribution Date and the denominator of which is the aggregate Principal Remittance Amount for each Loan Group for that Distribution Date.

"Group II Available Funds": With respect to any Distribution Date, the sum of (a) Interest Remittance Amount for Loan Group II for that Distribution Date, (b) the related Closing Date Deposit Amount and (c) the Principal Remittance Amount for Loan Group II for that Distribution Date, net of (d) with respect to Loan Group II, fees payable to, and other amounts reimbursable to, the Trustee, the Master Servicer, the Servicer, the Custodian and the Lender-Paid Insurer allocable to such Loan Group II.

"Group II Cut-off Date Balance": The Aggregate Stated Principal Balance of the Mortgage Loans in Loan Group II as of the Cut-off Date.

"Group II Loans": The Mortgage Loans designated as Group II Loans on the Mortgage Loan Schedule.

"Group II Net Rate Cap": With respect to any distribution date and Class II-A Certificates, the product of:

(a) the Weighted Average Adjusted Net Mortgage Rate on the Group II Loans as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date,

(b) a fraction, the numerator of which is 30, and the denominator of which is (x) with respect to any LIBOR Certificate, the actual number of days that elapsed in the related Accrual Period or (y) with respect to any MTA Certificate, 30.

For federal income tax purposes, the equivalent of the foregoing shall be expressed as the weighted average of the Uncertificated REMIC 1 Pass-Through Rate on REMIC 1 Regular Interest LT-2GRP, weighted on the basis of the Uncertificated Principal Balance of such REMIC 1 Regular Interest.

"Group II Principal Distribution Amount": With respect to each Distribution Date is equal to the product of (i) the Principal Distribution Amount and (ii) a fraction, the numerator of which is the Principal Remittance Amount for Loan Group II for that Distribution Date and the denominator of which is the aggregate Principal Remittance Amount for each Loan Group for that Distribution Date.

"Group II Senior Certificates": The Class II-A Certificates.

"Group II Senior Principal Distribution Amount": With respect to each Distribution Date is equal to the product of (i) the Senior Principal Distribution Amount and (ii) a fraction, the numerator of which is the Principal Remittance Amount for Loan Group II for that Distribution Date and the denominator of which is the aggregate Principal Remittance Amount for each Loan Group for that Distribution Date.

"Group III Available Funds": With respect to any distribution date, the sum of (a) Interest Remittance Amount for Loan Group III for that distribution date, (b) the related Closing Date Deposit Amount and (c) the Principal Remittance Amount for Loan Group III for that distribution date, net of (d) with respect to Loan Group III, fees payable to, and other amounts reimbursable to, the Trustee, the Master Servicer, the Servicer, the Custodian and the Lender-Paid Insurer; provided however, the aggregate amount available for distributions to the holders of the Class III-A-1A Certificates on each distribution date will equal the (i) sum of (x) the total Interest Remittance Amount and Principal Remittance Amount distributable in respect of the Class III-A-1A Underlying Interest with respect to such distribution date and (y) the amounts, if any, received from the Swap Provider pursuant to the Interest Rate Swap Contract for such distribution date, minus (ii) all amounts required to be paid to the Swap Counterparty pursuant to the Interest Rate Swap Contract for the distribution date.

Group III Net Rate Cap": With respect to any distribution date and Class III-A Certificates, the product of:

(a) the Weighted Average Adjusted Net Mortgage Rate on the Group III Loans as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date,

(b) a fraction, the numerator of which is 30, and the denominator of which is (x) with respect to any LIBOR Certificate, the actual number of days that elapsed in the related Accrual Period or (y) with respect to any MTA Certificate, 30.

For federal income tax purposes, the equivalent of the foregoing shall be expressed as the weighted average of the Uncertificated REMIC 1 Pass-Through Rate on REMIC 1 Regular Interest LT-3GRP, weighted on the basis of the Uncertificated Principal Balance of such REMIC 1 Regular Interest.

"Group III Principal Distribution Amount": With respect to each Distribution Date is equal to the product of (i) the Principal Distribution Amount and (ii) a fraction, the numerator of which is the Principal Remittance Amount for Loan Group III for that distribution date and the denominator of which is the aggregate Principal Remittance Amount for each Loan Group for that Distribution Date.

"Group III Senior Principal Distribution Amount": With respect to each Distribution Date is equal to the product of (i) the Senior Principal Distribution Amount and (ii) a fraction, the numerator of which is the Principal Remittance Amount for Loan Group III for that distribution date and the denominator of which is the aggregate Principal Remittance Amount for each Loan Groups for that Distribution Date.

"Initial Certificate Principal Balance": With respect to each Class of Regular Certificates, the Initial Certificate Principal Balance of such Class of Certificates as set forth in the Preliminary Statement hereto, or with respect to any single Certificate, the Initial Certificate Principal Balance as stated on the face thereof.

"Insurance Policy": With respect to any Mortgage Loan, any insurance policy (including the Lender-Paid Primary Insurance Policy) which is required to be maintained from time to time under this Agreement in respect of such Mortgage Loan.

"Insurance Proceeds": Proceeds paid in respect of the Mortgage Loans pursuant to any Insurance Policy, to the extent such proceeds are payable to the mortgagee under the Mortgage, any Subservicer or the Master Servicer and are not applied to the restoration of the related Mortgaged Property or released to the Mortgagor in accordance with the procedures that the Master Servicer would follow in servicing Mortgage Loans held for its own account.

"Interest Rate Swap Agreement": With respect to the Class III-A-1-1 Certificates, the transaction evidenced by a Confirmation, a form of which is attached hereto as Exhibit P.

"Interest Remittance Amount": For any Distribution Date and a Loan Group, the sum of:

(i)      the interest portion of all scheduled monthly payments on the related Mortgage Loans due on the related Due Date, to the extent received or advanced;

(ii)      the interest portion of all proceeds of the repurchase of a related Mortgage Loan (or, in the case of a substitution, certain amounts representing a principal adjustment) as required by the Agreement during the preceding calendar month; and

(iii)      the interest portion of all other unscheduled collections received during the preceding calendar month in respect of the related Mortgage Loans, including, Liquidation Proceeds and Insurance Proceeds, in each case to the extent applied as recoveries of interest.

"Late Collections": With respect to any Mortgage Loan, all amounts received during any Due Period, whether as late payments of Monthly Payments or as Insurance Proceeds, Liquidation Proceeds or otherwise, which represent late payments or collections of Monthly Payments due but delinquent for a previous Due Period and not previously recovered.

"Lender-Paid Insured Loans": The Mortgage Loans included in the Trust Fund covered by the Lender-Paid Primary Insurance Policy, as applicable, as indicated on the Mortgage Loan Schedule.

"Lender-Paid Insurer": MGIC Insurance Corporation, PMI Insurance Corporation, Radian Inc., Republic Mortgage Insurance Company, Triad Guaranty Insurance Corporation or United Guaranty Corporation, as applicable.

"Lender-Paid Primary Insurance Policy": The lender-paid Primary Insurance Policy issued by the Lender-Paid Insurer, as assigned to the Trust on the Closing Date, or any replacement policy therefore.

"Lender-Paid Primary Insurance Rate": With respect to any Lender-Paid Insured Loan covered by the Lender-Paid Primary Insurance Policy, the rate per annum at which the premium on the Lender-Paid Primary Insurance Policy accrues.

"LIBOR Business Day": A day on which banks are open for dealing in foreign currency and exchange in London and New York City.

"LIBOR Certificate": Each of the Class I-A-3, Class III-A-1-1, Class III-A-1-2, Class III-A-2, Class III-A-3-1, Class III-A-3-2 Certificates and Class M Certificates.

"LIBOR Interest Determination Date": With respect to each Class of LIBOR Certificates and (i) the first Accrual Period, the second LIBOR Business Day preceding the Closing Date, and (ii) with respect to each Accrual Period thereafter, the second LIBOR Business Day preceding the date on which such Accrual Period commences.

"Liquidated Mortgage Loan": As to any Distribution Date, any Mortgage Loan in respect of which the Servicer has determined, in accordance with the servicing procedures specified in the Servicing Agreement, as of the end of the related Prepayment Period, that all Liquidation Proceeds which it expects to recover with respect to the liquidation of the Mortgage Loan or disposition of the related REO Property have been recovered.

"Liquidation Proceeds": Amounts (other than Insurance Proceeds) received by the Servicer or Master Servicer in connection with the taking of an entire Mortgaged Property by exercise of the power of eminent domain or condemnation or in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale, foreclosure sale or otherwise and any Subsequent Recoveries, other than amounts received in respect of any REO Property.

"Loan Group": Loan Group I, Loan Group II and Loan Group III, as applicable.

"Loan Group I": Each of the Group I Loans.

"Loan Group II": Each of the Group II Loans.

"Loan Group III": Each of the Group III Loans.

"Loan-to-Value Ratio": As of any date of determination, the fraction, expressed as a percentage, the numerator of which is the current principal balance of the related Mortgage Loan at the date of determination and the denominator of which is the Collateral Value of the related Mortgaged Property.

"Lost Note Affidavit": With respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost, misplaced or destroyed and has not been replaced, an affidavit from the Sponsor certifying that the original Mortgage Note has been lost, misplaced or destroyed (together with a copy of the related Mortgage Note) and indemnifying the Trust Fund against any loss, cost or liability resulting from the failure to deliver the original Mortgage Note in the form of Exhibit I hereto.

"Margin": With respect to any Accrual Period and Class of Class A Certificates or Class M Certificates, the per annum rate indicated in the following table:

| Class | Margin (1) | Margin (2) | Margin (3) |
|-------|-----------|-----------|-----------|
| I-A-1 | 1.250% | 0.970% | 1.940% |
| I-A-2-1 | 1.330% | 1.020% | 2.040% |
| I-A-2-2 | 1.550% | 1.250% | 2.500% |
| I-A-3 | 0.320% | N/A | 0.640% |
| II-A-1-1 | 1.250% | 0.940% | 1.880% |
| II-A-1-2 | 1.450% | 1.150% | 2.300% |
| II-A-2 | 1.310% | 1.000% | 2.000% |
| II-A-3-1 | 1.380% | 1.090% | 2.180% |
| II-A-3-2 | 1.450% | 1.050% | 2.100% |
| III-A-1-2 | 0.190% | N/A | 0.380% |
| III-A-2 | 0.260% | N/A | 0.520% |
| III-A-3-1 | 0.230% | N/A | 0.460% |
| III-A-3-2 | 0.380% | N/A | 0.760% |
| M-1 | 0.380% | N/A | 0.570% |
| M-2 | 0.420% | N/A | 0.630% |
| M-3 | 0.470% | N/A | 0.705% |
| M-4 | 0.570% | N/A | 0.855% |
| M-5 | 0.620% | N/A | 0.930% |
| M-6 | 1.150% | N/A | 1.725% |
| M-7 | 2.350% | N/A | 3.525% |
| M-8 | 2.250% | N/A | 3.375% |

(1)     For any Accrual Period relating to any Distribution Date occurring prior to the Distribution Date in February 2007 and prior to the Step-Up Date.

(2)     For any Accrual Period on or after the Distribution Date in February 2007 and prior to the Step-Up Date.

(3)     For any Accrual Period relating to any Distribution Date occurring on or after the Step-Up Date.

"Marker Rate": With respect to the Class C Interest and any Distribution Date, a per annum rate equal to two (2) times the weighted average of the Uncertificated REMIC 1 Pass-Through Rates for each REMIC 1 Regular Interest (other than REMIC 1 Regular Interest LT-AA, REMIC 1 Regular Interest LT-XBI-1, REMIC 1 Regular Interest LT-XBI-2, REMIC 1 Regular Interest LT-XBJ and REMIC 1 Regular Interest LT-P), with the rate on each such REMIC 1 Regular Interest (other than REMIC 1 Regular Interest LT-ZZ) subject to a cap equal to the Pass-Through Rate for the Corresponding Certificate for the purpose of this calculation; and with the rate on REMIC 1 Regular Interest LT-ZZ subject to a cap of zero for the purpose of this calculation; provided, however, that solely for

this purpose, calculations of the Uncertificated REMIC 1 Pass-Through Rate and the related caps with respect to each such REMIC 1 Regular Interest (other than REMIC 1 Regular Interest LT-ZZ) shall be multiplied by a fraction, the numerator of which is the actual number of days in the related Interest Accrual Period and the denominator of which is 30.

"Master Servicer": Wells Fargo Bank, N.A., or any successor master servicer appointed as herein provided.

"Master Servicing Compensation": As defined in Section 3.14 hereof.

"Maximum Uncertificated Accrued Interest Deferral Amount": With respect to any Distribution Date, the excess of (a) accrued interest at the Uncertificated REMIC 1 Pass Through Rate applicable to REMIC 1 Regular Interest LT-ZZ for such Distribution Date on a balance equal to the Uncertificated Principal Balance of REMIC 1 Regular Interest LT-ZZ minus the REMIC 1 Overcollateralization Amount, in each case for such Distribution Date, over (b) the sum of the Uncertificated Accrued Interest on each REMIC 1 Regular Interest (other than REMIC 1 Regular Interest LT-AA, REMIC 1 Regular Interest LT-ZZ and REMIC 1 Regular Interest LT-P), with the rate on each such REMIC 1 Regular Interest subject to a cap equal to the Pass-Through Rate for the related Corresponding Certificate for the purpose of this calculation; provided, however, that for this purpose, calculations of the Uncertificated REMIC 1 Pass-Through Rate and the related caps with respect to each such REMIC 1 Regular Interest (other than REMIC 1 Regular Interest LT-ZZ) shall be multiplied by a fraction, the numerator of which is the actual number of days elapsed in the related Accrual Period and the denominator of which is 30.

"MERS": Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

"MERS® System": The system of recording transfers of Mortgages electronically maintained by MERS.

"Mezzanine Principal Distribution Amount": For any class of Class M Certificates and Distribution Date will equal the excess of:

(1)        the sum of:

(a)        the aggregate Certificate Principal Balance of the Senior Certificates (after taking into account the distribution of the Senior Principal Distribution Amount for such Distribution Date),

(b)        the aggregate Certificate Principal Balance of any Class(es) of Class M Certificates that are senior to the subject class (in each case, after taking into account the distribution of the applicable Mezzanine Principal Distribution Amount(s) for such more senior Class(es) of Certificates for such Distribution Date), and

(c)        the Certificate Principal Balance of such class of Class M Certificates immediately prior to such Distribution Date, over

(2)        the lesser of (a) the product of (x) 100% minus the applicable Stepdown Target Subordination Percentage for the subject Class of the Class M Certificates for that Distribution Date and (y) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to principal prepayments received in the related Prepayment Period) and (b) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to principal prepayments received in the related Prepayment Period) minus the OC Floor;

provided, however, that if such Class of Class M Certificates is the only class of Class M Certificates outstanding on such Distribution Date, that Class will be entitled to receive the entire remaining Principal Distribution Amount until its Certificate Principal Balance is reduced to zero.

"MIN": The Mortgage Identification Number for Mortgage Loans registered with MERS on the MERS® System.

"MOM Loan": With respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.

"Monthly Advance": An Advance.

"Monthly Payment": With respect to any Mortgage Loan, the scheduled monthly payment of principal and interest on such Mortgage Loan which is payable by a Mortgagor from time to time under the related Mortgage Note as originally executed (after adjustment, if any, for Deficient Valuations occurring prior to such Due Date, and after any adjustment by reason of any bankruptcy or similar proceeding or any moratorium or similar waiver or grace period).

"Moody's": Moody's Investors Service, Inc., or its successor in interest.

"Mortgage": The mortgage, deed of trust or any other instrument securing the Mortgage Loan.

"Mortgage File": The mortgage documents listed in Section 2.01 pertaining to a particular Mortgage Loan and any additional documents required to be added to the Mortgage File pursuant to this Agreement; provided, that whenever the term "Mortgage File" is used to refer to documents actually received by the Custodian as agent for the Trustee, such term shall not be deemed to include such additional documents required to be added unless they are actually so added.

"Mortgage Loan": Each of the Mortgage Loans (including the Cooperative Loans), transferred and assigned to the Trustee pursuant to Section 2.01 or 2.04 and from time to time held in the Trust Fund (including any Eligible Substitute Mortgage Loans), the Mortgage Loans so transferred, assigned and held being identified in the Mortgage Loan Schedule. As used herein, the term "Mortgage Loan" includes the related Mortgage Note and Mortgage.

"Mortgage Loan Purchase Agreement": The Mortgage Loan Purchase Agreement dated as of July 28, 2006, between American Home Mortgage Corp., as seller and the Company as purchaser, and all amendments thereof and supplements thereto, a form of which is attached hereto as Exhibit N.

"Mortgage Loan Schedule": As of any date of determination, the schedule of Mortgage Loans included in the Trust Fund. The initial schedule of Mortgage Loans with accompanying information transferred on the Closing Date to the Trustee as part of the Trust Fund for the Certificates, attached hereto as Exhibit H for the Certificates (in each case as amended from time to time to reflect the addition of Eligible Substitute Mortgage Loans) (and, for purposes of the Trustee pursuant to Section 2.02, in computer-readable form as delivered to the Custodian), which list shall set forth the following information with respect to each Mortgage Loan:

       (i)     the loan number;

       (ii)    the city, state and zip code of the Mortgaged Property;

       (iii)   the original term to maturity;

       (iv)   the original principal balance and the original Mortgage Rate;

       (v)    the first Distribution Date;

(vi)     the type of Mortgaged Property;

(vii)     the Monthly Payment in effect as of the Cut-off Date;

(viii)     the principal balance as of the Cut-off Date;

(ix)     the Mortgage Rate as of the Cut-off Date;

(x)     the occupancy status;

(xi)     the purpose of the Mortgage Loan;

(xii)     the Collateral Value of the Mortgaged Property;

(xiii)     the original term to maturity;

(xiv)     the paid-through date of the Mortgage Loan

(xv)     [Reserved];

(xvi)     the Servicing Fee Rate;

(xvii)     the Net Mortgage Rate for such Mortgage Loan;

(xviii)     whether the Mortgage Loan is covered by a private mortgage insurance policy or an original certificate of private mortgage insurance;

(xix)     the documentation type;

(xx)     the type and term of the related Prepayment Charge, if any;

(xxi)     whether such Mortgage Loan is a Lender-Paid Insured Loan and, if so, the Lender-Paid Primary Insurance Rate;

(xxii)     with respect to each Adjustable Rate Mortgage Loan.

(a)     the frequency of each adjustment date;

(b)     the next adjustment date;

(c)     the Maximum Mortgage Rate;

(d)     the Minimum Mortgage Rate;

(e)     the Mortgage Rate as of the Cut-off Date;

(f)     the related Periodic Rate Cap;

(g)     the Gross Margin; and

(h)     the purpose of the Mortgage Loan.

"Mortgage Note": The note or other evidence of the indebtedness of a Mortgagor under a Mortgage Loan.

"Mortgage Rate": With respect to any Mortgage Loan, the annual rate at which interest accrues on such Mortgage Loan, as adjusted from time to time in accordance with the provisions of the Mortgage Note.

"Mortgaged Property": The underlying property securing a Mortgage Loan.

"Mortgagor": The obligor or obligors on a Mortgage Note.

"MTA": The twelve-month average monthly yield on U.S. Treasury Securities adjusted to a constant maturity of one-year, as published by the Federal Reserve Board in the Federal Reserve Statistical Release "Selected Interest Rates (H.15)."

"MTA Certificates": The Class I-A-1, Class I-A-2-1, Class I-A-2-2, Class II-A-1-1, Class II-A-1-2, Class II-A-2, Class II-A-3-1 and Class II-A-3-2 Certificates.

"MTA Interest Determination Date": With respect to each Class of MTA Certificates and (i) the first Accrual Period, the fifteenth Business Day preceding the Closing Date, and (ii) with respect to each Accrual Period thereafter, the fifteenth Business Day preceding the date on which such Accrual Period commences.

"Net Deferred Interest": On any Distribution Date, Deferred Interest on the related Mortgage Loans during the related Due Period net of Principal Prepayments in Full and Curtailments available to be distributed on the Certificates on that Distribution Date.

"Net Liquidation Proceeds": With respect to any Liquidated Mortgage Loan or any other disposition of related Mortgaged Property (including REO Property) the related Liquidation Proceeds net of Advances, Servicing Advances, Servicing Fees and any other accrued and unpaid servicing fees received and retained in connection with the liquidation of such Mortgage Loan or Mortgaged Property.

"Net Mortgage Rate": With respect to each Mortgage Loan Due Date, a per annum rate of interest equal to the then-applicable Mortgage Rate on such Mortgage Loan less the Servicing Fee Rate and, with respect to the Lender-Paid Insured Loans, the Lender-Paid Primary Insurance Rate.

"Net Prepayment Interest Shortfall": With respect to any Distribution Date, the excess, if any, of any Prepayment Interest Shortfalls for such date over the related Compensating Interest.

"Net Prepayments": With respect to any Distribution Date and any Loan Group, Principal Prepayments net of Deferred Interest with respect to that Loan Group.

"Net Rate Cap": The Group I Net Rate Cap, the Group II Net Rate Cap, the Group III Net Rate Cap or the Subordinate Net Rate Cap.

"Net Rate Shortfall": With respect to the Class A Certificates and Class M Certificates on any Distribution Date, as determined separately for each such Class of Certificates, the excess, if any, of (x) the related Accrued Certificate Interest thereon for such Distribution Date calculated pursuant to clause (i) of the related definition of Pass-Through Rate, in each case prior to reduction for Net Deferred Interest, over (y) Accrued Certificate Interest thereon for such Distribution Date calculated at the related Net Rate Cap.

"Net Rate Shortfall Carry-Forward Amount": With respect to the Offered Certificates on any Distribution Date, as determined separately for each such Class of Certificates, an amount equal to the aggregate amount of Net Rate Shortfall for such Class of Certificates on such Distribution Date, plus any unpaid Net Rate Shortfall for such Class of Certificates from prior Distribution Dates, plus interest thereon at the related Pass-Through Rate for such Distribution Date for such Class for the related Accrual Period, to the extent previously unreimbursed.

"Net Swap Payment": With respect to each Distribution Date, the net payment required to be made pursuant to the terms of the Interest Rate Swap Agreement by either the Swap Counterparty or the Grantor Trust, which net payment shall not take into account any Swap Termination Payment.

"Nonrecoverable Advance": Any Advance or Servicing Advance previously made or proposed to be made in respect of a Mortgage Loan which, in the good faith judgment of the Servicer or the Master Servicer, will not or, in the case of a proposed Advance or Servicing Advance, would not be ultimately recoverable from related Late Collections, Insurance Proceeds, Liquidation Proceeds or REO Proceeds. The determination by the Servicer or the Master Servicer that it has made a Nonrecoverable Advance or that any proposed Advance or Servicing Advance would constitute a Nonrecoverable Advance, shall be evidenced by a certificate of a Servicing Officer delivered, in the case of the Servicer, to the Company and the Master Servicer, and in the case of the Master Servicer, to the Company and the Trustee.

"Non-United States Person": Any Person other than a United States Person.

"Notional Amount": As of any date of determination, the Notional Amount of the Class C Interest is equal to the aggregate Uncertificated Principal Balance of the REMIC 1 Regular Interests (other than REMIC 1 Regular Interest LT-P).

"OC Floor": An amount equal to 0.50% of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-Off Date.

"Offered Certificates": The Class I-A-1, Class I-A-2-1, Class I-A-2-2, Class I-A-3, Class II-A-1-1, Class II-A-1-2, Class II-A-2, Class II-A-3-1, Class II-A-3-2, Class III-A-1-1, Class III-A-1-2, Class III-A-2, Class III-A-3-1, Class III-A-3-2, Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7 and Class M-8 Certificates.

"Officers' Certificate": A certificate signed by the Chairman of the Board, the Vice Chairman of the Board, the President or a vice president and by the Treasurer, the Secretary, or one of the assistant treasurers or assistant secretaries of the Company, the Sponsor, the Master Servicer or of any Subservicer and delivered to the Company and the Trustee.

"One-Month LIBOR": With respect to any Accrual Period, the rate determined by the Trustee on the related LIBOR Interest Determination Date on the basis of the London interbank offered rate for one-month United States dollar deposits, as such rates appear on the Telerate Screen Page 3750, as of 11:00 a.m. (London time) on such LIBOR Interest Determination Date pursuant to Section 1.02.

"Opinion of Counsel": A written opinion of counsel, who may be counsel for the Company, the Sponsor, or the Master Servicer, reasonably acceptable to the Trustee; except that any opinion of counsel relating to (a) the qualification of any account required to be maintained pursuant to this Agreement as an Eligible Account, (b) the qualification of each REMIC as a REMIC, (c) compliance with the REMIC Provisions, (d) the qualification of the Grantor Trust as a grantor trust under subpart E, Part I of subchapter J of the Code for federal income tax purposes or (d) resignation of the Master Servicer pursuant to Section 6.04 must be an opinion of counsel who (i) is in fact independent of the Company and the Master Servicer, (ii) does not have any direct financial interest or any material indirect financial interest in the Company or the Master Servicer or in an affiliate of either and (iii) is not connected with the Company or the Master Servicer as an officer, employee, director or person performing similar functions.

"Optional Termination Date": The first Distribution Date on which the Aggregate Stated Principal Balance of the Mortgage Loans and properties acquired in respect thereof, remaining in the Trust Fund has been reduced to less than or equal to 1% of the Cut-off Date Balance.

"OTS": Office of Thrift Supervision or any successor.

"Outstanding Mortgage Loan": As to any Due Date, a Mortgage Loan (including an REO Property) which was not the subject of a Principal Prepayment in Full, Cash Liquidation or REO Disposition and which was not purchased prior to such Due Date pursuant to Sections 2.02, 2.04 or 3.14.

"Outstanding Principal Balance": With respect to a mortgage loan, the principal balance of such mortgage loan remaining to be paid by the mortgagor or, in the case of an REO Property, the principal balance of the related mortgage loan remaining to be paid by the mortgagor at the time such property was acquired by the trust.

"Overcollateralization Target Amount": With respect to any Distribution Date (a) prior to the Stepdown Date, an amount equal to 0.50% of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-Off Date and (b) on or after the Stepdown Date, the greater of (i) (x) for any Distribution Date on or after the Stepdown Date but prior to the Distribution Date in August 2012, an amount equal to 1.25% of the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to principal prepayments received in the related Prepayment Period) and (y) for any Distribution Date on or after the Stepdown Date and on or after the Distribution Date in August 2012, an amount equal to 1.00% of the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to principal prepayments received in the related Prepayment Period) and (ii) the OC Floor. Notwithstanding the foregoing, on and after any Distribution Date following the reduction of the aggregate Certificate Principal Balance of the Class A Certificates and the Class M Certificates to zero, the Overcollateralization Target Amount shall be zero.

"Overcollateralized Amount": For any Distribution Date, the amount, if any, by which (i) the aggregate Stated Principal Balance of the Mortgage Loans (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, unscheduled collections of principal received during the related Prepayment Period and any Realized Losses on the Mortgage Loans during the related Prepayment Period), exceeds (ii) the aggregate Certificate Principal Balance of the Offered Certificates and the Class P Certificates as of such Distribution Date (after giving effect to distributions on such Distribution Date).

"Ownership Interest": As to any Certificate, any ownership or security interest in such Certificate, including any interest in such Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial, as owner or as pledgee.

"Pass-Through Rate": The Pass-Through Rate of the Class I-A Certificates and Class II-A Certificates will be equal to the lesser of (i) One-Year MTA plus the related Margin and (ii) the related Net Rate Cap. The Pass-Through Rate of the Class III-A Certificates, (other than the Class III-A-1-1 Underlying Interest) and Class M Certificates will be equal to the lesser of (i) One-Month LIBOR plus the related Margin and (ii) the related Net Rate Cap. Prior to the occurrence of a Swap Termination Event or a Swap Additional Termination Event and so long as no Swap Event of Default is in effect, the Pass-Through Rate of the Class III-A-1-1 Certificates will be One-Month LIBOR plus 0.19% prior to the Step-Up Date and 0.38% on or after the Step-Up Date. If a Swap Termination Event or a Swap Additional Termination Event has occurred or a Swap Event of Default is in effect, the Pass-Through Rate of the Class III-A-1-1 Certificates will be equal to the lesser of (i) One-Month LIBOR plus 0.19% prior to the Step-Up Date and 0.38% on or after the Step-Up Date and (ii) the Group III Net Rate Cap. With respect to the Class C Interest and any Distribution Date, a per annum rate equal to the percentage equivalent of a fraction, the numerator of which is (x) the sum of (i) 100% of the Uncertificated Accrued Interest on REMIC 1 Regular Interest LT-P and (ii) interest on the Uncertificated Balance of each REMIC 1 Regular Interest listed in clause (y) at a rate equal to the related Uncertificated REMIC 1 Pass-Through Rate minus the Marker Rate and the denominator of which is (y) the aggregate Uncertificated Principal Balance of REMIC 1 Regular Interest LT-AA, REMIC 1 Regular Interest LT-I-A-1, REMIC 1 Regular Interest LT-I-A-2-1, REMIC 1 Regular Interest LT-I-A-2-2, REMIC 1 Regular

Interest LT-I-A-3, REMIC 1 Regular Interest LT-II-A-1-1, REMIC 1 Regular Interest LT-II-A-1-2, REMIC 1 Regular Interest LT-II-A-2, REMIC 1 Regular Interest LT-II-A-3-1, REMIC 1 Regular Interest LT-II-A-3-2, REMIC 1 Regular Interest LT-III-A-1-1, REMIC 1 Regular Interest LT-III-A-1-2, REMIC 1 Regular Interest LT-III-A-2, REMIC 1 Regular Interest LT-III-A-3-1, REMIC 1 Regular Interest LT-III-A-3-2, REMIC 1 Regular Interest LT-M1, REMIC 1 Regular Interest LT-M2, REMIC 1 Regular Interest LT-M3, REMIC 1 Regular Interest LT-M4, REMIC 1 Regular Interest LT-M5, REMIC 1 Regular Interest LT-M6, REMIC 1 Regular Interest LT-M7, REMIC 1 Regular Interest LT-M8 and REMIC 1 Regular Interest LT-ZZ.

With respect to the Class C Certificates, 100% of the interest distributable to the Class C Interest, expressed as a per annum rate.

"PCAOB": The Public Company Accounting Oversight Board.

"Permitted Investment": One or more of the following:

(i)      obligations of or guaranteed as to principal and interest by the United States or any agency or instrumentality thereof when such obligations are backed by the full faith and credit of the United States;

(ii)      repurchase agreements on obligations specified in clause (i) maturing not more than one month from the date of acquisition thereof, provided that the unsecured obligations of the party agreeing to repurchase such obligations are at the time rated by each Rating Agency in its highest short-term rating available;

(iii)      federal funds, certificates of deposit, demand deposits, time deposits and bankers' acceptances (which shall each have an original maturity of not more than 90 days and, in the case of bankers' acceptances, shall in no event have an original maturity of more than 365 days or a remaining maturity of more than 30 days) denominated in United States dollars of any U.S. depository institution or trust company incorporated under the laws of the United States or any state thereof or of any domestic branch of a foreign depository institution or trust company; provided that the debt obligations of such depository institution or trust company (or, if the only Rating Agency is Standard & Poor's, in the case of the principal depository institution in a depository institution holding company, debt obligations of the depository institution holding company) at the date of acquisition thereof have been rated by each Rating Agency in its highest short-term rating available; and provided further that, if the only Rating Agency is Standard & Poor's or Fitch Ratings and if the depository or trust company is a principal subsidiary of a bank holding company and the debt obligations of such subsidiary are not separately rated, the applicable rating shall be that of the bank holding company; and, provided further that, if the original maturity of such short-term obligations of a domestic branch of a foreign depository institution or trust company shall exceed 30 days, the short-term rating of such institution shall be A-1+ in the case of Standard & Poor's if Standard & Poor's is the Rating Agency;

(iv)      commercial paper (having original maturities of not more than 365 days) of any corporation incorporated under the laws of the United States or any state thereof which on the date of acquisition has been rated by Moody's, Fitch Ratings and Standard & Poor's in their highest short-term ratings available; provided that such commercial paper shall have a remaining maturity of not more than 30 days;

(v)      a money market fund or a qualified investment fund rated by Moody's and Fitch Ratings, if so rated, in its highest long-term ratings available and rated AAAm or AAAm-G by Standard & Poor's, including any such funds for which Wells Fargo Bank, N.A. or any affiliate thereof serves as an investment advisor, manager, administrator, shareholder, servicing agent, and/or custodian or sub-custodian; and

(vi)      other obligations or securities that are acceptable to each Rating Agency as a Permitted Investment hereunder and will not reduce the rating assigned to any Class of Certificates by such Rating Agency below the lower of the then-current rating or the rating assigned to such Certificates as of the Closing Date by such Rating Agency, as evidenced in writing;

provided, however, that no instrument shall be a Permitted Investment if it represents, either (1) the right to receive only interest payments with respect to the underlying debt instrument or (2) the right to receive both principal and interest payments derived from obligations underlying such instrument and the principal and interest payments with respect to such instrument provide a yield to maturity greater than 120% of the yield to maturity at par of such underlying obligations.

"Permitted Transferee": Any transferee of a Residual Certificate other than a Disqualified Organization, a Non-United States Person or an "electing large partnership" (as defined in Section 775 of the Code).

"Person": Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"Prepayment Assumption": As defined in the Prospectus Supplement.

"Prepayment Charge": With respect to any Mortgage Loan, the charges, penalties or premiums, if any, due in connection with a full or partial prepayment of such Mortgage Loan in accordance with the terms of the related Mortgage Note (or any rider or annex thereto), or any amounts in respect thereof paid by the Sponsor in accordance with the Mortgage Loan Purchase Agreement or the Servicer in accordance with the Servicing Agreement.

"Prepayment Interest Shortfall": As to any Distribution Date and any Mortgage Loan (other than a Mortgage Loan relating to an REO Property) that was the subject of (a) a Principal Prepayment in Full during the related Prepayment Period, an amount equal to the excess of one month's interest at the Net Mortgage Rate on the Stated Principal Balance of such Mortgage Loan over the amount of interest (adjusted to the Net Mortgage Rate) paid by the Mortgagor for such Prepayment Period to the date of such Principal Prepayment in Full or (b) a Curtailment during the prior calendar month, an amount equal to one month's interest at the Mortgage Rate on the amount of such Curtailment.

"Prepayment Period": As to any Distribution Date, the calendar month preceding the month in which such Distribution Date occurs.

"Primary Hazard Insurance Policy": Each primary hazard insurance policy required to be maintained pursuant to Section 3.09.

"Primary Mortgage Insurance Policy": Any primary mortgage insurance policy of mortgage guaranty insurance including any replacement policy therefor.

"Principal Distribution Amount": With respect to each Distribution Date, is the sum of (A) the excess, if any, of:

      (i)      the aggregate Certificate Principal Balance of the Offered Certificates immediately prior to such Distribution Date, over

      (ii)      the excess, if any, of (a) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date occurring in the month of that Distribution Date (after giving effect to principal prepayments received in the related Prepayment Period), over (b) the Overcollateralization Target Amount for such Distribution Date, and

      (B)      the Cap Extra Principal Distribution Amount.

"Principal Prepayment": Any payment of principal made by the Mortgagor on a Mortgage Loan which is received in advance of its scheduled Due Date and which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

"Principal Prepayment in Full": Any Principal Prepayment made by a Mortgagor of the entire unpaid principal balance of the Mortgage Loan.

"Principal Remittance Amount": For any Distribution Date and Loan Group, the sum of

(i) the principal portion of all scheduled monthly payments on the related Mortgage Loans due on the related Due Date, to the extent received or advanced;

(ii) the principal portion of all proceeds of the repurchase of a related Mortgage Loan (or, in the case of a substitution, certain amounts representing a principal adjustment) as required by the Agreement during the preceding calendar month; and

(iii) the principal portion of all other unscheduled collections received during the preceding calendar month in respect of the related Mortgage Loans, including full and partial prepayments, Liquidation Proceeds and Insurance Proceeds, in each case to the extent applied as recoveries of principal.

"Prospectus Supplement": That certain Prospectus Supplement dated July 27, 2006, relating to the public offering of the Offered Certificates.

"Protected Account": An account established and maintained for the benefit of Certificateholders by the Servicer with respect to the related Mortgage Loans and with respect to REO Property pursuant to the Servicing Agreement.

"Purchase Price": With respect to any Mortgage Loan (or REO Property) required to be purchased pursuant to Section 2.02, 2.04 or 3.06, an amount equal to the sum of (i) 100% of the Stated Principal Balance thereof, (ii) unpaid accrued interest (or REO Imputed Interest) at the applicable Net Mortgage Rate on the Stated Principal Balance thereof outstanding during each Due Period that such interest was not paid or advanced, from the date through which interest was last paid by the Mortgagor or advanced and distributed to Certificateholders together with unpaid Servicing Fees and, if such Mortgage Loan is a Lender-Paid Insured Loan, the premium payable at the Lender-Paid Primary Insurance Rate, from the date through which interest was last paid by the Mortgagor, in each case to the first day of the month in which such Purchase Price is to be distributed, plus (iii) the aggregate of all Advances and Servicing Advances made in respect thereof that were not previously reimbursed and (iv) costs and damages incurred by the Trust Fund in connection with a repurchase pursuant to Section 2.04 hereof that arises out of a violation of any anti-predatory lending law.

"Qualified Insurer": Any insurance company duly qualified as such under the laws of the state or states in which the related Mortgaged Property or Mortgaged Properties is or are located, duly authorized and licensed in such state or states to transact the type of insurance business in which it is engaged and approved as an insurer by the Master Servicer, so long as the claims paying ability of which is acceptable to the Rating Agencies for pass-through certificates having the same rating as the Certificates rated by the Rating Agencies as of the Closing Date.

"Rating Agency": Standard & Poor's and Moody's, and each of their successors. If such agencies and their successors are no longer in existence, "Rating Agency" shall be such nationally recognized statistical rating agency, or other comparable Person, designated by the Company, notice of which designation shall be given to the Trustee and Master Servicer. References herein to the two highest long term debt ratings of a Rating Agency shall mean "AA" or better in the case of Standard & Poor's and Fitch Ratings and "Aa2" or better in the case of Moody's and references herein to the two highest short-term debt ratings of a Rating Agency shall mean "A-1+" in the case of Standard & Poor's, "F-1" in the case of Fitch Ratings and "P-1" in the case of Moody's, and in the case of any other Rating Agency such references shall mean such rating categories without regard to any plus or minus.

"Realized Loss": With respect to each Mortgage Loan or REO Property as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest,

if any) at the Net Mortgage Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the date of the Cash Liquidation or REO Disposition on the Stated Principal Balance of such Mortgage Loan outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation or REO Disposition occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or the Servicer with respect to related Advances or Servicing Advances not previously reimbursed. With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation. In addition, to the extent the Servicer or Master Servicer receives Subsequent Recoveries with respect to any Mortgage Loan, the amount of the Realized Loss with respect to that Mortgage Loan will be reduced to the extent such recoveries are applied to reduce the Certificate Principal Balance of any Class of Certificates on any Distribution Date.

"Record Date": With respect to the Class I-A-1, Class I-A-2-1, Class I-A-2-2, Class II-A-1-1, Class II-A-1-2, Class II-A-2, Class II-A-3-1, Class II-A-3-2, Class R, Class RX, Class C and Class P Certificates and each Distribution Date, the close of business on the last business day of the calendar month preceding such Distribution Date. With respect to each Distribution Date and Class I-A-3, Class III-A-1-1, Class III-A-1-2, Class III-A-2, Class III-A-3-1 Class III-A-3-2 and Class M Certificates, so long as such Certificates are Book-Entry Certificates, the business day immediately prior to such Distribution Date, and if any such Certificates are no longer Book-Entry Certificates, then the close of business on the last business day of the calendar month preceding such Distribution Date.

"Reference Banks" Leading banks selected by the Trustee after consultation with the Company and engaged in transactions in Eurodollar deposits in the international Eurocurrency market (i) with an established place of business in London, (ii) whose quotations appear on the Telerate Screen Page 3750 on the LIBOR Interest Determination Date in question or Bloomberg's page BBAM and (iii) not controlling, controlled by, or under common control with, the Depositor, the Sponsor, the Master Servicer or the Servicer.

"Regular Certificate": Any of the Certificates other than a Residual Certificate.

"Regular Interest": A "regular interest" in a REMIC within the meaning of Section 860G(a)(1) of the Code.

"Regulation AB": Subpart 229.1100 - Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

"Relevant Servicing Criteria": Means with respect to any Servicing Function Participant, the Servicing Criteria applicable to such party, as set forth on Exhibit L to the Agreement. For clarification purposes, multiple parties can have responsibility for the same Relevant Servicing Criteria. With respect to a Servicing Function Participant engaged by the Master Servicer, the Trustee or the Servicer, the term "Relevant Servicing Criteria" may refer to a portion of the Relevant Servicing Criteria applicable to such parties.

"Relief Act": The Servicemembers Civil Relief Act, f/k/a Soldiers' and Sailors' Civil Relief Act of 1940, as amended.

"Relief Act Interest Shortfall": With respect to any Distribution Date, for any Mortgage Loan with respect to which there has been a reduction in the amount of interest collectible thereon for the most recently ended Due Period as a result of the application of the Relief Act, the amount by which (i) interest collectible on such Mortgage Loan during such Due Period is less than (ii) one month's interest on the Principal Balance of such Mortgage Loan at the Loan Rate for such Mortgage Loan before giving effect to the application of the Relief Act.

"REMIC": A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

"REMIC 1": The segregated pool of assets subject hereto (exclusive of the Cap Contract Reserve Fund) the Cap Contract, the Interest Rate Swap Agreement and the Grantor Trust with respect to which a REMIC election is to be made, conveyed in trust to the Trustee, for the benefit of the Holders of the REMIC 1 Regular Interests and the Holders of the Class R Certificates, consisting of: (i) each Mortgage Loan (exclusive of payments of principal and interest due on or before the Cut-off Date, if any, received by the Master Servicer which shall not constitute an asset of the Trust Fund) as from time to time are subject to this Agreement and all payments under and proceeds of such Mortgage Loans (exclusive of any prepayment fees and late payment charges received on the Mortgage Loans), together with all documents included in the related Mortgage File, subject to Section 2.01; (ii) such funds or assets as from time to time are deposited in the Distribution Account, including the Closing Date Deposit Amount and belonging to the Trust Fund; (iii) any related REO Property; (iv) the Primary Hazard Insurance Policies, if any, the Primary Mortgage Insurance Policies, if any, and all other Insurance Policies with respect to the Mortgage Loans; and (v) the Company's interest in respect of the representations and warranties made by the Sponsor in the Mortgage Loan Purchase Agreement. REMIC 1 specifically does not include the Cap Contract Reserve Fund and the Interest Rate Swap Agreement.

"REMIC 1 Interest Loss Allocation Amount": With respect to any Distribution Date, an amount equal to (a) the product of (i) the aggregate Stated Principal Balance of the Mortgage Loans and REO Properties then outstanding and (ii) the Uncertificated REMIC 1 Pass-Through Rate for REMIC 1 Regular Interest II-LTAA minus the Marker Rate, divided by (b) 12.

"REMIC 1 Marker Allocation Percentage": 50% of any amount payable or loss attributable from the Mortgage Loans, which shall be allocated to REMIC 1 Regular Interest LT-AA, REMIC 1 Regular Interest LT-I-A-1, REMIC 1 Regular Interest LT-I-A-2-1, REMIC 1 Regular Interest LT-I-A-2-2, REMIC 1 Regular Interest LT-I-A-3, REMIC 1 Regular Interest LT-II-A-1-1, REMIC 1 Regular Interest LT-II-A-1-2, REMIC 1 Regular Interest LT-II-A-2, REMIC 1 Regular Interest LT-II-A-3-1, REMIC 1 Regular Interest LT-II-A-3-2, REMIC 1 Regular Interest LT-III-A-1-1, REMIC 1 Regular Interest LT-III-A-1-2, REMIC 1 Regular Interest LT-III-A-2, REMIC 1 Regular Interest LT-III-A-3-1, REMIC 1 Regular Interest LT-III-A-3-2, REMIC 1 Regular Interest LT-M1, REMIC 1 Regular Interest LT-M2, REMIC 1 Regular Interest LT-M3, REMIC 1 Regular Interest LT-M4, REMIC 1 Regular Interest LT-M5, REMIC 1 Regular Interest LT-M6, REMIC 1 Regular Interest LT-M7 and REMIC 1 Regular Interest LT-M8, REMIC 1 Regular Interest LT-ZZ and REMIC 1 Regular Interest LT-P.

"REMIC 1 Overcollateralization Amount": With respect to any date of determination, (i) 0.50% of the aggregate Uncertificated Principal Balances of the REMIC 1 Regular Interests minus (ii) the aggregate of the Uncertificated Principal Balances of REMIC 1 Regular Interest LT-I-A-1, REMIC 1 Regular Interest LT-I-A-2-1, REMIC 1 Regular Interest LT-I-A-2-2, REMIC 1 Regular Interest LT-I-A-3, REMIC 1 Regular Interest LT-II-A-1-1, REMIC 1 Regular Interest LT-II-A-1-2, REMIC 1 Regular Interest LT-II-A-2, REMIC 1 Regular Interest LT-II-A-3-1, REMIC 1 Regular Interest LT-II-A-3-2, REMIC 1 Regular Interest LT-III-A-1-1, REMIC 1 Regular Interest LT-III-A-1-2, REMIC 1 Regular Interest LT-III-A-2, REMIC 1 Regular Interest LT-III-A-3-1, REMIC 1 Regular Interest LT-III-A-3-2, REMIC 1 Regular Interest LT-M1, REMIC 1 Regular Interest LT-M2, REMIC 1 Regular Interest LT-M3, REMIC 1 Regular Interest LT-M4, REMIC 1 Regular Interest LT-M5, REMIC 1 Regular Interest LT-M6, REMIC 1 Regular Interest LT-M7, REMIC 1 Regular Interest LT-M8 and REMIC 1 Regular Interest LT-P, in each case as of such date of determination.

"REMIC 1 Principal Loss Allocation Amount": With respect to any Distribution Date, an amount equal to (a) the product of (i) 50% of the aggregate Stated Principal Balance of the Mortgage Loans and REO Properties then outstanding and (ii) 1 minus a fraction, the numerator of which is two times the aggregate of the Uncertificated Principal Balances of REMIC 1 Regular Interest LT-I-A-1, REMIC 1 Regular Interest LT-I-A-2-1, REMIC 1 Regular Interest LT-I-A-2-2, REMIC 1 Regular Interest LT-I-A-3, REMIC 1 Regular Interest LT-II-A-1-1, REMIC 1 Regular Interest LT-II-A-1-2, REMIC 1 Regular Interest LT-II-A-2, REMIC 1 Regular Interest LT-II-A-3-1, REMIC 1 Regular Interest LT-II-A-3-2, REMIC 1 Regular Interest LT-III-A-1-1, REMIC 1 Regular Interest LT-III-A-1-2, REMIC 1 Regular Interest LT-III-A-2, REMIC 1 Regular Interest LT-III-A-3-1, REMIC 1 Regular Interest LT-III-A-3-2, REMIC 1 Regular Interest LT-M1, REMIC 1 Regular Interest LT-M2, REMIC 1 Regular Interest LT-M3, REMIC 1 Regular Interest LT-M4, REMIC 1 Regular Interest LT-M5, REMIC 1 Regular Interest LT-M6,

REMIC 1 Regular Interest LT-M7 and REMIC 1 Regular Interest LT-M8 and the denominator of which is the aggregate of the Uncertificated Principal Balances of REMIC 1 Regular Interest LT-I-A-1, REMIC 1 Regular Interest LT-I-A-2-1, REMIC 1 Regular Interest LT-I-A-2-2, REMIC 1 Regular Interest LT-I-A-3, REMIC 1 Regular Interest LT-II-A-1-1, REMIC 1 Regular Interest LT-II-A-1-2, REMIC 1 Regular Interest LT-II-A-2, REMIC 1 Regular Interest LT-II-A-3-1, REMIC 1 Regular Interest LT-II-A-3-2, REMIC 1 Regular Interest LT-III-A-1-1, REMIC 1 Regular Interest LT-III-A-1-2, REMIC 1 Regular Interest LT-III-A-2, REMIC 1 Regular Interest LT-III-A-3-1, REMIC 1 Regular Interest LT-III-A-3-2, REMIC 1 Regular Interest LT-M1, REMIC 1 Regular Interest LT-M2, REMIC 1 Regular Interest LT-M3, REMIC 1 Regular Interest LT-M4, REMIC 1 Regular Interest LT-M5, REMIC 1 Regular Interest LT-M6, REMIC 1 Regular Interest LT-M7, REMIC 1 Regular Interest LT-M8 and REMIC 1 Regular Interest LT-ZZ.

"REMIC 1 Regular Interests": The REMIC 1 Regular Interests, as set forth in the Preliminary Statement.

"REMIC 1 Required Overcollateralization Amount": 0.50% of the Overcollateralization Target Amount.

"REMIC 1 Sub WAC Allocation Percentage": 50% of any amount payable from or loss attributable to the Mortgage Loans, which shall be allocated to REMIC 1 Regular Interest LT-1SUB, REMIC 1 Regular Interest LT1-GRP, REMIC 1 Regular Interest LT-2SUB, REMIC 1 Regular Interest LT2-GRP, REMIC 1 Regular Interest LT-3SUB, REMIC 1 Regular Interest LT-3GRP and REMIC 1 Regular Interest LT-XX.

"REMIC 1 Subordinated Balance Ratio": The ratio among the Uncertificated Principal Balances of each REMIC 1 Regular Interest ending with the designation "SUB," equal to the ratio between, with respect to each such REMIC 1 Regular Interest, the excess of (x) the aggregate Stated Principal Balance of the Mortgage Loans in the related Loan Group over (y) the current Certificate Principal Balance of Class A Certificates and Class P Certificates in the related Loan Group.

"REMIC 2": The segregated pool of assets consisting of all of the REMIC 1 Regular Interests conveyed in trust to the Trustee, for the benefit of the REMIC 2 Certificateholders pursuant to Section 2.05, and all amounts deposited therein, with respect to which a separate REMIC election is to be made.

"REMIC 2 Certificate": Any Regular Certificate (other than the Class III-A-1-1 Certificates, Class C Certificates and Class P Certificates) or Class R Certificate.

"REMIC 2 Certificateholder": The Holder of any REMIC 2 Certificate.

"REMIC 2 Regular Interest": The Class C Interest, Class P Interest, the Class III-A-1-1 Underlying Interest and any "regular interest" in REMIC 2 the ownership of which is represented by a Class A Certificate (other than the Class III-X-1-1 Certificates) or Class M Certificate.

"REMIC 3": The segregated pool of assets consisting of the Class C Interest conveyed in trust to the Trustee, for the benefit of the Holders of the Class C Certificates and the Class R-X Certificates (in respect of the Class R-3 Interest), pursuant to Article II hereunder, and all amounts deposited therein, with respect to which a separate REMIC election is to be made.

"REMIC 3 Regular Interest": Any "regular interest" in REMIC 3 the ownership of which is represented by a Class C Certificate.

"REMIC 4": The segregated pool of assets consisting of the Class P Interest conveyed in trust to the Trustee, for the benefit of the Holders of the Class P Certificates and the Class R-X Certificates (in respect of the Class R-4 Interest), pursuant to Article II hereunder, and all amounts deposited therein, with respect to which a separate REMIC election is to be made.

"REMIC 4 Regular Interest": Any "regular interest" in REMIC 4 the ownership of which is represented by a Class P Certificate.

"Remittance Report": A report prepared by the Master Servicer (and delivered to the Trustee) providing the information set forth in Exhibit E attached hereto.

"REO Acquisition": The acquisition by the Servicer on behalf of the Trust Fund for the benefit of the Certificateholders of any REO Property pursuant to Section 3.15.

"REO Disposition": The receipt by the Servicer of Insurance Proceeds, Liquidation Proceeds, Subsequent Recoveries and other payments and recoveries (including proceeds of a final sale) which the Servicer expects to be finally recoverable from the sale or other disposition of the REO Property.

"REO Imputed Interest": As to any REO Property, for any period, an amount equivalent to interest (at the Mortgage Rate that would have been applicable to the related Mortgage Loan had it been outstanding) on the unpaid principal balance of the Mortgage Loan as of the date of acquisition thereof (as such balance is reduced pursuant to Section 3.15 by any income from the REO Property treated as a recovery of principal).

"REO Proceeds": Proceeds, net of directly related expenses, received in respect of any REO Property (including, without limitation, proceeds from the rental of the related Mortgaged Property and of any REO Disposition), which proceeds are required to be deposited into the Certificate Account as and when received.

"REO Property": A Mortgaged Property acquired by the Servicer on behalf of the Trust Fund through foreclosure or deed-in-lieu of foreclosure in connection with a defaulted Mortgage Loan.

"Reportable Event": Has the meaning set forth in Section 3.23 hereof.

"Reporting Servicer": Has the meaning set forth in Section 3.23 hereof.

"Repurchase Price": With respect to any Mortgage Loan required to be repurchased by the Sponsor, on any date pursuant to the Mortgage Loan Purchase Agreement, or purchased by the Servicer pursuant to the Servicing Agreement an amount equal to the sum, without duplication, of (i) 100% of the Stated Principal Balance thereof (without reduction for any amounts charged off) and (ii) unpaid accrued interest at the Mortgage Rate on the outstanding principal balance thereof from the Due Date to which interest was last paid by the Mortgagor to the first day of the month following the month of purchase plus (iii) the amount of unreimbursed Monthly Advances or unreimbursed Servicing Advances made with respect to such Mortgage Loan plus (iv) any other amounts owed to the Master Servicer or the Servicer as applicable, pursuant to the Agreement or Servicing Agreement and not included in clause (iii) of this definition plus (v) any costs and damages incurred by the Trust in connection with any violation by such loan of any predatory lending law.

"Request for Release": A release signed by a Servicing Officer, in the form of Exhibit F attached hereto.

"Residual Certificates": The Class R Certificates and Class RX Certificates.

"Residual Interest": The sole Class of "residual interests" in a REMIC within the meaning of Section 860G(a)(2) of the Code.

"Responsible Officer": When used with respect to the Trustee, any officer assigned to the Corporate Trust Office of the Trustee, including any managing director, vice president, assistant vice president, senior trust officer, trust officer or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and having direct responsibility for the administration of this Agreement, and also, with respect to a particular matter, any other officer, to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject.

"Rolling Sixty Day Delinquency Rate": With respect to any Distribution Date on or after the Stepdown Date is the average of the Sixty-Day Delinquency Rates for such Distribution Date and the two immediately preceding distribution dates.

"Sarbanes Oxley Certification": A written certification covering servicing of the Mortgage Loans by the Servicer and signed by an officer of the Company that complies with (i) the Sarbanes-Oxley Act of 2002, as amended from time to time, and (ii) the February 21, 2003 Statement by the Staff of the Division of Corporation Finance of the Securities and Exchange Commission Regarding Compliance by Asset-Backed Issuers with Exchange Act Rules 13a-14 and 15d-14, as in effect from time to time.

"Security Agreement": With respect to a Cooperative Loan, the agreement creating a security interest in favor of the originator in the related Cooperative Assets.

"Senior Certificates": The Group I Certificates, Group II Certificates and Group III Senior Certificates.

"Senior Enhancement Percentage": With respect to any Distribution Date on or after the Stepdown Date is equal to a fraction (expressed as a percentage) of:

(1)       the numerator of which is the excess of:

(a)       the aggregate Stated Principal Balance of the Mortgage Loans for the preceding Distribution Date over

(b) (i) before the aggregate Certificate Principal Balance of the Senior Certificates has been reduced to zero, the aggregate Certificate Principal Balance of the Senior Certificates, or

(ii) after such time, the Certificate Principal Balance of the most senior Class of the Class M Certificates outstanding, as of the Business Day immediately preceding the Distribution Date in the calendar month prior to the month of such Distribution Date, and

(2)       the denominator of which is the aggregate Stated Principal Balance of the Mortgage Loans for the preceding Distribution Date.

"Senior Principal Distribution Amount": For any Distribution Date, the excess of:

(1)       the aggregate Certificate Principal Balance of the Senior Certificates immediately prior to such Distribution Date, over

(2)       the lesser of (A) the product of (i) (x) 83.50% on any Distribution Date on or after the Stepdown Date and prior to the Distribution Date in August 2012 or (y) 86.80% on any Distribution Date on or after the Stepdown Date and on or after the Distribution Date in August 2012 and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to principal prepayments received in the related Prepayment Period) and (B) the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of that Distribution Date (after giving effect to Principal Prepayments received in the related Prepayment Period) minus the OC Floor.

"Servicer": American Home Mortgage Servicing, Inc., or its successor in interest.

"Servicer Remittance Date": Three Business Days prior to the related Distribution Date. The first Remittance Date shall occur on August 22, 2006.

"Servicing Advances": All customary, reasonable and necessary "out of pocket" costs and expenses incurred in connection with a default, delinquency or other unanticipated event in the performance by the Master Servicer, the Servicer or any Subservicer of its servicing obligations, including, but not limited to, the cost of (i) the preservation, restoration and protection of a Mortgaged Property, (ii) any enforcement or judicial proceedings, including foreclosures, including any expenses incurred in relation to any such proceedings that result from the Mortgage Loan being registered on the MERS System, (iii) the management and liquidation of any REO Property, including reasonable fees paid to any independent contractor in connection therewith, and (iv) compliance with the obligations under the second paragraph of Section 3.01, Section 3.09 and Section 3.13 (other than any deductible described in the last paragraph thereof).

"Servicing Agreement": The Servicing Agreement dated as of July 28, 2006 among the Servicer, the Master Servicer, the Trustee and the Sponsor, substantially in the form attached hereto as Exhibit M.

"Servicing Criteria": Means the criteria set forth in paragraph (d) of Item 1122 of Regulation AB, as such may be amended from time to time.

"Servicing Fee": With respect to each Mortgage Loan, accrued interest at the Servicing Fee Rate with respect to the Mortgage Loan on the same principal balance on which interest on the Mortgage Loan accrues for the calendar month. The Servicing Fee consists of servicing and other related compensation payable to the Servicer or to the Master Servicer if the Master Servicer is directly servicing the loan, and includes any amount payable to any Subservicer by the Servicer.

"Servicing Fee Rate": 0.375% per annum.

"Servicing Function Participant": Means the Servicer, the Master Servicer and the Trustee, any Subservicer, Subcontractor or affiliates of any of the foregoing, or any other Person, that is participating in the servicing function within the meaning of Item 1122 of Regulation AB performing activities addressed by the Servicing Criteria, unless such Person's activities relate only to five percent (5%) or less of the Mortgage Loans.

"Servicing Officer": Any officer of the Master Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans, whose name and specimen signature appear on a list of servicing officers furnished to the Trustee by the Master Servicer, as such list may from time to time be amended.

"Servicing Rights Pledgee": One or more lenders, selected by the Servicer, to which the Servicer may pledge and assign all of its right, title and interest in, to and under the Servicing Agreement, including Bank of America, N.A., as the representative of certain lenders.

"Significance Estimate": With respect to any Distribution Date, and in accordance with Item 1115 of Regulation AB, shall be an amount determined based on the reasonable good-faith estimate by the Sponsor or its affiliate of the aggregate maximum probable exposure of the outstanding Certificates to the Interest Rate Swap Agreement.

"Significance Percentage": With respect to any Distribution Date, and in accordance with Item 1115 of Regulation AB, shall be an percentage equal to the Significance Estimate divided by the aggregate outstanding Certificate Principal Balance of the Class A Certificates and Class M Certificates, prior to the distribution of the Principal Distribution Amount on such Distribution Date.

"Single Certificate": A Regular Certificate of any Class evidencing an Initial Certificate Principal Balance or Initial Notional Amount, as applicable, of $1,000.

"Sixty-Day Delinquency Rate": With respect to any Distribution Date on or after the Stepdown Date, is a fraction, expressed as a percentage, the numerator of which is the aggregate Stated Principal Balance for such Distribution Date of all Mortgage Loans that were 60 or more days Delinquent as of the close of business on the last day of the calendar month preceding such Distribution Date (including Mortgage Loans in foreclosure, bankruptcy

and REO Properties) and the denominator of which is the aggregate Stated Principal Balance for such Distribution Date of the Mortgage Loans as of the related Due Date (after giving effect to principal prepayments in the Prepayment Period related to that prior Due Date).

"Sponsor": American Home Mortgage Corp.

"Standard & Poor's": Standard & Poor's, a division of The McGraw-Hill Companies, Inc., or its successor in interest.

"Startup Day": The day designated as such pursuant to Article X hereof.

"Stated Principal Balance": With respect to any Mortgage Loan or related REO Property at any given time, (i) the principal balance of the Mortgage Loan outstanding as of the Cut-off Date, after application of principal payments due on or before such date, whether or not received, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending prior to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds, Subsequent Recoveries and REO Proceeds to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.15 with respect to such Mortgage Loan or REO Property, which were distributed pursuant to Section 4.01 on any previous Distribution Date, and (c) any Realized Loss with respect thereto allocated pursuant to Section 4.07 for any previous Distribution Date.

"Stepdown Date": The earlier to occur of:

(i)        the Distribution Date following the Distribution Date on which the aggregate Certificate Principal Balance of the Senior Certificates is reduced to zero; and

(ii)        the later to occur of (x) the Distribution Date in August 2009 and (y) the first Distribution Date on which a fraction, the numerator of which is the excess of the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month preceding the month in which that Distribution Date occurs (after giving effect to principal prepayments received in the Prepayment Period related to that Due Date) over the aggregate Certificate Principal Balance of the Senior Certificates immediately prior to that Distribution Date, and the denominator of which is the aggregate Stated Principal Balance of the Mortgage Loans as of the Due Date in the month of the current Distribution Date (after giving effect to principal prepayments received in the Prepayment Period related to that Due Date) is greater than or equal to (a) 16.50% on any Distribution Date prior to the Distribution Date in August 2012 and (b) 13.20% on any Distribution Date on or after the Distribution Date in August 2012.

"Stepdown Target Subordination Percentage": For each Class of Class M Certificates will equal the respective percentages indicated in the following table:

|  | Initial Target Subordination Percentage | Stepdown Target Subordination Percentage(1) | Stepdown Target Subordination Percentage(2) |
|---|---|---|---|
| Class A | 6.600% | 16.500% | 13.200% |
| Class M-1 | 4.050% | 10.125% | 8.100% |
| Class M-2 | 3.350% | 8.375% | 6.700% |
| Class M-3 | 2.900% | 7.250% | 5.800% |
| Class M-4 | 2.450% | 6.125% | 4.900% |
| Class M-5 | 1.950% | 4.875% | 3.900% |
| Class M-6 | 1.400% | 3.500% | 2.800% |
| Class M-7 | 0.850% | 2.125% | 1.700% |

Class M-8                                  0.500%                        1.250%                        1.000%
(1) For any Distribution Date occurring on or after the Distribution Date in August 2009 and prior to the Distribution
     Date occurring in August 2012.
(2) For any Distribution Date occurring on or after the Distribution Date in August 2012.

"Step-Up Date": With respect to the Offered Certificates, the Distribution Date following the Optional Termination Date.

"Subordinate Component": With respect to any Distribution Date and any Loan Group, the excess, if any, of (i) the aggregate of the Stated Principal Balances of the Mortgage Loans in the Loan Group as of the Due Date of the month preceding such Distribution Date (after giving effect to Principal Prepayments in the Prepayment Period related to such prior Distribution Date over (ii) the aggregate of the Certificate Principal Balances of the Senior Certificates related to such Loan Group immediately prior to such Distribution Date.

Subordinate Net Rate Cap": With respect to any distribution date and Class M Certificates, the weighted average of the Group I Net Rate Cap, the Group II Net Rate Cap and the Group III Net Rate Cap weighted on the basis of the results of subtracting the Certificate Principal Balance of the related Class A Certificates from the aggregate stated principal balance of the related Mortgage Loans in each Loan Group. For federal income tax purposes, the equivalent of the foregoing shall be expressed as the weighted average of the Uncertificated REMIC 1 Pass-Through Rate on REMIC 1 Regular Interest LT-1SUB, REMIC 1 Regular Interest LT-2SUB and REMIC 1 Regular Interest LT-3SUB (subject, in each case, to a cap a floor equal to the Uncertificated REMIC 1 Pass-Through Rate on REMIC 1 Regular Interest LT-1GRP, REMIC 1 Regular Interest LT-2GRP and REMIC 1 Regular Interest LT-3GRP, respectively), weighted on the basis of the Uncertificated Principal Balance of each such REMIC 1 Regular Interest.

"Subservicer": Any Subservicer appointed by the Servicer pursuant to a Servicing Agreement.

"Subsequent Recoveries": As of any Distribution Date, amounts received by the Servicer or Master Servicer (net of any related expenses permitted to be reimbursed pursuant to Section 4.02) or surplus amounts held by the Servicer or Master Servicer to cover estimated expenses (including, but not limited to, recoveries in respect of the representations and warranties made by the Sponsor in the Mortgage Loan Purchase Agreement) specifically related to a Mortgage Loan that was the subject of a liquidation or final disposition of any REO Property prior to the related Prepayment Period that resulted in a Realized Loss.

"Substitution Adjustment": As defined in Section 2.04 hereof.

"Swap Counterparty": Deutsche Bank AG.

"Swap Counterparty Principal Portion": With respect to any Distribution Date, the excess, if any, of the Certificate Principal Balance of the Class III-A-1-1 Underlying Interest over the Certificate Principal Balance of the Class III-A-1-1 Certificates.

"Swap Counterparty Termination Event": As provided in the Interest Rate Swap Agreement, any default with respect to the Swap Counterparty with respect to the Interest Rate Swap Agreement where the Swap Counterparty is terminated and a swap counterparty is not found or the Swap Counterparty is unable to make payments.

"Swap Notional Amount": As of any Distribution Date, the lesser of (1) the Certificate Principal Balance of the Class III-A-1-1 Certificates immediately prior to the related distribution date and (2) the aggregate principal balance of the Group III Mortgage Loans as of the first day of the related due period.

"Swap Termination Payment": Upon a Swap Early Termination, the Issuing Entity or the Swap Provider may be liable to make a swap termination payment to the other, regardless, if applicable, of which of the parties has

caused the termination. The Swap Termination Payment will be based on the value of the Interest Rate Swap Agreement computed in accordance with the procedures set forth in the Interest Rate Swap Agreement.

"Tax Returns": The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Residual Interest Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of each REMIC due to their classification as REMICs under the REMIC Provisions, and the applicable federal income tax returns to be filed on behalf of the Grantor Trust, together with any and all other information, reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

"Termination Price": An amount equal to (a) 100% of the unpaid principal balance of each Mortgage Loan (other than one as to which a REO Property was acquired) on the day of repurchase together with accrued interest on such unpaid principal balance at the Net Mortgage Rate to the first day of the month in which the proceeds of such repurchase are to be distributed, plus (b) the appraised value of any REO Property (but not more than the unpaid principal balance of the related Mortgage Loan, together with accrued interest on that balance at the Net Mortgage Rate to the first day of the month such repurchase price is distributed) less the good faith estimate of the Servicer of liquidation expenses to be incurred in connection with its disposal thereof, such appraisal to be conducted by an appraiser mutually agreed upon by the Servicer and the Master Servicer on behalf of the Trustee at the expense of the terminating party.

"Terminating Purchase": The purchase of all Mortgage Loans and each REO Property owned by a Trust pursuant to Section 9.01 hereof.

"Transfer": Any direct or indirect transfer, sale, pledge, hypothecation or other form of assignment of any Ownership Interest in a Certificate.

"Transferor": Any Person who is disposing by Transfer of any Ownership Interest in a Certificate.

"Trigger Event": A Trigger Event is in effect with respect to any Distribution Date on or after the Stepdown Date if either a Delinquency Trigger Test is in effect with respect to that Distribution Date or a Cumulative Loss Trigger Event is in effect with respect to that Distribution Date.

"Trust Fund": REMIC 1, REMIC 2, REMIC 3, REMIC 4, the Closing Date Deposit Amount and the Cap Contract Reserve Fund.

"Trust REMIC": Any of REMIC 1, REMIC 2, REMIC 3 or REMIC 4.

"Trustee": Citibank, N.A., or its successor in interest, or any successor trustee appointed as herein provided.

"Uncertificated Accrued Interest": With respect to each REMIC Regular Interest on each Distribution Date, an amount equal to one month's interest at the related Uncertificated Pass-Through Rate on the Uncertificated Principal Balance, as applicable, of such REMIC Regular Interest. In each case, Uncertificated Accrued Interest will be reduced by any Net Prepayment Interest Shortfalls and Relief Act Interest Shortfalls (allocated to such REMIC Regular Interests as set forth in Section 1.04).

"Uncertificated Principal Balance": With respect to each REMIC Regular Interest, the principal amount of such REMIC Regular Interest outstanding as of any date of determination. As of the Closing Date, the Uncertificated Principal Balance of each such REMIC Regular Interest shall equal the amount set forth in the Preliminary Statement hereto as its initial Uncertificated Principal Balance. On each Distribution Date, the Uncertificated Principal Balance of each such REMIC Regular Interest shall be reduced by all distributions of principal made on such REMIC Regular Interest on such Distribution Date pursuant to Section 4.06 and, if and to the extent necessary and appropriate, shall be further reduced on such Distribution Date by Realized Losses as

provided in Section 4.07, and the Uncertificated Principal Balance of REMIC 1 Regular Interest LT-ZZ shall be increased by interest deferrals as provided in Section 4.07. With respect to the Class C Interest as of any date of determination, an amount equal to the excess, if any, of (A) the then aggregate Uncertificated Principal Balance of the REMIC 2 Regular Interests over (B) the then aggregate Certificate Principal Balance of the Class A Certificates, the Class M Certificates and the Class P Certificates then outstanding. The Uncertificated Principal Balance of each REMIC Regular Interest shall never be less than zero.

"Uncertificated Pass-Through Rate": The Uncertificated REMIC 1 Pass-Through Rate.

"Uncertificated REMIC 1 Pass-Through Rate": With respect to REMIC 1 Regular Interest LT-AA, REMIC 1 Regular Interest LT-I-A-1, REMIC 1 Regular Interest LT-I-A-2-1, REMIC 1 Regular Interest LT-I-A-2-2, REMIC 1 Regular Interest LT-I-A-3, REMIC 1 Regular Interest LT-II-A-1-1, REMIC 1 Regular Interest LT-II-A-1-2, REMIC 1 Regular Interest LT-II-A-2, REMIC 1 Regular Interest LT-II-A-3-1, REMIC 1 Regular Interest LT-II-A-3-2, REMIC 1 Regular Interest LT-III-A-1-1, REMIC 1 Regular Interest LT-III-A-1-2, REMIC 1 Regular Interest LT-III-A-2, REMIC 1 Regular Interest LT-III-A-3-1, REMIC 1 Regular Interest LT-III-A-3-2, REMIC 1 Regular Interest LT-M1, REMIC 1 Regular Interest LT-M2, REMIC 1 Regular Interest LT-M3, REMIC 1 Regular Interest LT-M4, REMIC 1 Regular Interest LT-M5, REMIC 1 Regular Interest LT-M6, REMIC 1 Regular Interest LT-M7 and REMIC 1 Regular Interest LT-M8, REMIC 1 Regular Interest LT-ZZ, REMIC 1 Regular Interest LT-P, REMIC 1 Regular Interest LT-1SUB, REMIC 1 Regular Interest LT-2SUB, REMIC 1 Regular Interest LT-3SUB and REMIC 1 Regular Interest LT-XX, a per annum rate (but not less than zero) equal to the Weighted Average Adjusted Net Mortgage Rate on the Group I Loans, Group II Loans and Group III Loans as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date. With respect to REMIC 1 Regular Interest TL-1GRP, the Weighted Average Adjusted Net Mortgage Rate on the Group I Loans, as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date. With respect to REMIC 1 Regular Interest TL-2GRP, the Weighted Average Adjusted Net Mortgage Rate on the Group II Loans, as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date. With respect to REMIC 1 Regular Interest TL-3GRP, the Weighted Average Adjusted Net Mortgage Rate on the Group III Loans, as of the Due Date in the prior calendar month (after giving effect to principal prepayments received in the Prepayment Period related to that prior Due Date.

"Underlying Interest": The Class III-A-1-1 Underlying Interest.

"Underwriter": Deutsche Bank Securities, Inc.

"Uninsured Cause": Any cause of damage to property subject to a Mortgage such that the complete restoration of such property is not fully reimbursable by the hazard insurance policies or flood insurance policies required to be maintained pursuant to Section 3.13.

"United States Person": A citizen or resident of the United States, a corporation or a partnership (including an entity treated as a corporation or partnership for United States federal income tax purposes) created or organized in, or under the laws of, the United States or any State thereof or the District of Columbia (except, in the case of a partnership, to the extent provided in regulations) provided that, for purposes solely of the restrictions on the transfer of Class R Certificates, no partnership or other entity treated as a partnership for United States federal income tax purposes shall be treated as a United States Person unless all persons that own an interest in such partnership either directly or through any entity that is not a corporation for United States federal income tax purposes are required by the applicable operative agreement to be United States Persons or an estate whose income is subject to United States federal income tax regardless of its source, or a trust if a court within the United States is able to exercise primary supervision over the administration of the trust and one or more such United States Persons have the authority to control all substantial decisions of the trust. To the extent prescribed in regulations by the Secretary of the Treasury, a trust which was in existence on August 20, 1996 (other than a trust treated as owned by the grantor under subpart E of part I of subchapter J of chapter 1 of the Code), and which was treated as a United States person on August 20, 1996 may elect to continue to be treated as a United States person notwithstanding the previous sentence.

"Voting Rights": The portion of the voting rights of all of the Certificates which is allocated to any Certificate. At all times during the term of this Agreement, (i) 96% of all Voting Rights will be allocated among the Holders of the Class A Certificates and Class M Certificates in proportion to the then outstanding Certificate Principal Balances of their respective Certificates, and (ii) 1% of all Voting Rights will be allocated to the Holders of each Class of the Class R, Class RX, Class C and Class P Certificates. The Voting Rights allocated to any Class of Certificates shall be allocated among all Holders of the Certificates of such Class in proportion to the outstanding Percentage Interests in such Class represented thereby.

"Weighted Average Adjusted Net Mortgage Rate": With respect to any Distribution Date, the average of the Net Mortgage Rates of each Mortgage Loan, weighted on the basis of its Stated Principal Balance as of the Due Date occurring in the month preceding the month of that Distribution Date (after giving effect to principal prepayments in the Prepayment Period related to that prior Due Date).

Section 1.02    Determination of LIBOR.

On each LIBOR Interest Determination Date, the Trustee will determine One-Month LIBOR and the related Pass-Through Rate for each Class of LIBOR Certificates for the next Accrual Period.

In the event that on any LIBOR Interest Determination Date, Telerate Screen 3750 fails to indicate the London interbank offered rate for one-month United States dollar deposits, then One-Month LIBOR for the LIBOR Certificates for the related Accrual Period will be established by the Trustee as follows:

(a)      If on such LIBOR Interest Determination Date two or more Reference Banks provide such offered quotations, One-Month LIBOR for the related Accrual Period shall be the arithmetic mean of such offered quotations (rounded upwards if necessary to the nearest whole multiple of 0.0625%).

(b)      If on such LIBOR Interest Determination Date fewer than two Reference Banks provide such offered quotations, One-Month LIBOR for the related Accrual Period shall be the higher of (x) One-Month LIBOR as determined on the previous LIBOR Interest Determination Date and (y) the Reserve Interest Rate.

(c)      If no such quotations can be obtained and no Reference Bank rate is available, One-Month LIBOR will be the One-Month LIBOR rate applicable to the preceding Accrual Period.

The establishment of One-Month LIBOR by the Trustee on any LIBOR Interest Determination Date and the Trustee's calculation of the Pass-Through Rate applicable to the LIBOR Certificates for the relevant Accrual Period, in the absence of manifest error, will be final and binding. The Trustee will supply to any Certificateholder so requesting by telephone the Pass-Through Rate on the LIBOR Certificates for the current and the immediately preceding Accrual Period.

Section 1.03    Determination of MTA.

(a)      On each related MTA Interest Determination Date, so long as the MTA Certificates are outstanding, the Trustee shall determine MTA for the related Accrual Period as published by the Federal Reserve Board in the Federal Reserve Statistical Release 'Selected Interest Rates (H.15)', determined by averaging the monthly yields for the most recently available twelve months. The MTA figure used to determine the Pass-Through Rates on the MTA Certificates will be based on the MTA as of fifteen days before the beginning of the related Accrual Period.

(b)      If on any MTA Interest Determination Date MTA is no longer available, the index used to determine the Pass-Through Rates on the MTA Certificates will be the same index selected to determine the interest rates on the related Mortgage Loans.

(c)     The Pass-Through Rate for each Class of MTA Certificates for each Accrual Period shall be determined by the Trustee on each MTA Interest Determination Date so long as the MTA Certificates are outstanding on the basis of MTA and the respective formulae appearing in the definition of the Pass-Through Rate corresponding to the MTA Certificates.

The determination of MTA and the Pass-Through Rates for the MTA Certificates by the Trustee shall (in the absence of manifest error) be final, conclusive and binding upon each Holder of a MTA Certificate and the Trustee.

Section 1.04     Allocation of Certain Interest Shortfalls.

The Marker Allocation Percentage of the aggregate amount of any Net Prepayment Interest Shortfalls and any Relief Act Interest Shortfalls incurred in respect of the Mortgage Loans for any Distribution Date shall be allocated among REMIC 1 Regular Interest LT-AA, REMIC 1 Regular Interest LT-I-A-1, REMIC 1 Regular Interest LT-I-A-2-1, REMIC 1 Regular Interest LT-I-A-2-2, REMIC 1 Regular Interest LT-I-A-3, REMIC 1 Regular Interest LT-II-A-1-1, REMIC 1 Regular Interest LT-II-A-1-2, REMIC 1 Regular Interest LT-II-A-2, REMIC 1 Regular Interest LT-II-A-3-1, REMIC 1 Regular Interest LT-II-A-3-2, REMIC 1 Regular Interest LT-III-A-1-1, REMIC 1 Regular Interest LT-III-A-1-2, REMIC 1 Regular Interest LT-III-A-2, REMIC 1 Regular Interest LT-III-A-3-1, REMIC 1 Regular Interest LT-III-A-3-2, REMIC 1 Regular Interest LT-M1, REMIC 1 Regular Interest LT-M2, REMIC 1 Regular Interest LT-M3, REMIC 1 Regular Interest LT-M4, REMIC 1 Regular Interest LT-M5, REMIC 1 Regular Interest LT-M6, REMIC 1 Regular Interest LT-M7 and REMIC 1 Regular Interest LT-M8 and REMIC 1 Regular Interest LT-ZZ, pro rata based on, and to the extent of, one month's interest at the then applicable respective Uncertificated REMIC 1 Pass-Through Rate on the respective Uncertificated Principal Balance of each such REMIC 1 Regular Interest.

The Sub WAC Allocation Percentage of the aggregate amount of any Net Prepayment Interest Shortfalls and any Relief Act Interest Shortfalls incurred in respect of the Mortgage Loans for any Distribution Date shall be allocated among REMIC 1 Regular Interest LT-1SUB, REMIC 1 Regular Interest LT-1GRP, REMIC 1 Regular Interest LT-2SUB, REMIC 1 Regular Interest LT-2GRP, REMIC 1 Regular Interest LT-3SUB, REMIC 1 Regular Interest LT-3GRP and REMIC 1 Regular Interest LT-XX, pro rata based on, and to the extent of, one month's interest at the then applicable respective Uncertificated REMIC 1 Pass-Through Rate on the respective Uncertificated Principal Balance of each such REMIC 1 Regular Interest.

---

## ARTICLE II

### CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01     Conveyance of Mortgage Loans.

The Company, as of the Closing Date, and concurrently with the execution and delivery hereof, does hereby assign, transfer, sell, set over and otherwise convey to the Trustee without recourse all the right, title and interest of the Company in and to the Mortgage Loans identified on the Mortgage Loan Schedule (exclusive of any prepayment fees and late payment charges received thereon) and all other assets included or to be included in the Trust Fund for the benefit of the Certificateholders. Such assignment includes all principal and interest received by the Servicer on or with respect to the Mortgage Loans (other than payment of principal and interest due on or before the Cut-off Date).

In connection with such transfer and assignment, the Company has caused the Sponsor with respect to each Mortgage Loan, to deliver to, and deposit to or at the direction of the Trustee, as described in the Mortgage Loan Purchase Agreement, with respect to each Mortgage Loan, the following documents or instruments:

(a)     With respect to each Mortgage Loan, other than a Cooperative Loan:

(i)     the original Mortgage Note endorsed without recourse to the order of the Trustee or in blank, and showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee or in blank or, with respect to any Mortgage Loan as to which the original Mortgage Note has been lost or destroyed and has not been replaced, a Lost Note Affidavit;

(ii)     the original Mortgage with evidence of recording thereon, or, if the original Mortgage has not yet been returned from the public recording office, a copy of the original Mortgage certified by the Sponsor or the public recording office in which such original Mortgage has been recorded;

(iii)     an assignment (which may be included in one or more blanket assignments if permitted by applicable law) of the Mortgage in blank or to the Trustee (or to MERS, if the Mortgage Loan is registered on the MERS® System and noting the presence of a MIN) and otherwise in recordable form;

(iv)     originals of any intervening assignments of the Mortgage, with evidence of recording thereon, or, if the original of any such intervening assignment has not yet been returned from the public recording office, a copy of such original intervening assignment certified by the Sponsor or the public recording office in which such original intervening assignment has been recorded;

(v)     the original policy of title insurance (or a preliminary title report commitment for title insurance, if the policy is being held by the title insurance company pending recordation of the Mortgage); and

(vi)     the original or a true and correct copy of any assumption, modification, consolidation or substitution agreement, if any, relating to the Mortgage Loan.

(b)     With respect to each Mortgage Loan that is a Cooperative Loan (as indicated on the Mortgage Loan Schedule):

(i)     the original Mortgage Note endorsed without recourse to the order of the Trustee or in blank, and showing an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee or in blank or, with respect to any Mortgage Loan as to which the original Mortgage Note has been lost or destroyed and has not been replaced, a Lost Note Affidavit;

(ii)     the original duly executed assignment of Security Agreement to the Trustee;

(iii)     the acknowledgment copy of the original executed Form UCC-1 (or certified copy thereof) with respect to the Security Agreement, and any required continuation statements;

(iv)       the acknowledgment copy of the original executed Form UCC-3 with respect to the security agreement, indicating the Trustee as the assignee of the secured party;

(v)       the stock certificate representing the Cooperative Assets allocated to the cooperative unit, with a stock power in blank attached;

(vi)       the original collateral assignment of the proprietary lease by Mortgagor to the originator;

(vii)       a copy of the recognition agreement;

(viii)       if applicable and to the extent available, the original intervening assignments, including warehousing assignments, if any, showing, to the extent available, an unbroken chain of the related Mortgage Loan to the Trustee, together with a copy of the related Form UCC-3 with evidence of filing thereon; and

(ix)       the original or a true and correct copy of any assumption, modification, consolidation or substitution agreement, if any, relating to the Mortgage Loan.

Within 30 days after the Closing Date, the Company shall complete or cause to be completed the Assignments of Mortgage in the name of "Citibank, N.A., as trustee under the Agreement relating to American Home Mortgage Assets LLC, Mortgaged-Backed Pass-Through Certificates, Series 2006-3" (or shall prepare or cause to be prepared new forms of Assignment of Mortgage so completed in the name of the Trustee) for each Mortgage Property in a state, if any, which is specifically excluded from the Opinion of Counsel delivered by the Company to the Trustee and the Custodian, each such assignment shall be recorded in the appropriate public office for real property records, and returned to the Custodian, at no expense to the Trustee or the Custodian.

The Sponsor is obligated as described in the Mortgage Loan Purchase Agreement, with respect to the Mortgage Loans, to deliver to or at the direction of the Trustee: (a) either the original recorded Mortgage, or in the event such original cannot be delivered by the Sponsor, a copy of such Mortgage certified as true and complete by the appropriate recording office, in those instances where a copy thereof certified by the Sponsor was delivered to the Custodian as agent for the Trustee pursuant to clause (ii) above; and (b) either the original Assignment or Assignments of the Mortgage, with evidence of recording thereon, showing an unbroken chain of assignment from the originator to the Sponsor, or in the event such original cannot be delivered by the Sponsor, a copy of such Assignment or Assignments certified as true and complete by the appropriate recording office, in those instances where copies thereof certified by the Sponsor were delivered to the Custodian as agent for the Trustee pursuant to clause (iv) above. However, pursuant to the Mortgage Loan Purchase Agreement, the Sponsor need not cause to be recorded any assignment in any jurisdiction under the laws of which, as evidenced by an Opinion of Counsel delivered by the Sponsor to the Trustee, the Custodian and the Rating Agencies, the recordation of such assignment is not necessary to protect the Trustee's interest in the related Mortgage Loan; provided, however, notwithstanding the delivery of any Opinion of Counsel, each assignment shall be submitted for recording by the Sponsor in the manner described above, at no expense to the Trust, the Custodian or the Trustee, upon the earliest to occur of: (i) reasonable direction by the Holders of Certificates evidencing at least 25% of the Voting Rights, (ii) the occurrence of an Event of Default, (iii) the occurrence of a bankruptcy, insolvency or foreclosure relating to the Sponsor, (iv) the occurrence of a servicing transfer as described in Section 7.02 hereof and (v) if the Sponsor is not the Master Servicer and with respect to any one assignment, the occurrence of a bankruptcy, insolvency or foreclosure relating to the Mortgagor under the related Mortgage.

Notwithstanding anything to the contrary contained in this Section 2.01, in those instances where the public recording office retains the original Mortgage after it has been recorded, the Sponsor shall be deemed to have satisfied its obligations hereunder upon delivery to the Custodian as agent for the Trustee of a copy of such Mortgage certified by the public recording office to be a true and complete copy of the recorded original thereof.

If any Assignment is lost or returned unrecorded to the Custodian as agent for the Trustee because of any defect therein, the Sponsor or AHMC, as the case may be, is required, as described in the Mortgage Loan Purchase Agreement, to prepare a substitute Assignment or cure such defect, as the case may be, and the Sponsor or AHMC, as applicable, shall cause such Assignment to be recorded in accordance with this section.

In connection with the assignment of any Mortgage Loan registered on the MERS® System, the Sponsor further agrees that it will cause, at the Sponsor's own expense, as of the Closing Date, the MERS® System to indicate that such Mortgage Loans have been assigned by the Sponsor to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files (a) the code in the field which identifies the specific Trustee and (b) the code in the field "Pool Field" which identifies the series of the Certificates issued in connection with such Mortgage Loans. The Company further agrees that it will not, and will not permit the Servicer to alter the codes referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

With respect to the Cooperative Loans, the Depositor will, promptly after the Closing Date, cause the related financing statements (if not yet filed) and an assignment thereof from the Depositor to the Trustee to be filed in the appropriate offices.

Except as may otherwise expressly be provided herein, none of the Company, the Custodian, the Master Servicer, or the Trustee shall (and the Master Servicer shall ensure that no Servicer shall) assign, sell, dispose of or transfer any interest in the Trust Fund or any portion thereof, or cause the Trust Fund or any portion thereof to be subject to any lien, claim, mortgage, security interest, pledge or other encumbrance.

It is intended that the conveyance of the Mortgage Loans by the Company to the Trustee as provided in this Section be, and be construed as, a sale of the Mortgage Loans as provided for in this Section 2.01 by the Company to the Trustee for the benefit of the Certificateholders. It is, further, not intended that such conveyance be deemed a pledge of the Mortgage Loans by the Company to the Trustee to secure a debt or other obligation of the Company. However, in the event that the Mortgage Loans are held to be property of the Company, or if for any reason this Agreement is held or deemed to create a security interest in the Mortgage Loans, then it is intended that, (a) this Agreement shall also be deemed to be a security agreement within the meaning of Articles 8 and 9 of the New York Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction; (b) the conveyance provided for in this Section shall be deemed to be (1) a grant by the Company to the Trustee of a security interest in all of the Company's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to (A) the Mortgage Loans, including the Mortgage Notes, the Mortgages, any related Insurance Policies and all other documents in the related Mortgage Files, (B) all amounts payable to the holders of the Mortgage Loans in accordance with the terms thereof and (C) all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, including without limitation all amounts from time to time held or invested in the Certificate Account or Distribution Account, whether in the form of cash, instruments, securities or other property and (2) an assignment by the Company to the Trustee of any security interest in any and all of the Sponsor's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to the property described in the foregoing clauses (1)(A) through (C); (c) the possession by the Custodian as agent for the Trustee or any other agent of the Trustee of Mortgage Notes and such other items of property as constitute instruments, money, negotiable documents or chattel paper shall be deemed to be "possession by the secured party" or possession by a purchaser or a person designated by such secured party, for purposes of perfecting the security interest pursuant to the New York Uniform Commercial Code and the Uniform Commercial Code of any other applicable jurisdiction (including, without limitation, Sections 9-115, 9-305, 8-102, 8-301, 8-501 and 8-503 thereof); and (d) notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from, financial intermediaries, bailees or agents (as applicable) of the Trustee for the purpose of perfecting such security interest under applicable law. The Company shall, to the extent consistent with this Agreement, take such actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Mortgage Loans and the REMIC 1 Regular Interests, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of the Agreement.

Section 2.02        Acceptance of the Trust Fund by the Trustee.

The Trustee acknowledges receipt (subject to any exceptions noted in the Initial Certification described below), of the documents referred to in Section 2.01 above and all other assets included in the definition of "Trust Fund" and declares that it (or the Custodian on its behalf) holds and will hold such documents and the other documents delivered to Custodian as agent for the Trustee constituting the Mortgage Files, and that it holds or will hold such other assets included in the definition of "Trust Fund" (to the extent delivered or assigned to the Custodian as agent for the Trustee), in trust for the exclusive use and benefit of all present and future Certificateholders.

The Trustee agrees to cause, for the benefit of the Certificateholders, the Custodian as agent for the Trustee to review each Mortgage File on or before the Closing Date to ascertain that all documents required to be delivered to it are in its possession, and the Custodian as agent for the Trustee agrees to execute and deliver, or cause to be executed and delivered, to the Company on the Closing Date, with respect to each Mortgage Loan, an Initial Certification in the form annexed hereto as Exhibit C to the effect that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan specifically identified in such certification as not covered by such certification), (i) all documents required to be delivered to it pursuant to this Agreement with respect to such Mortgage Loan are in its possession, and (ii) such documents have been reviewed by it and appear regular on their face and relate to such Mortgage Loan. Neither the Custodian, the Trustee or the Master Servicer shall be under any duty to determine whether any Mortgage Loan should include any of the documents specified in clauses (v) or (vi) of Section 2.01. Neither the Custodian, the Trustee or the Master Servicer shall be under any duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, valid, enforceable, appropriate for the represented purpose or that they have actually been recorded, or that they are in recordable form or that they are other than what they purport to be on their face.

Within 180 days of the Closing Date, with respect to the Mortgage Loans, the Custodian as agent for the Trustee shall deliver to the Company a Final Certification in the form annexed hereto as Exhibit D evidencing the completeness of the Mortgage Files, with any applicable exceptions noted thereon.

If in the process of reviewing the Mortgage Files and preparing the certifications referred to above the Custodian as agent for the Trustee or the Master Servicer finds any document or documents constituting a part of a Mortgage File to be missing or not in compliance with the criteria as set forth herein, the Custodian as agent for the Trustee shall promptly notify the Trustee, the Sponsor, the Company and AHMC (which may be by an exception report). AHMC shall cure any such defect within 60 days from the date on which AHMC was notified of such defect, and if AHMC does not cure such defect in all material respects during such period, the Trustee shall request on behalf of the Certificateholders that AHMC purchase such Mortgage Loan from the Trust Fund at the Purchase Price within 90 days after the date on which AHMC was notified of such defect; provided that if such defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. It is understood and agreed that the obligation of AHMC to cure a material defect in, or purchase any Mortgage Loan as to which a material defect in a constituent document exists shall constitute the sole remedy respecting such defect available to Certificateholders or the Trustee on behalf of Certificateholders. The Purchase Price for the purchased Mortgage Loan shall be deposited or caused to be deposited upon receipt by the Master Servicer in the Certificate Account and, upon receipt by the Custodian as agent for the Trustee of written notification of such deposit signed by a Servicing Officer, the Custodian as agent for the Trustee shall release or cause to be released to AHMC the related Mortgage File and the Trustee shall execute and deliver such instruments of transfer or assignment, in each case without recourse, as AHMC shall require as necessary to vest in AHMC ownership of any Mortgage Loan released pursuant hereto and at such time neither the Custodian nor the Trustee shall have any further responsibility with respect to the related Mortgage File. In furtherance of the foregoing, if AHMC is not a member of MERS and the Mortgage is registered on the MERS® System, the Servicer, at the AHMC's expense, shall cause MERS to execute and deliver an assignment of the Mortgage in recordable form to transfer the Mortgage from MERS to the AHMC and shall cause such Mortgage to be removed from registration on the MERS® System in accordance with MERS' rules and regulations.

Section 2.03        Representations, Warranties and Covenants of the Master Servicer and the Company.

(a)        The Master Servicer hereby represents and warrants to and covenants with the Company for the benefit of Certificateholders and the Trustee that:

(i)        The Master Servicer is, and throughout the term hereof shall remain, a national banking association duly organized, validly existing and in good standing under the laws of the state of its incorporation, the Master Servicer is, and shall remain, in compliance with the laws of each state in which any Mortgaged Property is located to the extent necessary to perform its obligations under this Agreement, and the Master Servicer or an affiliate is, and shall remain, approved to service Mortgage Loans for Fannie Mae and Freddie Mac;

(ii)        The execution and delivery of this Agreement by the Master Servicer, and the performance and compliance with the terms of this Agreement by the Master Servicer, will not violate the Master Servicer's articles of incorporation or bylaws or constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material agreement or other instrument to which it is a party or which is applicable to it or any of its assets;

(iii)        The Master Servicer has the full power and authority to enter into and consummate all transactions contemplated by this Agreement, has duly authorized the execution, delivery and performance of this Agreement, and has duly executed and delivered this Agreement;

(iv)        This Agreement, assuming due authorization, execution and delivery by the Company and the Trustee, constitutes a valid, legal and binding obligation of the Master Servicer, enforceable against the Master Servicer in accordance with the terms hereof, subject to (A) applicable bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally, and (B) general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law;

(v)        The Master Servicer is not in violation of, and its execution and delivery of this Agreement and its performance and compliance with the terms of this Agreement will not constitute a violation of, any law, any order or decree of any court or arbiter, or any order, regulation or demand of any federal, state or local governmental or regulatory authority, which violation is likely to affect materially and adversely either the ability of the Master Servicer to perform its obligations under this Agreement or the financial condition of the Master Servicer;

(vi)        No litigation is pending (other than litigation with respect to which pleadings or documents have been filed with a court, but not served on the Master Servicer) or, to the best of the Master Servicer's knowledge, threatened against the Master Servicer which would prohibit its entering into this Agreement or performing its obligations under this Agreement or is likely to affect materially and adversely either the ability of the Master Servicer to perform its obligations under this Agreement or the financial condition of the Master Servicer;

(vii)        The Master Servicer will comply in all material respects in the performance of this Agreement with all reasonable rules and requirements of each insurer under each Insurance Policy;

(viii)        The execution of this Agreement and the performance of the Master Servicer's obligations hereunder do not require any license, consent or approval of any

state or federal court, agency, regulatory authority or other governmental body having jurisdiction over the Master Servicer, other than such as have been obtained; and

          (ix)      No information, certificate of an officer, statement furnished in writing or report delivered to the Company, any affiliate of the Company or the Trustee by the Master Servicer in its capacity as Master Servicer, will, to the knowledge of the Master Servicer, contain any untrue statement of a material fact.

        It is understood and agreed that the representations, warranties and covenants set forth in this Section 2.03(a) shall survive the execution and delivery of this Agreement, and shall inure to the benefit of the Company, the Trustee and the Certificateholders. Upon discovery by any of the Company, the Trustee or the Master Servicer of a breach of any of the foregoing representations, warranties and covenants that materially and adversely affects the interests of the Company or the Trustee or the value of any Mortgage Loan or Prepayment Charge, the party discovering such breach shall give prompt written notice to the other parties.

        (b)      The Company hereby represents and warrants to the Master Servicer and the Trustee for the benefit of Certificateholders that as of the Closing Date

          (i)      the Company (a) is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and (b) is qualified and in good standing as a foreign corporation to do business in each jurisdiction where such qualification is necessary, except where the failure so to qualify would not reasonably be expected to have a material adverse effect on the Company's business as presently conducted or on the Company's ability to enter into this Agreement and to consummate the transactions contemplated hereby;

          (ii)      the Company has full corporate power to own its property, to carry on its business as presently conducted and to enter into and perform its obligations under this Agreement;

          (iii)      the execution and delivery by the Company of this Agreement have been duly authorized by all necessary corporate action on the part of the Company; and neither the execution and delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor compliance with the provisions hereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Company or its properties or the articles of incorporation or by-laws of the Company, except those conflicts, breaches or defaults which would not reasonably be expected to have a material adverse effect on the Company's ability to enter into this Agreement and to consummate the transactions contemplated hereby;

          (iv)      the execution, delivery and performance by the Company of this Agreement and the consummation of the transactions contemplated hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except those consents, approvals, notices, registrations or other actions as have already been obtained, given or made;

          (v)      this Agreement has been duly executed and delivered by the Company and, assuming due authorization, execution and delivery by the other parties hereto, constitutes a valid and binding obligation of the Company enforceable against it in accordance with its terms (subject to applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally);

        (vi)      there are no actions, suits or proceedings pending or, to the knowledge of the Company, threatened against the Company, before or by any court, administrative agency, arbitrator or governmental body (i) with respect to any of the transactions contemplated by this Agreement or (ii) with respect to any other matter which in the judgment of the Company will be determined adversely to the Company and will if determined adversely to the Company materially and adversely affect the Company's ability to enter into this Agreement and perform its obligations under this Agreement; and the Company is not in default with respect to any order of any court, administrative agency, arbitrator or governmental body so as to materially and adversely affect the transactions contemplated by this Agreement;

        (vii)      The Company has filed all reports required to be filed by Section 13 or Section 15(d) of the Exchange Act during the preceding 12 months (or for such shorter period that the Company was required to file such reports) and it has been subject to such filing requirements for the past 90 days; and

        (viii)      immediately prior to the transfer and assignment to the Trustee, each Mortgage Note and each Mortgage were not subject to an assignment or pledge, and the Company had good and marketable title to and was the sole owner thereof and had full right to transfer and sell such Mortgage Loan to the Trustee free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest.

      Upon discovery by either the Company, the Master Servicer the Custodian or the Trustee of a breach of any representation or warranty set forth in this Section 2.03 which materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties.

      Section 2.04      <u>Assignment of Interest in the Mortgage Loan Purchase Agreement</u>.

      The Company hereby assigns to the Trustee for the benefit of Certificateholders all of its rights (but none of its obligations) in, to and under the Mortgage Loan Purchase Agreement. Insofar as the Mortgage Loan Purchase Agreement relates to such representations and warranties and any remedies provided thereunder for any breach of such representations and warranties, such right, title and interest may be enforced by the Trustee on behalf of the Certificateholders. Upon the discovery by the Company, the Master Servicer or the Trustee of a breach of any of the representations and warranties made in the Mortgage Loan Purchase Agreement in respect of any Mortgage Loan which materially and adversely affects the value of a Mortgage Loan or the interests of the Certificateholders in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other parties. The Trustee shall promptly notify the Sponsor or AHMC, as the case may be, of such breach and request that the Sponsor or AHMC, as the case may be, shall, within 90 days from the date that the Sponsor or AHMC, as the case may be, was notified or otherwise obtained knowledge of such breach, either (i) cure such breach in all material respects or (ii) purchase such Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provided that if such breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure or repurchase must occur within 90 days from the date such breach was discovered. However, in the case of a breach under the Mortgage Loan Purchase Agreement, subject to the approval of the Company, the Sponsor or AHMC, as the case may be, shall have the option to substitute a Eligible Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within two years following the Closing Date, except that if the breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such substitution must occur within 90 days from the date the breach was discovered if such 90 day period expires before two years following the Closing Date. In the event that Sponsor or AHMC elects to substitute a Eligible Substitute Mortgage Loan or Loans for a Deleted Mortgage Loan pursuant to this Section 2.04, the Trustee shall enforce the obligation of the Sponsor under the Mortgage Loan Purchase Agreement to deliver to the Custodian as agent for the Trustee and the Master Servicer, as appropriate, with respect to such Eligible Substitute Mortgage Loan or Loans, the original Mortgage Note, the Mortgage, an Assignment of the Mortgage in recordable form, and such other documents and agreements as are required by Section 2.01, with the Mortgage Note endorsed as required by Section 2.01. No substitution will be made in any

calendar month after the Determination Date for such month. Monthly Payments due with respect to Eligible Substitute Mortgage Loans in the month of substitution, to the extent received by the Master Servicer or any Subservicer, shall not be part of the Trust Fund and will be retained by the Master Servicer and remitted by the Master Servicer to AHMC on the next succeeding Distribution Date. For the month of substitution, distributions to Certificateholders will include the Monthly Payment due on a Deleted Mortgage Loan for such month and thereafter the Sponsor or AHMC, as the case may be, shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan. The Company shall amend or cause to be amended the Mortgage Loan Schedule for the benefit of the Certificateholders to reflect the removal of such Deleted Mortgage Loan and the substitution of the Eligible Substitute Mortgage Loan or Loans and the Company shall deliver the amended Mortgage Loan Schedule to the Custodian as agent for the Trustee. Upon such substitution, the Eligible Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement in all respects, the Sponsor or AHMC, as the case may be, shall be deemed to have made the representations and warranties with respect to the Eligible Substitute Mortgage Loan contained in the Mortgage Loan Purchase Agreement as of the date of substitution, and the Company shall be deemed to have made with respect to any Eligible Substitute Mortgage Loan or Loans, as of the date of substitution, the representations and warranties set forth in the Mortgage Loan Purchase Agreement (other than any statistical representations set forth therein).

In connection with the substitution of one or more Eligible Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Master Servicer will determine the amount (the "Substitution Adjustment"), if any, by which the aggregate principal balance of all such Eligible Substitute Mortgage Loans as of the date of substitution is less than the Aggregate Stated Principal Balance of all such Deleted Mortgage Loans (in each case after application of the principal portion of the Monthly Payments due in the month of substitution that are to be distributed to Certificateholders in the month of substitution). In accordance with the Mortgage Loan Purchase Agreement, the Sponsor shall give notice in writing to the Trustee and the Custodian of such event, which notice shall be accompanied by an Officers' Certificate as to the calculation of such shortfall (and that such shortfall, if any, has been Deposited into the Distribution Account) and by an Opinion of Counsel to the effect that such substitution will not cause (a) any federal tax to be imposed on any Trust REMIC, including without limitation, any federal tax imposed on "prohibited transactions" under Section 860F(a)(1) of the Code or on "contributions after the startup date" under Section 860G(d)(1) of the Code or (b) any portion of any Trust REMIC to fail to qualify as a REMIC at any time that any Certificate is outstanding. The costs of any substitution as described above, including any related assignments, opinions or other documentation in connection therewith shall be borne by the Sponsor or AHMC, as the case may be.

Except as expressly set forth herein, none of the Trustee, the Custodian or the Master Servicer is under any obligation to discover any breach of the above-mentioned representations and warranties. It is understood and agreed that the obligation of the Sponsor or AHMC, as the case may be, to cure such breach, purchase or to substitute for such Mortgage Loan as to which such a breach has occurred and is continuing shall constitute the sole remedy respecting such breach available to Certificateholders or the Trustee on behalf of Certificateholders.

Section 2.05    Issuance of Certificates; Conveyance of REMIC Regular Interests and Acceptance of REMIC 1, REMIC 2, REMIC 3 and REMIC 4 by the Trustee.

(a)    The Trustee acknowledges the assignment to it of the Mortgage Loans and the delivery to the Custodian as agent for the Trustee of the Mortgage Files, subject to the provisions of Sections 2.01 and 2.02, together with the assignment to it of all other assets included in the Trust Fund, receipt of which is hereby acknowledged. Concurrently with such assignment and delivery and in exchange therefor, the Trustee, pursuant to the written request of the Company executed by an officer of the Company, has executed, authenticated and delivered to or upon the order of the Company, the Certificates in authorized denominations. The interests evidenced by the Certificates, constitute the entire beneficial ownership interest in the Trust Fund.

(b)    The Company, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Company in and to REMIC 1 for the benefit of the Holders of the REMIC 1 Regular Interests and Holders of the Class R Certificates (in respect of the Class R-1 Interest). The Trustee acknowledges receipt of REMIC 1

and declares that it holds and will hold the same in trust for the exclusive use and benefit of the Holders of the REMIC 1 Regular Interests and Holders of the Class R Certificates (in respect of the Class R-1 Interest). The interests evidenced by the Class R-1 Interest, together with the REMIC 1 Regular Interests, constitute the entire beneficial ownership interest in REMIC 1.

(c)     The Company, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Company in and to the REMIC 1 Regular Interests (which are uncertificated) for the benefit of the Holders of the Regular Certificates (other than the Class III-A-1-1 Certificates, Class C Certificates and the Class P Certificates), the Class III-A-1-1 Underlying Interest, Class C Interest, the Class P Interest and the Class R Certificates (in respect of the Class R-2 Interest). The Trustee acknowledges receipt of the REMIC 1 Regular Interests and declares that it holds and will hold the same in trust for the exclusive use and benefit of the Holders of the Regular Certificates (other than the Class III-A-1-1 Certificates, Class C Certificates and the Class P Certificates), the Class III-A-1-1 Underlying Interest, the Class C Interest, the Class P Interest and the Class R Certificates (in respect of the Class R-2 Interest). The interests evidenced by the Class R-2 Interest, together with the Regular Certificates (other than the Class III-A-1-1 Underlying Interest, the Class C Certificates and the Class P Certificates), the Class III-A-1-1 Certificates, Class C Interest and the Class P Interest constitute the entire beneficial ownership interest in REMIC 2.

(d)     The Company, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Company in and to the Class C Interest (which is uncertificated) for the benefit of the Holders of the Class C Certificates and the Class R-X Certificates (in respect of the Class R-3 Interest). The Trustee acknowledges receipt of the Class C Interest and declares that it holds and will hold the same in trust for the exclusive use and benefit of the Holders of the Class C Certificates and the Class R-X Certificates (in respect of the Class R-3 Interest). The interests evidenced by the Class R-3 Interest, together with the Class C Certificates constitute the entire beneficial ownership interest in REMIC 3.

(e)     The Company, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey in trust to the Trustee without recourse all the right, title and interest of the Company in and to the Class P Interest (which is uncertificated) for the benefit of the Holders of the Class P Certificates and the Class R-X Certificates (in respect of the Class R-4 Interest). The Trustee acknowledges receipt of the Class P Interest and declares that it holds and will hold the same in trust for the exclusive use and benefit of the Holders of the Class P Certificates and the Class R-X Certificates (in respect of the Class R-4 Interest). The interests evidenced by the Class R-4 Interest, together with the Class P Certificates constitute the entire beneficial ownership interest in REMIC 4.

(f)     Concurrently with (i) the assignment and delivery to the Trustee of REMIC 1 and the acceptance by the Trustee thereof, pursuant to Section 2.01, Section 2.02 and subsection (b), (ii) the assignment and delivery to the Trustee of REMIC 2 and the acceptance by the Trustee thereof, pursuant to subsection (c), (iii) the assignment and delivery to the Trustee of REMIC 3 and the acceptance by the Trustee thereof, pursuant to subsection (d), and (iv) the assignment and delivery to the Trustee of REMIC 4 and the acceptance by the Trustee thereof, pursuant to subsection (e), the Trustee has executed, authenticated and delivered to or upon the order of the Company, the Class R Certificates in authorized denominations and the Class R-X Certificates in authorized denominations.

Section 2.06     Negative Covenants of the Trustee and Master Servicer.

Except as otherwise expressly permitted by this Agreement the Trustee and Master Servicer shall not cause the Trust Fund to:

(i)     sell, transfer, exchange or otherwise dispose of any of the assets of the Trust Fund;

     (ii)  dissolve or liquidate the Trust Fund in whole or in part;

     (iii)  engage, directly or indirectly, in any business other than that arising out of the issue of the Certificates, and the actions contemplated or required to be performed under this Agreement;

     (iv)  incur, create or assume any indebtedness for borrowed money;

     (v)  voluntarily file a petition for bankruptcy, reorganization, assignment for the benefit of creditors or similar proceeding; or

     (vi)  merge, convert or consolidate with any other Person.

Section 2.07  <u>Purposes and Powers of the Trust</u>.

The purpose of the common law trust, as created hereunder, is to engage in the following activities:

    (a)  acquire and hold the Mortgage Loans and the other assets of the Trust Fund and the proceeds therefrom;

    (b)  to issue the Certificates sold to the Depositor in exchange for the Mortgage Loans;

    (c)  to make payments on the Certificates;

    (d)  to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

    (e)  subject to compliance with this Agreement, to engage in such other activities as may be required in connection with conservation of the Trust Fund and the making of distributions to the Certificateholders.

    The trust is hereby authorized to engage in the foregoing activities. The Trustee shall not knowingly cause the trust to engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement while any Certificate is outstanding, and this Section 2.07 may not be amended, without the consent of the Certificateholders evidencing 51% or more of the aggregate voting rights of the Certificates.

Section 2.08  <u>Grantor Trust Designations</u>.

The Class III-A-1-1 Certificates are hereby designated as undivided beneficial interests in the portion of the Trust Fund consisting of the Class III-A-1-1 Underlying Interest, and the Interest Rate Swap Agreement, which portion shall be treated as a grantor trust within the meaning of subpart E, Part I of subchapter J of the Code.

---

ARTICLE III

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

Section 7.08      Termination.

The respective obligations and responsibilities of the Servicer and the Master Servicer created hereby shall terminate upon the satisfaction and discharge of the Agreement pursuant to Sections 9.01, 9.02 and 9.03 thereof.

Section 7.09      No Petition.

The Servicer, by entering into this Servicing Agreement, hereby covenants and agrees that it will not at any time institute against the Depositor, or join in any institution against the Depositor, any bankruptcy proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations of the Depositor. This section shall survive the satisfaction and discharge of the Agreement by one year.

Section 7.10      No Recourse.

The Servicer acknowledges that no recourse may be had against the Depositor, except as may be expressly set forth in this Servicing Agreement.

Section 7.11      Consent to Jurisdiction.

The parties to this Servicing Agreement each hereby irrevocably submits to the nonexclusive jurisdiction of any New York State or federal court sitting in the Borough of Manhattan in The City of New York in any action or proceeding arising out of or relating to this Servicing Agreement or the transactions contemplated hereby, and all such parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in such New York State or federal court and hereby irrevocably waive, to the fullest extent that they may legally do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS SERVICING AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 7.12      Nonsolicitation.

The Servicer shall not knowingly conduct any solicitation exclusively targeted to the Mortgagors for the purpose of inducing or encouraging the early prepayment or refinancing of the related Mortgage Loans. It is understood and agreed that promotions undertaken by the Servicer or any agent or affiliate of the Servicer which are directed to the general public at large, including, without limitation, mass mailings based on commercially acquired mailing lists, newspaper, radio and television advertisements shall not constitute solicitation under this section. Nothing contained herein shall prohibit the Servicer from (i) distributing to Mortgagors any general advertising including information brochures, coupon books, or other similar documentation which indicates services the Sponsor offers, including refinances or (ii) providing financing of home equity loans to Mortgagors at the Mortgagor's request.

[Signature Page Follows]

IN WITNESS WHEREOF, the Master Servicer, the Depositor, the Sponsor, the Trustee and the Servicer have caused this Servicing Agreement to be duly executed by their respective officers or representatives all as of the day and year first above written.

WELLS FARGO BANK, N.A.,
as Master Servicer

By: /s/ Peter A. Gobell
Name: Peter A. Gobell
Title: Vice President

AMERICAN HOME MORTGAGE
SERVICING, INC.,
as Servicer

By: /s/ Alan B. Horn
Name: Alan B. Horn
Title: Executive Vice President, General Counsel, & Secretary

CITIBANK, N.A., not in its individual capacity but solely as Trustee

By: /s/ Karen Schluter
Name: Karen Schluter
Title: Vice President

AMERICAN HOME MORTGAGE CORP.,
as Sponsor

By: /s/ Alan B. Horn
Name: Alan B. Horn
Title: Executive Vice President, General Counsel, & Secretary

---

EXHIBIT A
MORTGAGE LOAN SCHEDULE

---

EXHIBIT B
FORM OF REQUEST FOR RELEASE

DATE:

TO:

RE: REQUEST FOR RELEASE OF DOCUMENTS