UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CITIBANK, N.A AS TRUSTEE FOR AMERICAN HOME
MORTGAGE ASSETS
TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH
CERTIFICATES SERIES 2006-3

   VS      C.A. NO:1:18-cv-427-JJM

KATHERINE L. CAITO
INTERNAL REVENUE SERVICE

### REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE AFFIDAVIT OF SONY PRUDENT AND EXHIBIT

  This case is before the Court in a Judicial Foreclosure case pursuant to R.I.G.L. §34-27-1. This action was filed alleging that the Plaintiff was Citibank, N.A. as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-through Certificates Series 2006-3.  The Defendant has filed a Motion to Strike the Affidavit of a purported employee of Ocwen Financial Services, Sony Prudent who signed this purported on May 15, 2019 and attached Exhibit A to this affidavit.  This mortgage loan was executed on June 3, 2006 to American Broker's Conduit. The original loan servicer was American Home Mortgage Servicing, Inc., which filed Bankruptcy in the United States Bankruptcy Court istrict Court for the District of Delaware on August 6, 2007, as indicated by Exhibit AA, which is the Bankruptcy Petition for this company.  At the time of its filing it was known

1

as American Home Mortgage Servicing, Inc. and was incorporated in the State of Maryland. The records of the Rhode Island Secretary of State, attached as Exhibit BB confirm this fact and also confirm the fact that it obtained a Certificate of Authority to do business in Rhode Island on September 28, 1989. The Rhode Island Secretary of State records also indicate in Exhibit CC that it notified the Rhode Island Secretary of State that it had filed Bankruptcy and in Exhibit DD, on May 8, 2008 notified the Rhode Island Secretary of State that it changed its name to AHM SV, Inc.

After the American Home Mortgage Servicing bankruptcy in case number 07-11050, a new corporation was formed, which had no relationship to the original American Home Mortgage Servicing, Inc. This entity was AH Mortgage Acquisition Co., Inc. a corporation incorporated in the State of Delaware on September 6, 2007. The records of the Rhode Island Secretary of State relating to this entity are attached as Exhibit EE. This entity changed its name to American Home Mortgage Servicing, Inc. oon which was followed by a new version of American Home Mortgage Servicing, Inc. after the original entity's bankruptcy, followed by Homeward Residential, then Ocwen Loan Servicing and now PHH Mortgage Servicing.

The Plaintiff has stated falsely that there has never been a servicing transfer, since all the transactions consisted of "mergers" or "name changes" It bases its information however on uncorroborated newspaper articles. It also seeks to file a supplemental affidavit of Sony Prudent, which does not provide any information regarding the reliability of any prior records.  PHH Mortgage, the current servicer utilizes the system known as Black Knight which was formerly known as MSP. However Ocwen Loan Servicing used an electronic system known as RealServicing, which was the subject of multiple Consent Orders which attested to its unreliability.  The new affidavit, which Plaintiff is seeking to use in support of its motion for summary judgment contrary to FRCP 6, has the same defects that wwere present in the original affidavit.  The Plaintiff totally ignores the recent decision of the First Circuit Court of Appeals in *US Bank National Association v. Jones*, 18-1719(May 30, 2019) which references FRE 803(6) and records of prior mortgage servicers.  This new affidavit does not contain any testimony which verifies the records of the original American Home Mortgage Servicing, Inc., Homeward Residential or Ocwen.  He states that he is an employee of Ocwen Financial Corporation, which is a holding company and is not a loan servicer.  His affidavit contains new material which for the first time was included into the record and once again is the basis for the motion for summary judgment.

Howeverand  is the basis for Defendant's Motion to Strike the Affidavit of Sony Prudent, the purported affiant in the Summary Judgment motion in this case.   In Jones, the Court analyzed the hearsay rule and whether the testimony of a Caliber Loan Servicing employee and an exhibit referencing the status of the loan after two prior servicers was properly admitted under the hearsay rule business record's exception FRE 803(6).  The issue in *Jones* was whether there was a sufficient foundation under 803(6) for the current loan servicer employee to testify about the status of the mortgage loan account and how it was boarded into the electronic system of record of the current servicer.  In *Jones*, there was live testimony of a witness at a foreclosure trial. The Court set forth the criteria for the admission of records of another servicer.  The Court held:

[W]hether a third party's records . . . can be integrated into the records of the offering entity . . . for purposes of admission under the business records exception **is not an issue upon which this circuit has reached a uniform conclusion**" covering every instance. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012). **Rather, the admissibility of the evidence turns on the facts of each case.**

Thus, we have affirmed the admission of business records containing third-party entries without third-party testimony where the entries were **"intimately integrated"** into the business records, FTC v. Direct Marketing Concepts, Inc., 624 F.3d 1, 16 n.15 (1st Cir. 2010), or where the party that produced the business records "**relied on the [third-party] document and documents such as those[] in his business**," United States v. Doe, 960 F.2d 221, 223 (1st Cir. 1992) (internal quotation marks omitted). Conversely, in the absence of third-party evidence**, we have rejected the admission of business records containing or relying on the accuracy of third-party information integrated into the later record where,**

**for example, the later business did not "use[] a procedure for verifying" such information, lacked a "self-interest in assuring the accuracy of the outside information,**" United States v. Vigneau, 187 F.3d 70, 77 & n.6 (1st Cir. 1999) (emphasis omitted), or sought admission of third-party statements made "by a stranger to it," Bradley, 891 F.3d at 35 (quoting Vigneau, 187 F.3d at 75 (alterations omitted)). The key question is whether the records in question are "reliable enough to be admissible." Direct Marketing Concepts, 624 F.3d at 16 n.15..

The Court reviewed the testimony of the trial witness and noted:

In answering that question, we are mindful that the "**reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation**." Fed. R. Evid. 803 advisory committee's note to 1972 proposed rules. The rule seeks "to capture these factors and to extend their impact" by applying them to a "regularly conducted activity." Id (emphasis added).

The District Court had received testimony from a loan servicer employee who had

testified that:

 **Caliber incorporated the previous servicer's records into its own database and "plac[ed] its own financial interest at stake by relying on those records," and that "Caliber's acquisition department took steps to review the previous servicer's records in a way that assured itself of the accuracy of the records**." 330 F. Supp. 3d 530, 543 (D. Me. 2018); see Trial Tr. 28:3-6, 60:17-19.

(emphasis added)

The Court also noted that the mortgagor did not dispute the transaction history by

claiming overbilling or unrecorded payments not contested the findings of the

District Court that there were no discrepancies.

5

In view of *Jones*, the affidavit of Sony Prudent is defective because it does not verify anything about the boarding or the verification of the records of Homeward Residential (formerly American Home Mortgage Servicing, Inc. incorporated in Delaware on September 6, 2007 as indicated in its filing with the Rhode Island Secretary of State on December 18, 2007, attached to this memorandum).  This corporation was not the original American Home Mortgage Servicing, Inc. which was the servicer from origination of the mortgage loan and which filed a Chapter 11 Bankruptcy Petition on August 6, 20007 in case number 07-11050 in the United States Bankruptcy Court for the District of Delaware. Thus this mortgage loan has been serviced by four entities:

(1) The first American Home Mortgage Servicing, Inc. until its bankruptcy on August 6, 2007.

(2) The second American Home Mortgage Servicing, Inc. from its creation on September 6, 2007 until its name change of Homeward Residential, Inc. on May 31, 2012 as reflected in the attached record of the Rhode Island secretary of state.

(3)     Ocwen Loan Servicing, LLC from February 4, 2013 to June 1, 2019.

(4) PHH Mortgage Services, also known as New Rez from June 1, 2019.

One issue for the Court's consideration of this discovery issue is that Ocwen's records have been admitted by it to be inherently inaccurate in filings with the State of Rhode Island and the State of New York.  See attached Consent Orders filed with the State of New York and Rhode Island. In these filings Ocwen made certain concessions and admissions. In its December 15, 2012 Consent Order in New York, Ocwen admitted:

WHEREAS, the examination also preliminarily identified instances that the Department believes indicate non-compliance with the Agreement by Ocwen, including, in some instances: (1) failing to provide certain bonowers direct contact information for their designated loss mitigation staff or a single point of contact ("SPOC"); (2) pursuing foreclosure actions against certain bonowers who are seeking a loan modification (refered to in the Agreement as "dual tracking"); (3) failing to conduct an independent review of certain loan modification denials; (4) **failing to demonstrate its adoption of policies and procedures to effectively track sanctioned third-party vendors, including local foreclosure counsel; (5) failing to demonstrate its implementation of policies and procedures to verify borrower information on newly boarded accounts to accurately reflect the status and current balance of the borrower's account;**
(Emphasis added)

In its December  19, 2014 Consent Order in New York,  Ocwen admitted:

17. Ocwen's core servicing functions rely on its inadequate systems. Specifically, Ocwen uses comment codes entered either manually or automatically to service its portfolio; each code initiates a process, such as sending a delinquency letter to a borrower, or referring a loan to foreclosure counsel. With Ocwen's rapid growth and acquisitions of other servicers, the number of Ocwen's comment codes has ballooned to more than 8,400 such codes. Often, **due to insufficient integration following acquisitions of other servicers, there are duplicate codes that perform the same function.** The result is an unnecessarily complex system of

7

comment codes, including, for example, 50 different codes for the single function of assigning a struggling borrower a designated customer care representative.

18. Despite these issues, Ocwen continues to rely on those systems to service its portfolio of distressed loans. Ocwen's reliance on technology has led it to employ fewer trained personnel than its competitors. For example, Ocwen's Chief Financial Officer recently acknowledged, in reference to its offshore customer care personnel, that Ocwen is simply "training people to read the scripts and the dialogue engines with feeling." Ocwen's policy is to require customer support staff to follow the scripts closely, and Ocwen penalizes and has terminated customer support staff who fail to follow the scripts that appear on their computer screens. In some cases, this policy has frustrated struggling borrowers who have complex issues that exceed the bounds of a script and have issues speaking with representatives at Ocwen capable of addressing their concerns. Moreover, Ocwen's customer care representatives in many cases provide conflicting responses to a borrower's question. Representatives have also failed in many cases to record in Ocwen's servicing system the nature of the concerns that a borrower has expressed, leading to inaccurate records of the issues raised by the borrower.

19. Ocwen's inadequate infrastructure and ineffective personnel have resulted in Ocwen's failure to fulfill its legal obligations. Prior to the Department's and the Compliance Monitor's review, Ocwen did not take adequate steps to implement reforms that it was legally obligated to implement pursuant to the 2011 Agreement.

On September 28, 2017, Ocwen and its predecessor Homeward Residential entered into a Consent Order with the State of Rhode Island Department of Business Regulation, in which it agreed to eliminate its defective electronic system of record, called RealServicing. This was part of a nationwide settlement with Ocwen and its affiliates.  These regulatory actions and concessions and admissions by Ocwen indicate the unreliability of its electronic system of record and its failure to verify status of loans boarded on its system after servicing transfer.

8

This mortgage is not a simple interest mortgage. Rather it is a negative amortization adjustable rate mortgage. There are three purported affidavits submitted in this case. They are the affidavit in support of the original complaint, the affidavit in support of the amended complaint and the affidavit in support of the motion for summary judgment. The first two affidavits were the affidavits which were the subject of the Defendant's discovery requests. The summary judgment affidavit was executed by another Ocwen "employee", Sony Prudent who did not comply with the provisions of FRE 803(6) and *Jones*. This purported affidavit states:

I, Sony Prudent, hereby declare and state as follows:

1. I am a Senior Loan Analyst for Ocwen Financial Corporation, whose indirect subsidiary is Ocwen Loan Servicing, LLC ("Ocwen"), and I am authorized to/make this affidavit on behalf of Ocwen. Ocwen is the loan servicer for the subject mortgage loan on behalf of Plaintiff, Citibank, N.A., as Trustee for American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates Series 2006-3 ("Citibank,as Trustee").

I am over the age of 18 and competent to testify as to the matters contained in this affidavit. I have access to the business records of Ocwen, including the business records for and relating to the loan at issue in this litigation. I make this affidavit based upon my review of those records relating to the loan and from my own personal knowledge of how they are kept and maintained. The loan records are maintained by Ocwen in the course of its regularly conducted business activities and are made at or near the time *of* the event, by or from information transmitted by a person with knowledge. It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity. Ocwen's records that relate to the loan that I reviewed and relied upon for the statements

made in this Affidavit include images of the note, Ocwen's electronic servicing system and images of correspondence.

3. I have reviewed Ocwen's records with respect to mortgage loan number ending 2929 for the borrower and Defendant, Katherine L. Caito (the "Borrower").

9. Borrower failed to cure her default by June 17, 2018, as was required in the Notice of Default to avoid acceleration and sale. Borrower has not reinstated the Mortgage following her receipt of the Notice of Default. Following the Borrower's failure to cure her default, judicial foreclosure proceedings were then commenced to proceed to a foreclosure auction of the Property.

10. According to Ocwen's records, as of May 14,2019, approximately $4,622,474.40 is due and owing in principal, $1,350,190.85 is due and owing in interest, and $210,438.82 is due and owing in escrow payments on the Borrower's mortgage loan.

11. Since Borrower's default on the Mortgage in May 2012, additional costs, fees and expenses have been incurred on Borrower's mortgage loan and applied to. the unpaid balance. Attached hereto as *Exhibit A* is a true and accurate copy of the Payment Reconciliation History on the Mortgage, itemizing all costs, fees and expenses applied to the account. All costs, fees, and expenses are necessary and proper and were incurred in compliance with the terms of the Note and Mortgage.

This affidavit does not meet the criteria of *Jones* or FRE 803(6). Thus the discovery regarding the amount of the default and the amount which could be accelerated needs to be conducted. The First Circuit indicated in *Jones* that the following was necessary to allow business records into evidence which incorporated another company's records:

"reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual

experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation

No such language was contained in the Sony Prudent affidavit. No reference was made to the prior servicers' records. No language indicated that Ocwen integrated these records into its own business records after verification of the reliability of the prior servicers' records as to the status of the loan when it was service transferred first to American Home Mortgage Servicing, Inc. 2( Homeward Residential) and then to Ocwen. In fact neither the word reliable nor integrate appears in the affidavit for Summary Judgment. Nor is there any reference to the prior servicers. Ocwen simply cannot establish what the status of the mortgage loan account was when the loan was service transferred on February 4, 2013. Its supposed payment reconciliation attached to the Summary Judgment has no reference to the prior history of the loan, which was a negative amortization, adjustable rate mortgage. Plaintiff has not presented reliable non-hearsay discovery regarding the status of the mortgage loan when the original AHMSI filed bankruptcy, when Homeward Residential (AHMSI2) commenced servicing and when the loan was transferred to Ocwen. Plaintiff's affiant did not vouch for the reliability of these records nor did it comply with the requirements of FRC 803(6) as set forth in *Jones*. This affidavit did not identify the records which the affiant

reviewed and did not provide anything other than a regurgitation of the hearsay business exception statute. There is no evidence as to whether of the manner in which the witness verIfied the prior servicer's records.

Ocwen has admitted in three Consent Orders in New York and one in Rhode Island, that its electronic system of record is not accurate. These Consent Orders cast doubt on Ocwen's record keeping and raise issues with the amount of the purported arrearage and the alleged balance. This is a negative amortization mortgage, whose original servicer was American Home Mortgage, then after that entity's bankruptcy was service transferred to American Home Mortgage Servicing, Inc. ("Homeward Residential") and then to Ocwen (now to PHH Mortgage Services). Since the records were not verified, then the affidavit is not compliant with the hearsay rule and cannot support the accuracy of the default letter and the amount accelerated. The Federal Rules of Evidence require certain proof of the records of other business entities, and proof of Ocwen's, Homeward Residential's and American Home Mortgages1' records under FRE 901, 902 and the business records exception of the hearsay rule.

To further attest to the lack of reliability of these records, the Court should review the PHH a Notice of Interest Rate Change dated July 17, 2019, attached as Exhibit GG. This statement erroneously indicates that the margin on for the

calculation of the interest rate is 3.5% not 3.125% as provided by the modification to the mortgage. The May 14, 2018 Ocwen payment change statement dated May 14, 2018 is attached as Exhibit HH. This also indicates that the margin is 3.5%. Thus once again this calculation of interest did not conform to the modified mortgage margin of 3.125%. Since the principal balance of the loan according to the September statement from another servicer, New Rez, is $4,622,474.40 ("Exhibit FF") , the margin difference of .0375% , which is a differential of $17,334.00 for the past year since the principal balance was $4, 622,474.40. This miscalculation of the interest rate has occurred since the loan was originated. As a result of not applying the correct interest rate, this loan has been overcharged in excess of $200,000.00 since the loan originated. Thus the records of Ocwen, Homeward Residential and now PHH Mortgage simply put cannot be considered accurate and there has been no indication of any verification.

    The Plaintiff seeks to buttress the defective affidavit of Sony Prudent with another unverified and inadmissible affidavit of Sony Prudent. FRCP 6(2) states that any affidavit supporting a motion must be served with the motion. Since the second affidavit of Sony Prudent is submitted to support the summary Judgment motion. However Rule 6 does not allow such a process. The failure of the original affidavit is thus corroborated by the fact that the Plaintiff has submitted a new

affidavit, as to which Defendant will file a Motion to Strike. However to afford the Defendant, due process of law regarding a claim for a Judicial Foreclosure Judgment, the Defendant should be allowed to depose Sony Prudent regarding the scope of his knowledge of the electronic records of the original Ameican Home Mortgage and how they were integrated into the system of American Home Mortgage2, later Homeward Residential. In addition discovery should be allowed of him regarding the integration of the Homeward Residential records, which used the electronic system known as MSP and Ocwen, which used RealServicing. An finally discovery should be allowed regarding the boarding process by whichg PHH integrated and verified the RealServicing records of Ocwen into its own MSP, now Black Knight electronic system.

    Thus the original affidavit of Sony Prudent and Exhibit A should be stricken as unreliable hearsay not in conformity with the hearsay rule and the holding of the First Circuit in *Jones.*

                                                 KATHERINE CAITO

August 30, 2019                                 By her Attorney

                                             /s/ John B. Ennis
                                             JOHN B. ENNIS, ESQ. #2135
                                             1200 Reservoir Avenue
                                             Cranston, Rhode Island 02920
                                             (401) 943-9230
                                             jbelaw75@gmail.com

## CERTIFICATION

I certify that I emailed a copy of this Reply to Response to Motion to Strike to Samuel Bodurtha on August 30, 2019.

/s/ John B. Ennis