**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**CITIBANK, N.A. AS TRUSTEE FOR AMERICAN**
**HOME MORTGAGE ASSETS**
**TRIST 2006-3, MORTGAGE BACKED PASS-THROUGH**
**CERTIFICATES SERIES 2006-3**

     **VS**
**KATHERINE L. CAITO**

**REPLY MEMORANDUM  OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant's Motion  for Summary

Judgment for failure to comply with the terms of the mortgage prior to

commencing this Judicial Foreclosure action.  The Plaintiff has refused to dispute

certain facts in its reply instead stating that they are immaterial and irrelevant.  The

Local Rules of this Court do not provide for any objection to the Undisputed Facts.

The opposing party can either admit or deny these statements of undisputed facts.

It cannot object on immaterial grounds as the Plaintiff objected as follows:


5. The May 11, 2018 notice did not advise the Defendant that she could
reinstatement after acceleration only until five days before the sale.

**RESPONSE: This statement of fact is immaterial to adjudication of CitiBank,**
**as Trustee's authority to foreclose because Paragraph 22 does not require this**
**disclosure.** ***Martins v. Fed. Hous. Fin. Agency***, **214 F.Supp.3d 163, 169-70**
**(D.R.I. 2016).**

1

6. The May 11, 2018 notice did not specify a particular date at least thirty days after the notice was deposited in the United States mail to cure the arrearage.

**RESPONSE: This statement is immaterial to the extent Defendant refers to the date the Notice of Default of was "deposited in the United States mail" because Paragraph 22 of Defendant's Mortgage requires "a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured." *See* Mortgage, *Exhibit B* to Amended Complaint.**

7. The May 11, 2018 notice required that the arrearage be paid by certified funds.

**RESPONSE: This statement is immaterial to adjudication of CitiBank, as Trustee's authority to foreclose because no part of the Mortgage prohibits the Lender from demanding payment in certified funds as part of the Defendant's action required to cure the default.**

8. The mortgage did not require that any arrearage be paid by certified funds.

**RESPONSE: This statement is immaterial to adjudication of CitiBank, as Trustee's authority to foreclose because no part of the Mortgage prohibits the Lender from demanding payment in certified funds as part of the Defendant's action required to cure the default.**

9. The Defendant has never sent or provided any lender or mortgage or loan servicer a mortgage payment check with insufficient funds to pay the mortgage, which was return unpaid.

**RESPONSE: This statement is immaterial to adjudication of CitiBank, as Trustee's authority to foreclose because CitiBank, as Trustee's demand for certified funds is not contingent upon returning an insufficient check to Defendant. Moreover, the Defendant has not made a mortgage loan payment since May of 2012. *See* CitiBank, as Trustee's Statement of Undisputed Fact No. 6, Doc. No. 21-2 at p. 2.**

10. The Defendant was never advised by any lender or mortgagee or loan servicer that a check had been returned for nonpayment and that as a result all payments had to be paid by (a) cash; (b) money order; (c) certified check, bank check, treasurer's check, provided any such check is drawn upon and institution whose

deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

**RESPONSE: This statement is immaterial to adjudication of CitiBank, as Trustee's authority to foreclose because CitiBank, as Trustee's demand for certified funds is not contingent upon return of check for non-payment. Moreover, the Defendant has not made a mortgage loan payment since May of 2012.** *See* **CitiBank, as Trustee's Statement of Undisputed Fact No. 6, Doc. No. 21-2 at p. 2. CitiBank, as Trustee advised the Defendant that cure of the default would require a payment made by certified funds.** *See* **Notice of Default,** *Exhibit D* **to Amended Complaint.**

11. There is no trust with the name American Home Mortgage Assets Trust 2006-3, Mortgage Backed Pass-Through Certificates, Series 2006-3.

**RESPONSE: Denied based upon (a) Assignment of Mortgage attached as** *Exhibit C* **to CitiBank, as Trustee's Amended Complaint, (b) July 1, 2006 Pooling and Servicing Agreement for American Home Mortgage Assets LLC Mortgage-Backed Pass-Through Certificates series 2006-3 excerpts of which are attached hereto as** *Exhibit 1***, and (c) the Limited Power of Attorney attached as Exhibit A to CitiBank, as Trustee's Memorandum of Law in Response to Caito's Summary Judgement Motion.**

12. Ocwen Loan Servicing, LLC has admitted that its system or record, RealSphere was not accurate.

**RESPONSE: This statement is immaterial to adjudication of CitiBank, as Trustee's authority to foreclose because CitiBank, as Trustee has provided an authenticated copy of the present accounting and transaction history of debt Caito owes for this loan.**

13. The Defendant's note and mortgage were modified by a Mortgage Modification Agreement which changed the interest rate on the mortgage.

**RESPONSE: This statement is immaterial to adjudication of CitiBank, as Trustee's authority to foreclose. The Modification Agreement Caito appends does not modify any term of the Mortgage that would impact or affect CitiBank, as Trustee's authority to foreclose. The sole purpose of the**

3

**Mortgage Modification Agreement (according to the terms of the document itself) was to record the correct Arm Rider that should have been recorded with the original mortgage.**

14. The rate calculated by Ocwen for the Defendant was not the rate set by the Mortgage Modification Agreement.

**RESPONSE: Denied.** *See* **Transaction History attached as** *Exhibit A* **to the Affidavit of Sony Prudent in Support of CitiBank, as Trustee's Summary Judgment Motion.**

15. The prior purported default letter dated October 30, 2015 was deposited in the US mail on October 31, 2015.

**RESPONSE: This statement is immaterial to adjudication of CitiBank, as Trustee's authority to foreclose because CitiBank, as Trustee has provided undisputed evidence in support of their contractual right to foreclose and because Defendant has previously released, settled and waived any and all claims prior to September of 2016.**

16. Korde & Associates, P.C. was not licensed to practice law on October 30, 2015 or October 31, 2015 in Rhode Island.
**RESPONSE: This statement is immaterial to adjudication of CitiBank, as Trustee's authority to foreclose because CitiBank, as Trustee has provided undisputed evidence in support of their contractual right to foreclose, and because Defendant previously released, settled and waived any and all claims prior to September of 2016.**

17. Korde & Associates, P.C. and Shane Costa was not the agent for Ocwen or Citibank on October 30, 2015 or October 31, 2015 in Rhode Island.

**RESPONSE: This statement is immaterial to adjudication of CitiBank, as Trustee's authority to foreclose because CitiBank, as Trustee has provided undisputed evidence in support of their contractual right to foreclose, and because Defendant has previously released, settled and waived any and all claims prior to September of 2016.**

4

Due to the failure of the Plaintiff to respond or dispute the statement of

Disputed Facts, the following facts should be considered admitted:

5. The May 11, 2018 notice did not advise the Defendant that she could reinstatement after acceleration only until five days before the sale.

6. The May 11, 2018 notice did not specify a particular date at least thirty days after the notice was deposited in the United States mail to cure the arrearage.

7. The May 11, 2018 notice required that the arrearage be paid by certified funds.

13. The Defendant's note and mortgage were modified by a Mortgage Modification Agreement which changed the interest rate on the mortgage.

15. The prior purported default letter dated October 30, 2015 was deposited in the US mail on October 31, 2015.

16. Korde & Associates, P.C. was not licensed to practice law on October 30, 2015 or October 31, 2015 in Rhode Island.

17. Korde & Associates, P.C. and Shane Costa was not the agent for Ocwen or Citibank on October 30, 2015 or October 31, 2015 in Rhode Island.

The Plaintiff, rather than admitting or denying this relevant facts chose instead to

object on materiality grounds. By not complying with the Rule, it effectively

admitted these facts.  The objections were not appropriate and warrant admission

that these are true facts.

The refusal to answer relating to the 2015 default notices, which did not

provide 30 days notice from the date of mailing of the letter, do not give rise to a

cause of action against Korde, Ocwen or Citibank. What these facts do is demonstrate that the letter from Korde did not provide the Defendant thirty days to cure from the date it was deposited in the mail on October 31, 2015.  The subsequent legal fees arising from that attempted foreclosure thus were not properly included in the 2018 purported default letter.

The refusal  to respond to Undisputed Fact 13, relating to the modification of the mortgage, shortly after origination, which lowered the interest rate on this $4,500,000.00 mortgage by .0375% clearly was material to the issue of whether the default letter in 2018 was accurate. The arrearage at that time would include interest which at that point was overcharged by $200,000.00. In addition, the negative amortization portion of the loan, which Plaintiff has no idea as to the balance clearly was not accurate if as demonstrated by the Defendant, the 3.5% margin to the interest rate of the loan instead of 3.125% as a margin.

## THE MAY 11, 2018  NOTICE DID NOT STRICTLY COMPLY WITH THE TERMS OF THE MORTGAGE AND LACKED A SPECIFIC DATE TO CURE

Contrary to the Plaintiff's assertion, no specific date was provided in the default notice. Rather the letter stated that the arrearage had to be cured on or before June 17, 2018. Thus there was no specific date to cure as the phrase on or before includes every date from the date of the letter until June 17, 2018.  The

notice did not specify a particular date, by which the cure amount had to be paid or face acceleration by Ocwen Loan Servicing and sale of the mortgaged premises. No person could determine from the letter the actual date on which to cure. This letter was deceptive because it did not specify an exact date to cure, only a range of dates from the date of the letter until June 17, 2018.  Thus there was not strict compliance with the terms of the mortgage as required by Rhode Island as developed in regard to contracts and notices, which are conditions precedent to the exercise of certain contractual rights.

There are two relevant portions of paragraph 22. The first is 22(c) which requires language which indicates:   **a date,** not less than 30 days from the date the notice is given to Borrower, by which the default must be cured. The second is 22(d) which states that failure to cure the default **on or before the date specified** in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. This notice used the paragraph 22(d) provision for the paragraph 22(c) provision. As a result, there was no specific date in 22(c) and the on or before provision of 22(d) had no specific date to reference from paragraph 22(c). On or before June 17, 2018 is not a specific date to cure which could be referenced in 22(d). Effectively this notice stated that the Defendant had to cure at any date

7

before June 17, 2018, which included  thirty different dates within thirty days of the letter. Thus this letter was defective on those grounds alone, rendering this action subject to dismissal. There is no genuine issue of material fact as this notice could not satisfy the strict compliance standard of Martin and Thompson and the existing Rhode Island case law. Plaintiff chose to proceed without a specific default letter as this Court found in the notice sent out by Ocwen in the case of *Camarena v. Ocwen Loan Servicing*, et al 18-cv-132JJM-LDA.  Exhibit 1 attached to the original  memorandum is the notice sent in that case, in which Ocwen Loan Servicing, LLC stated:

DEMAND is hereby made against you to cure this default by July 3, 2016.

This notice was not sufficient to allow for a Temporary Restraining Order.

The on or before time frame for each notice mandated cure on a series of unspecified dates, some of which were within the thirty day period. Paragraph 22 provides that once a specific date is set, only then can the notice state:

that failure to cure the default on or before the date specified in the
Notice may result in the acceleration of the sums secured by this Security
Instrument and sale of the property

Here the initial on or before language did not specify a particular date to cure, which could be referenced in the required "on or before" section of Paragraph 22.

8

The sole basis for the Plaintiff's contention that the requirement of sufficient funds were a proper notice is that certified funds could be required. However as indicated previously, paragraph 1 of the mortgage permits payment by certified funds only if the borrower had mailed checks with insufficient funds. The purported default letter makes it clear that insufficient fund charges were not part of the default amount. Thus since the mortgage allows certified funds only in case of a bounced check, Ocwen could not include this demand in the purported default letter.

The  First Circuit in  *Thompson v. JPMorgan Chase Bank, N.A.* CA. No. 18-1559 was decided on February 8, 2019  set forth relevant requirements for strict compliance with the terms of the mortgage, which were not complied with in this case.  In *Thompson*, the First Circuit reversed the dismissal by the District Court and reversed a foreclosure sale due to the fact that the purported default notice failed to notify the mortgagor of the limitations of the right to reinstate. The Court held that due to the strict compliance required under Massachusetts law and the obligation not to provide language in the notice which was deceptive, the failure to advise the mortgagor that reinstatement could occur no later than five days before

9

the scheduled sale was fatally defective. It also held that there was no need to

demonstrate prejudice arising from said failure to notify the mortgagor.

The vacating of *Thompson*, however was an indication by the Court that it

was concerned that the general principle advanced in *Thompson* might run counter

to Massachusetts law. This notice did not contain the language, which evidently

was mandated by Massachusetts regulations.   The Order vacated the original

Opinion due to a concern that due to the fact that for the first time in the case,

Chase and other intervenors from the banking  industry raised the existence of a

regulation which required a form to be mailed, which the First Circuit had found

deceptive. However the Court expressed skepticism about this issue which was

raised for the first time after the opinion:

> Chase then filed a petition for panel rehearing or rehearing en banc,
> claiming for the first time that a state banking regulation, 209 C.M.R. § 56.04,
> required Chase to use the precise language it had used in its notice to the
> Thompsons. This is a debatable position: the form notice that follows in section
> 56.04 also includes language apprising homeowners that "[e]nclosed with this
> notice, there may be additional important disclosures related to applicable laws and
> requirements that you should carefully review." Id.

It should be noted that the reason for the distress among the Massachusetts banking

industry  was the mandatory use of the Banking Regulation form 209 C.M.R. §

56.04, which is attached to this Memorandum.  There is no similar regulation in

Rhode Island. In fact the First Circuit in the original *Thompson* opinion did not

have any reference to the regulation and issued an opinion which applied to any mortgages to which  strict compliance  was mandated by state law.

It should be noted that in the Order the Court reaffirmed its holding in the original Opinion that in the event of Strict Compliance with the language of the mortgage there is no need to demonstrate prejudice by the mortgagor. The opinions of this Court in *Martins*, *Boynton* and *Dan-Harry* have clearly stated that Rhode Island requires strict compliance with the terms of the mortgage. In *Thompson*, the First Circuit stated:

At no time did the Thompsons argue that they had been misled by the inaccuracy or had in any way been prejudiced by it; but under binding state precedent **it is enough that some hypothetical mortgagor could have been misled** by the inaccurate pre-foreclosure notice. (emphasis added)

Thus, the Court certified to the Massachusetts Supreme Judicial Court the following question:

Did the statement in the August 12, 2016, default and acceleration notice that "you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place" render the notice inaccurate or deceptive in a manner that renders the subsequent foreclosure sale void under Massachusetts law?

The  Defendant suggests that since *Thompson* was based on strict compliance without a need to demonstrate prejudice, the vacating of *Thompson* does not make the law stated in *Thompson* any less viable.

11

*Martins and Dan Harry v. PNC Bank C.A. No. 17-136 WES* (D.R.I., February 26, 2018) have restated pre-existing and established  Rhode Island law, which  mandated that mortgage contracts must be strictly complied with in order to exercise the statutory power of sale.   Failure to do comply with the conditions precedent contained in paragraph 22 of the mortgage would thus invalidate any subsequent foreclosure.  The Court in *Dan Harry* held that strict compliance was required and noted that the Rhode Island Supreme Court in *Bucci v. Mortgage Electronic Registration Systems, Inc*. 68 A. 3d 1069(R.I., 2013) had interpreted Rhode Island mortgages applying Massachusetts case law due to the similarities of the statutes authorizing statutory power of sale:

Also pertinent is that the Rhode Island Supreme Court's decisions regarding mortgage interpretation turn to Massachusetts case law to fill in the interstices in Rhode Island mortgage jurisprudence. See Cruz v. Mortg. Elec. Registration Sys, Inc., 108 A.3d 992, 997 (R.I. 2015) (looking to guidance from Massachusetts to develop law pertaining to standing to challenge mortgage assignments) (citing as guidance Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1 (1st Cir. 2014) (applying Massachusetts law)); Bucci, 68 A.3d at 1087 ("we interpret the term `mortgagee' in our statutes in a similar fashion as did the Supreme Judicial Court of Massachusetts") (citing as guidance Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352 (D. Mass. 2011) (applying Massachusetts law), aff'd, 708 F.3d 282 (1st Cir. 2013), and Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E. 2d 1118 (Mass. 2016)). Accordingly, it is appropriate for this Court to consider persuasive the relevant mortgage-law guidance from Massachusetts. See, e.g., Jose, 54 N.E. 3d at 1132 & n.3 (claim that foreclosure may be rendered invalid by mortgagee's failure to conduct pre-foreclosure face-to-face meeting survives summary judgment); Cook, 31 N.E. 3d at 1131 (mortgagor's claims to restore title and avoid

eviction based on mortgagee's failure to comply with HUD regulations before foreclosing survive summary judgment).

## THE NOTICE DID NOT STRICTLY COMPLY WITH THE MORTGAGE BY STATING AN INACCURATE AMOUNT OF THE ARREARAGE

The letter also did not strictly comply with the terms of the mortgage since it did not state the exact amount of the arrearage.  Ocwen's stated that the default consisted of $2,201,915,26, which included the inaccurate amount of fees of $6,086.49  plus the additional amounts which could be obtained by calling Ocwen at 800-746-2936 did not comply with *Martins*, *Dan Harry* or *Thompson*.  The addition of other charges for charges assessed after the date of the letter, under the terms of the mortgage could not be a component of the default letter. Such subsequent charges could not be added on to the original arrearage, since they were not specified with an actual amount and they were not subject to the thirty day right to cure and could not be the basis of an acceleration of the note. The notice stated that the mortgagor had to call  to obtain the exact amount due.  None of these requirements were included in the terms of the mortgage and as a result there was no strict compliance. Under *Thompson*, no prejudice needed to be demonstrated by mortgagor and thus the purported default notice was defective.

The letter's assertion that the Defendant owed $2,201,915.26 was also not accurate and as a result there was no strict compliance with the terms of the

mortgage. Failure to provide an accurate default notice renders a Default Notice defective since the condition precedent to acceleration and sale, judicial or nonjudicial is an accurate stating of the amount in default. The Plaintiff's exhibit A demonstrated that the arrearage included multiple charges not permitted by the terms of the mortgage and included multiple inaccurate charges,   which were included in the purported default notice. This amount, claimed to be the arrearage, included multiple unreasonable and unnecessary charges, which were charged by Ocwen to the mortgage loan account contrary to the terms of the mortgage

       As indicated by the Defendant's affidavit, this amount, claimed to be the arrearage, included the following improper charges which rendered the default notice inaccurate. All the charges for foreclosure and foreclosure related charges were not accurate charges contained within the $6086.49 fees and expenses of the May 11, 2018 letter.  These charges which resulted in the $6086.49 being inaccurate were the following:

| | | |
|---|---|---|
| 11-14-16 | FC thru Judgment | $556.25 |
| 4-1-16 | Selling Office/Sheriff Cancel fee | $425.00 |
| 3-8-16 | Sale Publication | $1203.76 |
| 2-22-16 | Selling Officer/Sheriff Cancel Fee | $425.00 |
| 2-1-16 | FC Thru complaint | $125.00 |

| 2-1-16 | Selling Officer/Sheriff Cancel Fee | $425.00 |
| 2-1-16 | Sale Publication | $714.88 |
| 7-23-13 | FC thru Title search | $520.00 |

These total fees totaled $4394.90. The Defendant's affidavit indicates that she never received a default letter pursuant to the terms of the mortgage which would have allowed any exercise of the statutory power of sale. Thus all the foreclosure related charges were not accurate and should not have been included in the purported default notice.

As indicated by the Defendant's affidavit, at no time was a sheriff ever hired to sell her home. Nor at any time was there a Selling Officer or any other official hired to sell her home. At no time was a judicial foreclosure commenced in 2013-2016, which could result in a Judgment being entered. Despite this fact, the purported default letter included three fees for service of process, specifically the following:

| 5-8-15 | Service of process | $22.10 |
| 2-7-18 | Service of Process | $10.84 |
| 2-22-16 | Service of Process | $56.54 |

The purported default letter also included a fee for additional hour court appearance of $50.00 on 2-22-16.There was no Court appearance  for an attorney

15

to be paid an extra hourly fee on February 22, 2016 and where there was never any

servicer of process on the Defendant as indicated by her affidavit, which also

stated that she  was never served process by Ocwen or any other entity.

      The purported default letter included three skip trace fees, specifically the

following:

5-8-18        Skip Trace fee             $5.46

2-22-16      Skip Trace fee             $5.30

7-23-13      Skip Trace fee             $5.30

Such fees are incurred to determine  the address of the borrower. However as

indicated by her affidavit, the Defendant had always lived at her home at 16

Yosesmite Valley Road, Westerly, RI, 02891 and there was no reason to search for

her address, as Ocwen knew that she was living in the house.

.      The total fees of $6086.49 also included property inspection fees for the

period from April, 2013 to May 2018 in the amount of $458.74 for 37 separate

charges. At all times Ocwen was aware that the Defendant was living in the

property and that she had an attorney, throughout this entire time.  She paid the

taxes for the property from 2016 through 2018.     Ocwen knew that the property

was not abandoned and that there was regular contact with the Defendant or her

attorney.  She also indicated that at no time did any person come into her home to

16

inspect the condition of the house. Ocwen's compute system automatically orders property inspection fees when a loan is in arrears.   As a result of improper charges referenced herein,  the purported default notice contains inaccurate charges included in the $6086.49 charges for fees and expenses.

As indicated in the Motion to Strike, previously filed with this Motion, the mortgage was modified shortly after origination due to an error which misstated the interest rate margin for the adjustable rate mortgage at 3.5% instead of the accurate rate of 3.125%, a difference .0375& or at least $16700.00 per year throughout the term of the mortgage. Since the amount of the alleged arrearage was not accurate, the transmittal of an inaccurate amount to cure did not strictly comply with the terms of the mortgage. The mortgage clearly states that the mortgagee must be provided the amount of the default.    Ocwen deceptively provided the wrong amount of the default for the reasons alleged in this complaint. Since this default amount included charges not permitted by the terms of the mortgage, it was inaccurate.   The failure to provide an accurate default amount resulted in this letter not strictly complying with the terms of the mortgage and as a result the Defendants did not strictly comply with the terms of the mortgage and a condition precedent to acceleration and sale and filing this action was not met. *Thompson* held that there was no need to demonstrate prejudice regarding this

issue and as a result, this letter was insufficient to trigger the right to exercise the statutory power of sale.

The Plaintiff did sufficiently address the issues raised by the Defendant to rebut the issues relating to the Default notice, particularly the arrearage amount. The Plaintiff does not even know the exact amount as it addresses its suggestion that a foreclosure should occur first and then do an accounting. However this is a Judicial Foreclosure and the Plaintiff must provide an accurate arrearage and accelerated balance as a condition precedent to acceleration and sale.  A Judicial Foreclosure must establish the amount of the arrearage to allow the mortgagor up to five days before the sale to cure that amount.  As part of the foreclosure judgment, the finder of fact determines an actual amount owed for the entire obligation and then the Court would order the property sold to satisfy that amount. If there is a deficiency, then there can be an action against the mortgagor. If there is a surplus, those proceeds are divided among all the parties in interest.

The loan servicer's do not know the exact arrearage and the exact amount owed because there are no accurate records from prior to Ocwen commencing servicing and because the margin to the interest rate of the loan was 3.125%, but the margin of 3.5% was charged for the life of the loan increasing the total interest charged in excess of $217,000.00. This inaccuracy warrants Summary Judgment

for the Defendant. For the reasons stated in this memorandum, the Defendant's

Motion for Summary Judgment should be granted and the complaint dismissed for

failure to meet a condition precedent of the mortgage.

August 30, 2019

KATHERINE CAITO
By her Attorney

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
jbelaw75@gmail.com

CERTIFICATION OF SERVICE

I hereby certify that I emailed a copy of this Memorandum of Law  to
Samuel Bodurtha  on August 30, 2019.

/s/ John B. Ennis, Esq.

19