UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CITIBANK, N.A. AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2006-3, MORTGAGE BACKED PASS-THROUGH CERTIFICATES SERIES 2006-3, <br> Plaintiff, <br><br> v. <br><br> KATHERINE CAITO, <br> Defendant. | C. A. No. 18-427-JJM-LDA |

## ORDER

Plaintiff Citibank, N.A. as Trustee for American Home Mortgage Assets Trust 2006-6, Mortgage-Backed Pass-Through Certificates Series 2006-3 ("Citibank") and Defendant Katherine Caito have filed Cross-Motions for Summary Judgment, each seeking the Court's determination in their favor on the propriety of a judicial foreclosure. Citibank seeks a judicial order of foreclosure on Ms. Caito's property in Westerly, Rhode Island. ECF No. 21. Ms. Caito seeks dismissal of Citibank's complaint for failure to meet a condition precedent of the Mortgage in that it failed to comply with the pre-foreclosure notice process. ECF No. 22. Ms. Caito has also moved to strike an affidavit filed in support of Citibank's cross-motion for summary judgment. ECF No. 40.

I.   FACTS & BACKGROUND

The Court will briefly review the relevant facts.

Ms. Caito received a $4,500,000 loan on June 6, 2006 with a Note to American Brokers Conduit ("ABC"). She was obligated to repay the Note by a Mortgage Citibank granted on the property to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for ABC and its successors and assigns. MERS assigned the Mortgage to Citibank as Trustee. Ocwen Loan Servicing, LLC ("Ocwen") was the servicers of the Mortgage on behalf of Citibank as Trustee.

Ms. Caito stopped paying on the Mortgage after April 2012. She has been in default since May 1, 2012. Ocwen issued the notice of default on May 11, 2018. The notice stated that Ms. Caito was in default, told her how to cure the default, that she had to cure the default by June 17, 2018, and that failure to cure on or before that date may result in acceleration of the Note. The default notice also stated that she had the right to reinstate the loan and the right to bring a court action to protest the default determination. She did not cure the default; Citibank filed this suit for judicial foreclosure, seeking a court order authorizing it to foreclose.

II.  STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Once this is done, Fed. R. Civ. P. 56(c) requires that summary judgment be granted if there is no issue as to any material fact and the moving party

is entitled to judgment as a matter of law. *Id.* The parties have both filed motions for summary judgment, but "[t]he presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006). In evaluating cross-motions, the court must determine whether either party is entitled to judgment as a matter of law based on the undisputed facts. *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009).

III. DISCUSSION

A. Motion to Strike Sony Prudent Affidavit

Because the Court must consider the evidence put forth in Sony Prudent's Affidavit in ruling on Citibank's Motion for Summary Judgment, it will first consider Ms. Caito's Motion to Strike. ECF No. 40. She argues that Mr. Prudent's affidavit is hearsay under Rule 803(6) of the Federal Rules of Evidence because he did not mention that the mortgage rate had been modified, he does not verify the chain of servicers involved in the Mortgage and whether Ocwen verified the records of former servicers before integrating those into its own business records, and Ocwen has admitted in Consent Orders filed in New York and Rhode Island that its records are inherently inaccurate. Essentially, Ms. Caito does not appear to dispute the default, just the calculation of what she owes because the affidavit does not include the details of the sources of Ocwen's figures.

Sony Prudent is a loan analyst for Ocwen who submitted an affidavit in support of Citibank's motion. Citibank submitted a Supplemental Affidavit in response to concerns raised in Ms. Caito's motion, clarifying the mergers,

3

acquisitions, and name changes (not third-party transfers) relating to the servicing of her loan.[1] After reviewing the affidavits in light of Federal Rule of Evidence Rule 803(6), the Court finds that Mr. Prudent's affidavits are not hearsay and are reliable for the purpose of this motion. The affidavits discuss Mr. Prudent's background, what records he reviewed that Ocwen maintained in the ordinary course of business, the specific details of Ms. Caito's Mortgage, her default, the approximate amount Ms. Caito owes in principal and interest, and the amount she owes in fees, costs, and expenses since her default in May 2012. His statements are based on his personal knowledge and review of the integrated business records maintained in the ordinary course of business.

Ms. Caito's Motion to Strike is DENIED. ECF No. 40.

B. Cross-Motions for Summary Judgment

In this action, Citibank seeks a judicial foreclosure. Section 34-27-1 of the Rhode Island General Laws states: "[a]ny person entitled to foreclose the equity of redemption in any mortgaged estate, whether real or personal, may prefer a complaint to foreclose it, which complaint may be heard, tried, and determined

---

[1] Submission of the Supplemental Affidavit was in response to Ms. Caito's citation to the First Circuit Court of Appeal's decision in *U.S. Bank Trust, N.A. v. Jones* as support for her argument that Mr. Prudent's affidavit contains inadmissible hearsay. 925 F.3d 534 (1st Cir. 2019). The Court's analysis in *Jones* does not apply to the facts of Ms. Caito's case. In that case, Jones argues that mortgage loan evidence was not admissible because it included third-party records (a result of assignments and transfers of the mortgage loan) not properly integrated into the records of the offering entity in violation of Rule 803(b) of the Federal Rules of Evidence. *Id.* at 537-38. Citibank has shown in the Supplemental Affidavit that there was no third-party transfer of information on Ms. Caito's loan requiring that business records be integrated.

4

according to the usages in chancery and the principles of equity." Through its motion for summary judgment, Citibank seeks this Court's determination that there are no disputed issues of material fact such that the judicial foreclosure against Ms. Caito's property in Westerly can proceed.

In her cross-motion for summary judgment, Ms. Caito argues that the case for judicial foreclosure should be dismissed on grounds: that Citibank lacks standing to foreclose, that the Amended Complaint does not reflect that the Note and Mortgage were modified, the May 11, 2018 default notice from Citibank to Ms. Caito did not strictly comply with Paragraph 22 of the Mortgage and stated inaccurate information, and her account was charged inappropriate fees in default.

In the face of these arguments, the Court finds the following undisputed facts: 1) Citibank is the holder of Ms. Caito's Note and Mortgage; 2) Ms. Caito has defaulted on the Note and breached the Mortgage by failing to make any payment since April 2012; 3) Citibank, through its loan servicer, issued a notice of default to Ms. Caito before beginning this judicial foreclosure action that strictly complied with the Paragraph 22 requirements in the Mortgage; and 4) the deadline that Citibank set to cure the default in its notice—June 17, 2018—passed without Ms. Caito making any attempt to get the Mortgage reinstated. The Court will explain these findings below but find they are in Citibank's favor so that its motion for summary judgment is GRANTED. The Court rejects Ms. Caito's defenses in support of her motion as lacking in factual foundation.

*1. Citibank as Trustee Holds the Note and Mortgage*

MERS, as nominee for ABC, assigned the Mortgage to Citibank, as Trustee. The Pooling and Servicing Agreement that governs the trust into which her Mortgage was deposited identified Citibank as Trustee for the trust named American Home Mortgage Assets LLC, Mortgage-Backed Pass-Through Certificates, Series 2006-3 so authorizes and appoints Citibank to pursue this action as Trustee. *Glassie v. Doucette*, 157 A.3d 1092, 1099-1100 (R.I. 2017) (holding that trustee to a trust is the party who pursues proceedings on behalf of the trust and its beneficiaries against a third party). Citibank thus has standing to sue and is authorized to act on behalf of the trust and Citibank as Trustee is the holder of the Mortgage.

### 2. *Ms. Caito Defaulted on the Note*

There is no dispute that Ms. Caito has made no payments on her Mortgage since April 2012. Her failure to make these payments resulted in default on the Note and breach of the Mortgage.

### 3. *Citibank Issued the Notice of Default*

Ocwen Loan Servicing, LLC ("Ocwen") was the loan's servicer. Ocwen issued the May 11, 2018 notice of default to Ms. Caito as attorney-in-fact for Citibank under a limited power of attorney. A foreclosure sale is valid where the servicer, acting under power of attorney, properly mailed notice of sale to the borrowers because a servicer, as agent for the lender, acquires all rights possessed by the lender, including the right to exercise the power of sale. *Breggia v. Mortg. Elec. Registration Sys.*, 102 A.3d 636, 641 (R.I. 2014); *252 Wolfrock Rd. Realty Redemption Co. v. Wells Fargo Bank N.A.*, C.A. No. 16-126M, 2016 WL 3766297, at *2 (D.R.I. July 11, 2016).

### *4. The Notice of Default Complied with the Mortgage Terms*

The notice of default complied with Paragraph 22 of the Mortgage. The notice stated that Ms. Caito was in default, told her how to cure the default, that she had to cure the default by June 17, 2018, and that failure to cure on or before that date may result in acceleration of the Note. The default notice also stated that she had the right to reinstate the loan and the right to bring a court action to protest the default determination. This is what Paragraph 22 requires.[2]

Ms. Caito argues in her motion that the notice provides no specific date to cure the default because it quotes "on or before" June 17, 2018, but as Citibank points out, the "on or before" language it used in the notice tracks the language of Paragraph 22(d). Paragraph 22 also does not limit how Citibank can demand payment so Ms. Caito's argument that the fact that Citibank asked that Ms. Caito cure the default using certified funds does not render its notice defective.

Ms. Caito's final argument on the notice relates to the arrearage amount. She argues that Citibank's calculations are incorrect because it ignored the Mortgage Modification Agreement ("MMA") and so did not use the correct interest rate. But the MMA terms do not alter any obligation under the Mortgage beyond providing an

---

[2] Ms. Caito cites *Thompson v. JPMorgan Chase Bank, N.A.*, 915 F.3d 801 (1st Cir. 2019) in support of her argument that Citibank's notice of default violated the Mortgage because it was deceptive. On a petition for rehearing, the First Circuit Court of Appeals withdrew its order, vacated the judgment, and certified a question to the Massachusetts Supreme Judicial Court about whether language in the default notice was deceptive given Chase's argument that the allegedly deceptive language was required by a state banking regulation. Because that case was based on interpretation of Massachusetts, not Rhode Island law and the opinion has been withdrawn, the Court declines to consider it here.

adjustable rate rider; the fact that the mortgage rate had been modified does not affect Citibank's ability to pursue judicial foreclosure. Ms. Caito also challenges Citibank quoting her an approximate amount due, essentially arguing that Citibank cannot foreclose because it does not know the exact amount due on the Note. There is no evidence that Citibank's quoted amount is incorrect beyond Ms. Caito's asserted calculations based on how she views her Mortgage terms. This is not enough to defeat summary judgment in this judicial foreclosure case. Moreover, the Court credits Citibank's explanation about why it provides borrowers in default with an approximated amount owed–that is, it can only provide an approximation of what is owed because the amount changes daily.

### a. Fees, Expenses, and Costs

Also related to the amount owed in default, Ms. Caito objects throughout her cross-motion and response to Citibank's motion that the costs, fees, and expenses charged to her account are improper. First, she presents no evidence of this and Citibank has provided some account history showing these charges are justified; her opinion alone on the validity of these expenses cannot support her challenge to this judicial foreclosure action. In any event, a challenge to charges on a mortgage account incident to foreclosure are not a hurdle to Citibank's pursuit of judicial foreclosure. Ms. Caito has not paid any of these monies, but if Ms. Caito can prove that some or any of the fees, expenses, or costs were improperly charged, they can be resolved through an accounting following the judicial foreclosure order.

*5. Ms. Caito Did Not Cure the Default*

The deadline that Citibank set to cure the default in its notice–June 17, 2018–passed without Ms. Caito making any attempt to get the Mortgage reinstated. Because Citibank has met the legal requirements to begin the foreclosure process and none of Ms. Caito's defenses are effective in the face of that proof, the Court finds that Citibank's motion in support of an order of judicial foreclosure should be GRANTED.

IV. CONCLUSION

The Court GRANTS Citibank's Motion for Summary Judgment on Count I of its First Amended Complaint for Judicial Foreclosure (ECF No. 21) and DENIES Ms. Caito's Motion for Summary Judgment (ECF No. 41) and her Motion to Strike the Affidavit of Sony Prudent and Exhibit A. ECF No. 40. The Court enters judgment in Citibank's favor so that it may proceed with foreclosure of the Westerly, Rhode Island property. Citibank should present a form of judgment, after conferring with opposing counsel.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
Chief Judge
United States District Court

December 18, 2019